No. 25-1987

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

MARY HOLMES, EMPOWER MISSOURI, DENISE DAVIS, AND
ANDREW DALLAS,

*Plaintiffs-Appellees,*

v.

JESSICA BAX, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE MISSOURI
DEPARTMENT OF SOCIAL SERVICES

*Defendant-Appellant.*

On Appeal from the United States District Court
For the Western District of Missouri,
Case No. 2:22-cv-04026 (Harpool, J.)

## APPELLANT'S BRIEF

Caroline M. Brown
Rebecca L. Wolfe
Brown & Peisch PLLC
1225 19th St. NW, Suite 700
Washington, D.C. 20036
(202) 499-4258
cbrown@brownandpeisch.com
rwolfe@brownandpeisch.com

*Counsel for Defendant-Appellant*

# SUMMARY OF THE CASE

Appellant, the Director of the Missouri Department of Social Services (DSS), named in her official capacity, appeals the district court's grant of summary judgment and award of injunctive relief to three individual plaintiffs and an organizational plaintiff suing on its own behalf. Although this is not a class action, the district court issued a sweeping, statewide injunction imposing detailed mandates on DSS in its administration of the Supplemental Nutrition Assistance Program ("SNAP").

The judgment and relief arise from Plaintiffs' claims that some aspects of Defendant's administration of SNAP, primarily related to the federally-mandated interview requirement, violate two provisions of the Food and Nutrition Act of 2008 and its implementing regulations; the Due Process Clause of the 14th Amendment to the U.S. Constitution; and the Americans with Disabilities Act (ADA) and its implementing regulations. App. 85–86; R. Doc. 88, at 46–47 ¶¶ 315–318.

Defendant respectfully requests 20 minutes of oral argument.

i

Appellate Case: 25-1987    Page: 2    Date Filed: 10/07/2025 Entry ID: 5565546

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE .................................................................i

TABLE OF AUTHORITIES ............................................................iv

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................2

STATEMENT OF THE CASE ...........................................................4

    I.    The Supplemental Nutritional Assistance Program ..............4

        A.    Application, Interview, and Recertification
            Process ................................................................6

        B.    Fair Hearings ....................................................10

    II.    Procedural History ..........................................................11

SUMMARY OF THE ARGUMENT ....................................................16

ARGUMENT ................................................................................19

    I.    Standard of Review .........................................................19

    II.    Plaintiffs' Claims Are Not Justiciable Under
        Article III ......................................................................19

        A.    Empower Missouri Lacks Standing ...........................21

        B.    The Claims of the Three Individual Plaintiffs
            are Moot ...........................................................25

        C.    The Plaintiffs' Requests for Broad Systemic
            Relief Do Not Redress Their Individual Claims..........33

    III.    The District Court Erred in Granting Plaintiffs'
        Motion for Summary Judgment ..........................................37

        A.    The SNAP Act Does Not Create Enforceable
            Rights in Private Plaintiffs ..................................37

ii

B. The District Court's Due Process Analysis Was Flawed ........................................................................... 45

C. The District Court Erred Finding Defendant Violated the ADA ...................................................... 50

IV. The District Court's Remedial Order Is Improper and Excessive ................................................................................ 54

A. Plaintiffs Did Not Establish That They Do Not Have an Adequate Remedy at Law ............................ 54

B. The District Court's Grant of Statewide Relief Exceeded Its Authority ............................................... 56

C. The Ordered Relief is Incongruent With the Asserted Legal Violations ............................................. 58

CONCLUSION ................................................................................. 64

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Advantage Media, LLC v. City of Eden Prairie,*
456 F.3d 793 (8th Cir. 2006)................................................................20

*Agred Found. v. U.S. Army Corps of Eng'rs,*
3 F.4th 1069 (8th Cir. 2021) ...............................................................20

*Alexander v. Sandoval,*
532 U.S. 275 (2001)............................................................................43

*Allee v. Medrano,*
416 U.S. 802 (1974)............................................................................54

*Allen v. Wright,*
468 U.S. 737 (1984), *abrogated on other grounds by Lexmark*
*Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) .....33

*Arizonans for Official English v. Arizona,*
520 U.S. 43 (1997)..............................................................................21

*Atkins v. Parker,*
472 U.S. 115 (1985)......................................................................46, 47

*Bonner v. Cir. Ct. of City of St. Louis, Mo.,*
526 F.2d 1331 (8th Cir. 1975).......................................................54, 55

*Bostock v. Clayton Cnty., Georgia,*
590 U.S. 644 (2020)........................................................................3, 53

*Brakebill v. Jaeger,*
932 F.3d 671 (8th Cir. 2019)...............................................................19

*Califano v. Yamasaki,*
442 U.S. 682 (1979)........................................................................3, 58

*California v. Texas,*
593 U.S. 659 (2021)..................................................................2, 33, 35

*Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.,*
824 F.2d 665 (8th Cir.1987).................................................................64

iv

Appellate Case: 25-1987    Page: 5    Date Filed: 10/07/2025 Entry ID: 5565546

*Carson P. ex rel. Foreman v. Heineman,*
240 F.R.D. 456 (D. Neb. 2007)...........................................................64

*Central Bank of Denver v. First Interstate Bank of Denver,*
511 U.S. 164 (1994)...........................................................43

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983)...........................................................31

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013)...........................................................31

*Crawford v. F. Hoffman-La Roche Ltd.,*
267 F.3d 760 (8th Cir. 2001)...........................................................20

*Does v. Gillespie,*
867 F.3d 1034 (8th Cir. 2017).................................................*passim*

*eBay Inc. v. MercExchange, LLC,*
547 U.S. 388 (2006)...........................................................3, 54

*Elec. Privacy Info. Ctr. v.*
*Presidential Advisory Comm'n on Election Integrity,*
878 F.3d 371 (D.C. Cir. 2017)...........................................................24

*Filyaw v. Corsi,*
--- F.4th ----, --No. 24-3041, 2025 WL 2462965
(8th Cir. Aug. 27, 2025) .................................................*passim*

*Food and Drug Administration v.*
*Alliance for Hippocratic Medicine,*
602 U.S. 367 (2024)...........................................2, 19, 22-23, 24

*Goldberg v. Kelly,*
397 U.S. 254 (1970)...........................................................47

*Gonzaga University v. Doe,*
536 U.S. 273 (2002).................................................*passim*

*Havens Realty Corp. v. Coleman,*
455 U.S. 363 (1982)...........................................................22, 23, 24

*Health and Hospital Corporation of Marion County v. Talevski,*
599 U.S. 166 (2023).................................................*passim*

v

Appellate Case: 25-1987     Page: 6     Date Filed: 10/07/2025 Entry ID: 5565546

*Hickman v. State of Mo.*,
144 F.3d 1141 (8th Cir. 1998)..................................................................25-26

*Horne v. Flores*,
557 U.S. 433 (2009).................................................................................59

*Kontrick v. Ryan*,
540 U.S. 443 (2004).................................................................................20

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).................................................................................20

*Mathews v. Eldridge*,
424 U.S. 319 (1976)...........................................................................*passim*

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007).................................................................................36

*Medina v. Planned Parenthood South Atlantic*,
606 U.S. ---, 145 S. Ct. 2219 (2025).......................................2, 40, 41, 43

*Mickelson v. Cnty. of Ramsey*,
823 F.3d 918 (8th Cir. 2016)...................................................................49

*Mo. Prot. & Advoc. Servs. v. Carnahan*,
499 F.3d 803 (8th Cir. 2007)...................................................................30

*Murthy v. Missouri*,
603 U.S. 43 (2024)...................................................................................35

*Prowse v. Payne*,
984 F.3d 700 (8th Cir. 2021)...................................................................26

*Reed v. Goertz*,
598 U.S. 230 (2023).................................................................................46

*Religious Sisters of Mercy v. Becerra*,
55 F.4th 583 (8th Cir. 2022)...................................................................57

*Rinehart v. Weitzell*,
964 F.3d 684 (8th Cir. 2020)...................................................................51

*Rogers v. Scurr*,
676 F.2d 1211 (8th Cir. 1982)................................................................58

Appellate Case: 25-1987   Page: 7   Date Filed: 10/07/2025 Entry ID: 5565546

*Seminole Tribe of Florida v. Florida,*
517 U.S. 44 (1996)................................................................32

*Sierra Club v. Morton,*
405 U.S. 727 (1972)..............................................................24

*Sisney v. Kaemingk,*
15 F.4th 1181 (8th Cir. 2021) ..............................................21

*Spallone v. United States,*
493 U.S. 265 (1990)..............................................................58

*State of Maryland v. U.S. Dep't of Agric.,*
--- F. 4th ----, 2025 WL 2586795 (4th Cir. Sept. 8, 2025) ..............21, 33

*Torgerson v. City of Rochester,*
643 F.3d 1031 (8th Cir. 2011)...............................................19

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021).......................................................2, 24, 33, 35

*Trump v. CASA, Inc.,*
606 U.S. 831 (2025)......................................................3, 56, 57

*Warth v. Seldin,*
422 U.S. 490 (1975).........................................................33, 34

*Younger v. Harris,*
401 U.S. 37 (1971)................................................................55

*Yowell v. Combs,*
89 F.3d 542 (8th Cir. 1996)..................................................19

*Zinermon v. Burch,*
494 U.S. 113 (1990)..........................................................3, 46

**Statutes & Other Authorities:**

U.S. Const. amend. XI ........................................................32, 50

U.S. Const. amend. XIV ....................................................12, 45

U.S. Const. art. III................................................................*passim*

7 U.S.C. § 2011 ......................................................................4

Appellate Case: 25-1987   Page: 8   Date Filed: 10/07/2025 Entry ID: 5565546

7 U.S.C. § 2013 .................................................................4

7 U.S.C. § 2014 ...............................................................41

7 U.S.C. § 2014(a) ................................................12, 37, 40

7 U.S.C. § 2020(c)(2) .......................................................51

7 U.S.C. § 2020(d) .............................................................5

7 U.S.C. § 2020(e)(2) .......................................................41

7 U.S.C. § 2020(e)(2)(A) ...............................................5, 42

7 U.S.C. § 2020(e)(2)(B) ....................................5, 12, 37, 62

7 U.S.C. § 2020(e)(2)(B)(i) ..............................................41

7 U.S.C. § 2020(e)(2)(B)(ii)(II) ........................................42

7 U.S.C. § 2020(e)(2)(B)(iii) ............................................42

7 U.S.C. § 2020(e)(3) .......................................................49

7 U.S.C. § 2020(e)(9) .......................................................49

7 U.S.C. § 2020(e)(10) ........................................10, 52, 55

7 U.S.C. § 2020(e)(11) ................................................27, 28

7 U.S.C. § 2020(e)(18) .....................................................49

7 U.S.C. § 2020(g) ...........................................5, 6, 43, 44

7 U.S.C. § 2020(n) ...........................................................49

7 U.S.C. § 2020(r)(2) .......................................................49

7 U.S.C. § 2025 .................................................................6

28 U.S.C. § 1291...............................................................1

28 U.S.C. § 1331...............................................................1

42 U.S.C. § 1983........................................................*passim*

42 U.S.C. § 12101(b)(1)...................................................50

42 U.S.C. § 12132............................................................51

7 C.F.R. § 271.2..........................................................27, 28

Appellate Case: 25-1987    Page: 9    Date Filed: 10/07/2025 Entry ID: 5565546

7 C.F.R. § 273.2......................................................................................37

7 C.F.R. § 273.2(a)(2) ...........................................................................42

7 C.F.R. § 273.2(b)(4)(i) ........................................................................49

7 C.F.R. § 273.2(d)(1) ...........................................................................42

7 C.F.R. § 273.2(e)................................................................................42

7 C.F.R. § 273.2(e)(1) .......................................................................6, 60

7 C.F.R. § 273.2(e)(2) ...........................................................................60

7 C.F.R. § 273.2(e)(3) .............................................................................6

7 C.F.R. § 273.2(f) ................................................................................49

7 C.F.R. § 273.2(g) .............................................................................7, 8

7 C.F.R. § 273.2(h) .......................................................................7, 8, 61

7 C.F.R. § 273.10(f)(1)............................................................................9

7 C.F.R. § 273.14....................................................................................8

7 C.F.R. § 273.14(b) ...............................................................................9

7 C.F.R. § 273.14(b)(1)(ii)(G) ...............................................................10

7 C.F.R. § 273.15 .............................................................................10, 52

7 C.F.R. § 273.15(c)..............................................................................47

7 C.F.R. § 273.15(k) .............................................................................48

7 C.F.R. § 273.15(s) .........................................................................11, 55

7 C.F.R. § 273.17.......................................................................11, 47, 55

13 C.S.R. § 40-2.160..............................................................................52

Fed. R. Civ. P. 41(a)(1) .........................................................................11

FNS, *Waivers* .........................................................................................7

Mo. Const. art. IV § 28 .........................................................................35

Mo. H.B. 11 (2025) § 11.110 .................................................................45

Mo. H.B. 11 (2025) § 11.115 .................................................................45

Appellate Case: 25-1987     Page: 10     Date Filed: 10/07/2025 Entry ID: 5565546

Mo. H.B. 11 (2025) § 11.126 .................................................................45

Mo. H.B. 11 (2025) § 11.155 .................................................................45

Pub. L. 119-21, §§ 10105–10106, 139 Stat. 72 (2025) .............................4

RSMo § 208.080 ....................................................................... 10, 52

RSMo § 208.090 ..............................................................................11

RSMo § 208.100 ............................................................. 10, 11, 52

RSMo § 208.110 ....................................................................... 10, 52

RSMo § 536.140 ..............................................................................11

USDA, *Supplemental Nutrition Assistance Program:*
  *Payment Error Rates Fiscal Year 2024* (June 30, 2025) .......................5

Appellate Case: 25-1987    Page: 11    Date Filed: 10/07/2025 Entry ID: 5565546

# JURISDICTIONAL STATEMENT

The Amended Complaint asserts violations of three federal statutes and a constitutional provision. App. 40–90; R. Doc. 88. The district court exercised jurisdiction under 28 U.S.C. § 1331.

On May 9, 2024, the District Court entered summary judgment in favor of the Plaintiffs and against the Defendant. App. 220–59; R. Doc. 161.

On May 6, 2025, after an effort to resolve the case through mediation, the court entered a Remedial Order specifying performance metrics Defendant is required to achieve; a number of measures that Defendant is required to implement; and detailed reporting that Defendant is required to undertake. App. 268–279; R. Doc. 220, at 5–12.

Defendant timely filed a notice of appeal on May 16, 2025. R. Doc. 223. This court has jurisdiction under 28 U.S.C. § 1291.

Appellate Case: 25-1987    Page: 12    Date Filed: 10/07/2025 Entry ID: 5565546

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Did the Court err in finding Plaintiffs had standing and their claims were justiciable under Article III, where Plaintiff Empower Missouri relied on diversion of organizational resources to establish standing; the three individual Plaintiffs have received complete relief and are unlikely to experience future harm; and the relief Plaintiffs sought extended well beyond the individual injuries asserted?

   - *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024)

   - *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)

   - *California v. Texas*, 593 U.S. 659 (2021)

   - *Filyaw v. Corsi*, --- F. 4th ----, No. 24-3041, 2025 WL 2462965 (8th Cir. Aug. 27, 2025)

2. Did the Court err in finding Plaintiffs could bring a private action under 42 U.S.C. § 1983 to enforce provisions of the SNAP Act?

   - *Medina v. Planned Parenthood South Atlantic*, 606 U.S.----, 145 S. Ct. 2219 (2025)

   - *Health and Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166 (2023)

   - *Gonzaga University v. Doe*, 536 U.S. 273 (2002)

   - *Does v. Gillespie*, 867 F.3d 1034 (8th Cir. 2017)

2

Appellate Case: 25-1987     Page: 13     Date Filed: 10/07/2025 Entry ID: 5565546

**3.** Did the Court err in finding Defendant violated Plaintiffs' due process rights when it did not apply a balancing test considering the State's interests and failed to consider the extensive post-deprivation remedies available?

- *Mathews v. Eldridge*, 424 U.S. 319 (1976)

- *Zinermon v. Burch*, 494 U.S. 113 (1990)

- *Filyaw v. Corsi*, --- F. 4th ----, No. 24-3041, 2025 WL 2462965 (8th Cir. Aug. 27, 2025)

4. Did the Court err in finding Defendant violated the ADA, where the two Plaintiffs with disabilities received the benefits to which they were entitled and did not show they received different treatment because of their disabilities?

- *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020)

5. Did the Court err in granting a universal injunction in a non-class action, where every individual Plaintiff had an adequate remedy at law, and by ordering Defendant to meet performance goals not based on any law?

- *Trump v. CASA, Inc.*, 606 U.S. 831 (2025)

- *Califano v. Yamasaki*, 442 U.S. 682 (1979)

- *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)

Appellate Case: 25-1987    Page: 14    Date Filed: 10/07/2025 Entry ID: 5565546

## STATEMENT OF THE CASE

## I.   The Supplemental Nutritional Assistance Program

The Supplemental Nutritional Assistance Program (SNAP) is a federally-funded program overseen by the U.S. Department of Agriculture (USDA) through the Food and Nutrition Service (FNS) and administered by participating States under 7 U.S.C. §§ 2011 *et seq.* [1]

SNAP provides eligible households with a monthly benefit for the purchase of food. Historically, the federal government has provided full funding for the benefits and 50 percent of the administrative cost, with each participating State paying its remaining administrative costs. 7 U.S.C. § 2013. However, the recent budget reconciliation bill (sometimes referred to as the One Big Beautiful Bill) will require States to pay 75 percent of administrative costs beginning October 1, 2026, as well as a portion of the benefit costs (between 6 and 15 percent) for many States beginning January 1, 2028. *See* Pub. L. 119-21, §§ 10105–10106, 139 Stat. 72, 83–84 (2025).[2]

---

[1] Plaintiffs and the district court refer to this as "[t]he SNAP Act." USDA and FNS refer to it as the Food and Nutrition Act of 2008, as amended. For consistency, this brief also refers to the SNAP Act.

[2] The new law requires States with a "payment error rate" in excess of 6 percent to contribute to the cost of SNAP benefits, with the amount of the

4

Appellate Case: 25-1987   Page: 15   Date Filed: 10/07/2025 Entry ID: 5565546

The SNAP Act assigns responsibility for certifying applicant households and issuing benefits to the participating State and requires each State to have a "plan of operation," approved by FNS, "specifying the manner in which such program will be conducted within the State in every political subdivision." 7 U.S.C. § 2020(d). The State agency is responsible for "establish[ing] procedures governing the operation of [SNAP] offices that the State agency determines best serve households in the State." *Id.* § 2020(e)(2)(A). "In carrying out" this responsibility, the agency "shall provide timely, accurate, and fair service to applicants." *Id.* § 2020(e)(2)(B).

If FNS determines that there is a "failure by a State agency without good cause to comply" with any statutory or regulatory provision or the State plan of operation, it "shall allow the State agency a specified period of time for the correction of such failure." *Id.* § 2020(g). If the State agency does not correct such failure, the Secretary "may refer the matter

contribution pegged to the error rate. In fiscal year 2024, forty-one States, including Missouri, had payment error rates over 6 percent. *See* USDA, *Supplemental Nutrition Assistance Program: Payment Error Rates Fiscal Year 2024* (June 30, 2025), available at: https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-fy24QC-PER.pdf (last accessed Oct. 2, 2025).

5

Appellate Case: 25-1987     Page: 16     Date Filed: 10/07/2025 Entry ID: 5565546

to the Attorney General with a request that injunctive relief be sought to require compliance[.]" *Id.* FNS also may withhold funding from the State for non-compliance and is required to impose financial penalties if the State's payment error rate exceeds certain thresholds. *Id.*; 7 U.S.C. § 2025.

## A. Application, Interview, and Recertification Process

"Initial certification" refers to the process of applying for SNAP benefits for the first time. FNS requires "face-to-face interview[s] with an eligibility worker at initial certification and at least once every 12 months thereafter" to verify certain information contained on the application. 7 C.F.R. § 273.2(e)(1). In Missouri, face-to-face interviews take place at DSS's Family Support Division Resource Centers, which have 124 locations, including at least one center in each county and St. Louis city. *See* R. Doc. 152-3, at 1 ¶ 6.

Generally, State agencies administering SNAP "must schedule all interviews as promptly as possible" and "must notify each household that misses its interview appointment that it missed the scheduled interview and that the household is responsible for rescheduling a missed interview." 7 C.F.R. § 273.2(e)(3). A State agency is required to make a

6

certification decision on an application within 30 days, except in specified circumstances addressed in the rules.  7 C.F.R. § 273.2(g), (h).

Missouri operates under a waiver[3] from FNS permitting it to conduct "on-demand" interviews, in which households have the option to complete a telephone interview rather than receive a pre-assigned time to interview in-person at a Resource Center.  *See* App. 211–15; R. Doc. 145-7, 1–5.

DSS uses a centralized phone system to conduct SNAP interviews. *Id.* at 3.  Applicants interact with SNAP customer service employees who work in the call centers by phone, text, and internet chat. R. Doc. 152, at 41 ¶ 150.  After submitting an application, SNAP applicants are added to the phone system's "predictive dialer" list and receive a phone call during which they complete their SNAP interview. *Id.* at 49 ¶ 207.  Applicants are notified to expect the call and strongly encouraged to complete their interviews within five days of applying. *See, e.g.*, App. 120; R. Doc. 138-12, at 30 (notice provided to Ms. Holmes).

---

[33] FNS permits States to request "waivers" of the interview rules in some circumstances.  *See* FNS, *Waivers*, available at: https://www.fns.usda.gov/snap/state/interview-toolkit/choices/waivers (last accessed Oct. 2, 2025).  Missouri has availed itself of two of these waivers.

Appellate Case: 25-1987     Page: 18     Date Filed: 10/07/2025 Entry ID: 5565546

If an applicant does not complete their interview upon receiving the call, and no interview is completed within five days of application, the applicant receives a Notice of Missed Interview (NOMI) informing them of their responsibility to complete an interview. *See* App. 213; R. Doc. 145-7, at 3; *see also, e.g.*, App. 122; R. Doc. 138-12, at 32 (NOMI provided to Ms. Holmes). If an applicant does not complete an interview within 30 days, DSS must determine whether non-completion of the interview is the fault of the applicant in accordance with the criteria provided in federal regulations. *See* 7 C.F.R. § 273.2(g), (h). If the failure to interview is determined to be the fault of the applicant, DSS must deny the application. *Id.*

If an application is denied for failure to interview or for any other reason, the applicant receives an "Action Notice" informing the applicant of the determination and that they may contact the Family Support Division (FSD) of DSS by phone, in person, or by mail to ask for a hearing within 90 days. *See, e.g.*, App. 126–28; R. Doc. 138-12, at 36–38 (Action Notice provided to Ms. Holmes).

An individual who already receives SNAP benefits is also required to apply for "recertification" periodically. 7 C.F.R. § 273.14. This is

8

usually done every 12 months, but recertification is required only every 24 months for some populations, including the individual Plaintiffs in this matter. *See id.* § 273.10(f)(1) (allowing recertification every 24 months for households in which all adult members or elderly or disabled).[4] Recertification requires SNAP participants to complete a form, interview, and undergo further verifications if certain changes are reported, *id.* § 273.14(b), and participants recertifying for benefits similarly receive notice that they will be contacted for a phone interview if one is required and are encouraged to accept the call, *see, e.g.*, App. 197–98; R. Doc. 138-104, at 10–11 (notice provided to Mr. Dallas).

Missouri SNAP operates under a second waiver allowing Defendant to automatically forgo the interview requirement at recertification for households with no earned income in which all adult members are elderly or disabled.[5] *See* App. 202–04; R. Doc. 145-2, Tr. 235:20–237:25.

---

[4] When the Parties briefed their motions for summary judgment, Plaintiffs Holmes and Dallas qualified for recertification every 24 months. *See* App. 131; R. Doc. 138-15, at 2 (Holmes benefit months); App. 138; R. Doc. 138-22, at 2 (Dallas benefit months). In the interim time, Plaintiff Davis has turned 60 and would also now qualify for recertification every 24 months instead of annually. *Infra*, § II(B).

[5] Criteria for the elderly or disabled interview waiver are the same as for the 24-month certification period. *See supra* n.3.

Appellate Case: 25-1987    Page: 20    Date Filed: 10/07/2025 Entry ID: 5565546

SNAP recipients who are required to interview have the option to go to one of DSS's Resource Centers and request a face-to-face interview. DSS encourages applicants and recipients who are having trouble completing an interview through the telephone system to do so. *See, e.g.*, App. 197–98; R. Doc. 138-104, at 10–11 (notice provided to Mr. Dallas). SNAP participants receive notice of their right to request a fair hearing if the recertification is denied. *See, e.g.*, *id.*; 7 C.F.R. § 273.14(b)(1)(ii)(G).

## B. Fair Hearings

The SNAP Act and its implementing regulations require States to provide administrative hearings—known as fair hearings—to households challenging adverse decisions. 7 U.S.C. § 2020(e)(10); 7 C.F.R. § 273.15; *see also*, §§ 208.080, 208.100, 208.110 RSMo; 13 C.S.R. § 40-2.160. These procedures include notice of the agency's decision, an administrative hearing on the record before an impartial hearing officer not involved in the original decision, the ability to adduce evidence, the ability to compel production of evidence/witnesses through subpoena, access to the record to prepare for the hearing, the ability to examine and cross-examine witnesses, the ability to be represented by counsel, and requires the agency decision be entered in writing. 7 C.F.R. § 273.15. If the

10

administrative hearing determines that the State agency decision was incorrect, any benefits lost as a result of the State's error are restored. § 208.090 RSMo; 7 C.F.R. §§ 273.15(s), 273.17.

A SNAP household aggrieved by the final agency decision may appeal to a Missouri State circuit court. § 208.100 RSMo. These appeals must be advanced in State court "for immediate hearing and determination," which is then appealable to the State court of appeals. *Id.* §§ 208.110, 536.140; 208.110.

## II. Procedural History

Rather than availing themselves of the administrative remedies, two individual Plaintiffs who claimed that their applications were improperly terminated for failure to complete an interview, together with Empower Missouri, an advocacy organization, brought suit against Defendant in the Western District of Missouri on February 22, 2022. Plaintiffs filed an Amended Complaint naming three individuals and Empower Missouri as Plaintiffs on March 22, 2023.[6]

---

[6] A fourth Plaintiff was named in the Amended Complaint under the pseudonym "L.V."; her claims were voluntarily dismissed pursuant to Fed. R. Civ. P. 41(a)(1) on June 22, 2023. R. Doc. 114.

Appellate Case: 25-1987     Page: 22     Date Filed: 10/07/2025 Entry ID: 5565546

Plaintiffs assert four claims: (1) that Defendant's "policies, practices and procedures of denying applications for Missouri's SNAP program" violate 7 U.S.C. § 2014(a), 7 U.S.C. § 2020(e)(2)(B), and their implementing regulations; (2) that Defendant's "policies, practices and procedures of failing to ensure that Missourians are able to submit an application for SNAP on the first day that they contact the agency violate 7 U.S.C. § 2020(e)(2)(B) and implementing regulations;" (3) that Defendant's "policies, practices and procedures deprive Plaintiffs of fair access to SNAP benefits by using an inaccessible call center for mandatory interviews, failing to provide notices, and subjecting otherwise eligible individuals to arbitrary denials of benefits in violation of the Due Process Clause of the 14th Amendment to the Constitution"; and (4) that Defendant's actions, omissions, policies, practices and procedures violate the Americans with Disabilities Act (ADA) and implementing regulations promulgated by the U.S. Department of Justice. App. 86–87; R. Doc. 88, at 47–48 ¶¶ 315–18. Plaintiffs sought declaratory judgment, permanent injunction, and attorney's fees. App. 86–89; R. Doc. 88, at 47–50 ¶¶ A–D.

Appellate Case: 25-1987    Page: 23    Date Filed: 10/07/2025 Entry ID: 5565546

The parties filed cross-motions for summary judgment. R. Doc. 138 (Pls. Mot.); R. Doc. 145 (Defs. Mot.). On May 9, 2024, the District Court entered summary judgment in favor of the Plaintiffs and denied Defendant's motion. App. 220–59; R. Doc. 161. The Order required Defendant to file monthly reports with the court providing statewide statistics about its processing of applications, and to send copies of these reports to members of Missouri's legislative and executive branches. App. 258–59; R. Doc. 161, at 39–40. Defendant appealed the May 9, 2024 Order, docket no. 24-2192, but the appeal was dismissed on July 19, 2024 for lack of jurisdiction because there was not yet a final entry of judgment.

On February 18, 2025, after efforts at mediation failed, the court set a hearing at which it "request[ed] the presence of representatives of the Governor's office, the Department of Social Services, and the House and Senate appropriations and budget committees." R. Doc. 211. The court noted that it "prefers the representatives to be elected officials, however staff may attend if they are fully knowledgeable about the status of funding requests related to the administration of the SNAP program." *Id.* At the hearing, the court inquired whether legislators were present,

13

Appellate Case: 25-1987    Page: 24    Date Filed: 10/07/2025 Entry ID: 5565546

and the assistant attorney general representing Defendant apologized that they had not been notified. App. 274–75; R. Doc. 226, Tr. 3:10–4:6. It appears the attorney mistakenly consulted the date and time set for the hearing in the accompanying minute entry, rather than the Order itself. *See id.*

On May 6, 2025, the court entered its Remedial Order and final judgment. *See* App. 260–72; R. Doc. 220. At the outset, the court stated that "Defendant apparently chose to ignore the Court's request and failed to advise representatives of the House and Senate appropriations and budget committees of the hearing and the Court's request for attendance," and found the failure to notify them "suspect" when Defendant "is allegedly seeking and needing additional resources." App. 268–279; R. Doc. 220, at 4. The court then set forth an extensive Remedial Order in which it ordered Defendant to "take whatever steps are necessary" to "reduce the average wait time . . . so that 90% of callers have no more than a 20 minute wait time" and "bring the number of applications which are rejected for failure to interview to no more than 20% of all applications." App. 264–65; R. Doc. 220, at 5–6. The Order additionally provided 26 detailed operational requirements for

14

Defendant to implement, including additional monthly reporting requirements (with previously ordered reporting to continue as well). App. 265–70; R. Doc. 220, at 6–11. The court provided that it would "consider more specific and extensive remedial changes" if it found a lack of "substantial progress toward the benchmarks set forth" within six months of the Remedial Order. App. 265; R. Doc. 220, at 6.

Defendant now appeals the district court's Order on summary judgment, App. 220–59; R. Doc. 161, and its subsequent Remedial Order, App. 260–271; R. Doc. 220.

15

Appellate Case: 25-1987    Page: 26    Date Filed: 10/07/2025 Entry ID: 5565546

## SUMMARY OF THE ARGUMENT

The district court's summary judgment Order reflects numerous legal errors that should be reversed as a matter of law. But even if this Court upholds judgment for Plaintiffs on some or all grounds, the district court exceeded its authority and abused its discretion in granting the relief that it did in its Remedial Order.

First, Plaintiffs' claims were not justiciable from the outset. Empower Missouri lacked standing to bring any of the counts in this case because it has not suffered an injury-in-fact: expending funds on advocacy efforts or diverting organizational resources is insufficient for standing. The three individual Plaintiffs have received the benefits to which they were entitled, so also have no injury-in-fact. Even if one or more of the Plaintiffs did suffer a concrete injury, their claims fail the "redressability" element of Article III standing because the relief that they seek (and were awarded) does not align with, and extends well beyond, their own alleged harms.

Second, the court erred in allowing Plaintiffs to enforce provisions of the SNAP Act at all. The Act contains no rights-creating language enforceable via 42 U.S.C. § 1983, and itself provides no private remedy to

16

Appellate Case: 25-1987     Page: 27     Date Filed: 10/07/2025 Entry ID: 5565546

individuals or advocacy groups. Instead, it provides a system of administrative and judicial review for individuals. The Act delegates enforcement only to the Secretary of Agriculture and allows only the U.S. Attorney General to seek injunctive relief through federal courts.

Third, the court erred in finding Defendant violated Plaintiffs' due process rights. Empower Missouri is not entitled to SNAP benefits and has no standing to bring such a claim. Even if the other Plaintiffs had a protected property interest, the court did not properly conduct the *Mathews v. Eldridge* balancing test because it ignored the State's interests as well as the availability of post-deprivation remedies.

Fourth, the court erred in finding Defendant violated the ADA. Only Plaintiffs Holmes and Dallas were qualified individuals with a disability, and neither was denied benefits, treated differently, or subjected to discrimination based on their disability.

Finally, the court erred by granting a universal, statewide injunction for non-parties and without considering whether there was an adequate remedy at law. The court ordered relief far beyond that required for complete relief to the Plaintiffs and treated this case as a

17

class action without following any of the rules associated with class actions.

For these reasons, the court erred in granting summary judgment in favor of the Plaintiffs and in denying Defendant's motion for summary judgment. Defendant was entitled to summary judgment as a matter of law. Alternatively, even if the individual Plaintiffs were entitled to relief on some counts, the case should be remanded for the district court to limit its relief to the individual Plaintiffs in this case and the causes of action for which there is a cognizable claim.

Appellate Case: 25-1987    Page: 29    Date Filed: 10/07/2025 Entry ID: 5565546

# ARGUMENT

## I. Standard of Review

Section II addresses the justiciability of Plaintiffs' claims. Those issues are purely questions of law and are therefore reviewed *de novo*. *See, e.g.*, *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir. 1996).

Section III challenges the district court's grant of summary judgment for the Plaintiffs. A grant of summary judgment is reviewed de novo, and the facts and inferences drawn from them in the light most favorable to the non-moving party. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

Section IV challenges the district court's Remedial Order. "The ultimate decision to grant an injunction is reviewed for abuse of discretion, with factual findings examined for clear error and legal conclusions considered *de novo*." *Brakebill v. Jaeger*, 932 F.3d 671, 676 (8th Cir. 2019) (citation omitted).

## II. Plaintiffs' Claims Are Not Justiciable Under Article III

The U.S. Constitution limits federal judicial power to actual "Cases" or "Controversies." U.S. Const. art. III, § 2; *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 368 (2024). The "core component of standing is an essential and unchanging part of the case-or-controversy

19

Appellate Case: 25-1987     Page: 30     Date Filed: 10/07/2025 Entry ID: 5565546

requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "Whether a party has established the traditional elements of Article III standing is thus an inescapable threshold question." *Advantage Media, LLC v. City of Eden Prairie*, 456 F.3d 793, 799 (8th Cir. 2006). To establish standing, a plaintiff must have suffered an "injury in fact" that is "actual, concrete, and particularized," caused by the defendant, and "likely" to be "redressed by a favorable decision." *Id.* (citation omitted).

Plaintiffs bear the burden to establish standing, *id.*, and if they cannot, the complaint must be dismissed. *Agred Found. v. U.S. Army Corps of Eng'rs*, 3 F.4th 1069, 1073 (8th Cir. 2021). Standing may be raised at any time, even on appeal, and courts have an independent duty to ensure subject matter jurisdiction. *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 764, n.2 (8th Cir. 2001).

Article III standing further requires that the dispute between the parties remains live and is not moot. As the Supreme Court has explained, "[m]ootness can be described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its

20

existence (mootness).'"  *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 n.22 (1997) (cleaned up); *see also Sisney v. Kaemingk,* 15 F.4th 1181, 1194 (8th Cir. 2021).

In this case, neither the district court nor this court has Article III jurisdiction:  the claims of the three individual Plaintiffs are moot, and the fourth Plaintiff—Empower Missouri—has not established an injury-in-fact.  Moreover, no plaintiff meets the "redressability" component of the standing inquiry, because there is a "a fatal disconnect between the plaintiffs' alleged injury and the sweeping relief they requested."  *See State of Maryland v. U.S. Dep't of Agric.,* --- F. 4th ----, 2025 WL 2586795, *7 (4th Cir. Sept. 8, 2025).

## A.    Empower Missouri Lacks Standing.

The district court's holding that Empower Missouri had standing to bring this lawsuit is counter to Supreme Court precedent and should be reversed.

As described in the Amended Complaint, Empower Missouri "conducts advocacy work in pursuit of two guiding principles: that all people in Missouri should have true access to adequate nutrition, quality healthcare, decent housing, and appropriate education; and all people in

21

Missouri should be treated with dignity and fairness." App. 83; R. Doc. 88, at 44 ¶ 299. Empower Missouri claims to have "diverted significant organizational resources to counteract Defendant's practices" by, among other things, advocating for policies and practices that it thinks would improve access to SNAP and other benefits in monthly phone calls with DSS; providing resources and information to anti-hunger advocates and providers; communicating with DSS "regarding agency failures in the SNAP program"; and engaging in legislative advocacy to ensure that SNAP is available "to as many Missourians as possible." *Id.* at 44–46 ¶¶ 306–312; *see also* R. Doc. 138, at 25 ¶¶ 115–119.

The district court concluded that Empower Missouri met its burden of establishing standing because it only needed to "show direct injury by a diversion of organizational resources to identify or counteract the allegedly unlawful action." App. 246; R. Doc. 161, at 27, citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982). But the Supreme Court recently rejected the theory that mere diversion of resources by an advocacy group was a constitutionally cognizable injury for purposes of establishing organizational standing. *All. for Hippocratic Med.*, 602 U.S.

22

at 395. Otherwise, as the Court explained, "all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *Id.*

In rejecting the notion that an organization's "diversion of resources" was a concrete injury, the Court expressly distinguished the case on which the district court relied here, noting that "*Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context." *Id.* at 396. The "context" of *Havens* was that the organizational group in that case "not only was an issue-advocacy organization, but also operated a housing counseling service." *Id.* at 395. The organization in that case claimed an "informational injury" that not only required diversion of its resources to rectify but that also "directly affected and interfered with [its] core business activities" by "impair[ing]" its "ability to provide counseling and referral services for low- and moderate-income homeseekers." *Id.* On that record, the Court in *Havens* concluded that the organization had a concrete injury sufficient to establish standing.

23

Appellate Case: 25-1987     Page: 34     Date Filed: 10/07/2025 Entry ID: 5565546

Empower Missouri does not establish an injury akin to that in *Havens*. Rather, its sole injury appears to be that it spent time bringing issues to the attention of DSS and the legislature. But "merely seeking to ensure a defendant's 'compliance with regulatory law'" is "not grounds for Article III standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427–428 (2021) (citation omitted). "Like an individual, an organization may not establish standing simply based on the 'intensity of the litigant's interest' or because of strong opposition to the government's conduct." *All. for Hippocratic Med.,* 602 U.S. at 394 (cleaned up). This is true "no matter how longstanding the interest and no matter how qualified the organization." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972).

To the extent *Havens* suggested "diversion of resources" in and of itself was a sufficiently concrete injury for standing purposes, *Alliance for Hippocratic Medicine* has clarified that it is not. 602 U.S. at 370; 394–95 ("[A]n organization . . . cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action."); *see also Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017) (A "self-inflicted budgetary choice . . . cannot qualify as an injury in fact.")

24

Even if it expended resources identifying issues and advocating for solutions, Empower Missouri cannot show that Defendant's conduct injured its own interests. It alleges no cognizable interest in SNAP benefits, no right to due process related to SNAP, and no theory of harm under the ADA. *See* App. 83–85; R. Doc. 88, at 44–46 ¶¶ 298–314; R. Doc. 138, at 25–26 ¶¶ 115–25. Empower Missouri is not a membership organization, nor has it assisted the individual Plaintiffs or anyone else in obtaining SNAP benefits. App. 218–19; R. Doc. 160, Tr. 72:3–73:12. It attests to no "individual relationships" with any SNAP applicants or participants at all. *Id.* Tr. 73:9–12.

Instead, Empower Missouri's claims indicate a redirection of resources to vindicate the interests of third parties, namely "all people in Missouri" seeking "access to adequate nutrition, quality healthcare, decent housing, and appropriate education." *See* App. 83; R. Doc. 88, at 44 ¶ 299. These broad aims do not support Article III standing, and Empower Missouri should be dismissed as a Plaintiff.

## B. The Claims of the Three Individual Plaintiffs are Moot.

When a case no longer presents an actual, ongoing dispute, it is moot and the court lacks Article III jurisdiction. *Hickman v. State of Mo.*,

25

144 F.3d 1141, 1142 (8th Cir. 1998). A case becomes moot when changed circumstances have already provided relief, eliminating the need for further court action. *Prowse v. Payne*, 984 F.3d 700, 702 (8th Cir. 2021).

Here, each of the three individual Plaintiffs has received complete relief and is unlikely to suffer future harm, making their claims moot. First, Defendant provided Plaintiffs Holmes and Davis with their interviews, resulting in approval for SNAP benefits and payment of any retroactive benefits due. Second, Missouri SNAP currently operates under a waiver exempting elderly and disabled participants (which would include all three of these Plaintiffs) from the interview requirement at recertification, so the issue is unlikely to arise again for these Plaintiffs. Third, Defendant implemented more robust measures to ensure individuals are able to notify Defendant of disabilities and request accommodations. Specifically:

    a. Ms. Holmes was at first unable to complete her SNAP interview, delaying her approval for SNAP benefits. *See* App. 72; R. Doc. 88, at 33 ¶ 204. After filing suit, she was able to interview and began receiving her SNAP benefits. App. 68; R. Doc. 88, at 29 ¶ 163. Ms. Holmes received retroactive

Appellate Case: 25-1987    Page: 37    Date Filed: 10/07/2025 Entry ID: 5565546

benefits from the time the application was filed, which is the relief specified by federal law when benefits have been wrongfully denied or terminated. R. Doc. 183, at 5; 7 U.S.C. § 2020(e)(11). Ms. Holmes has not established that she would be required to complete an interview upon recertifying her SNAP benefits, because she meets the requirements for Missouri's recertification interview waiver: she is considered "disabled" because she receives Supplemental Security Income, and she reports having no adult household members with earned income. *See* 7 C.F.R. § 271.2 ("Elderly or disabled member"); R. Doc. 138, at 15 ¶ 33; App. 111; R. Doc. 138-12, at 21. Ms. Holmes argues that her circumstances are unlikely to change. *See, e.g.*, R. Doc. 155, at 5–6.

b. Ms. Davis was unable to complete her SNAP interview, delaying her approval for SNAP benefits. *See* App. 80; R. Doc. 88, at 41 ¶ 272. After joining this lawsuit, Ms. Davis was able to interview and began receiving her SNAP benefits. R. Doc. 138, at 25 ¶ 112. Ms. Davis received retroactive benefits from the time the application was filed, which is the

27

Appellate Case: 25-1987    Page: 38    Date Filed: 10/07/2025 Entry ID: 5565546

relief specified by federal law when benefits have been wrongfully denied or terminated. R. Doc. 183, at 5; 7 U.S.C. § 2020(e)(11). Ms. Davis has not established that she would be required to complete an interview upon recertifying her SNAP benefits, because she meets the requirements for Missouri's recertification interview waiver: she is "elderly" for the purposes of SNAP and reports no earned income on her part or for any adult household member. *See* 7 C.F.R. § 271.2 ("Elderly or disabled member"); App. 182; R. Doc. 138-24, at 1 ¶ 1 (averring over two years ago that Ms. Davis was 58 years old); App. 148; R. Doc. 138-23, at 5. Ms. Davis argues that her circumstances are unlikely to change. *See, e.g.*, R. Doc. 155, at 5–6.

c. In 2023, Mr. Dallas received notice that he must complete recertification paperwork to maintain his SNAP benefits, and he attempted to call in to the DSS information line to request help completing the paperwork due to his disability. R. Doc. 138, at 16–19 ¶¶ 59–70. With assistance from a legal services organization, Mr. Dallas was able to submit his

28

Appellate Case: 25-1987    Page: 39    Date Filed: 10/07/2025 Entry ID: 5565546

recertification paperwork, after which he continued to receive SNAP benefits without ever experiencing a lapse. R. Doc. 138, at 22 ¶ 82. Mr. Dallas had noted on a Change Report over a year earlier that he has epilepsy and needed help, but that report was complete as submitted to FSD and had not caused any delays or problems with his SNAP benefits. *See* R. Doc. 152, at 19 ¶ 70–72; App. 208–10; R. Doc. 145-3, Tr. 73:20–75:6.

For applicants and participants like Mr. Dallas who have disabilities and would like assistance, Defendant has implemented ADA notices with instructions for participants on how to request an accommodation for disabilities. *See* App. 276–80; R. Doc. 228-1. The new notice accompanies Defendant's policy and process of tracking approved ongoing accommodation(s), so that individuals who request reasonable accommodations will not need to do so repeatedly. *See* App. 278–79; R. Doc. 228-1, at 3–4.

The district court erroneously concluded that these three individuals' claims were not moot, holding that a "defendant's voluntary cessation of a challenged practice does not deprive a federal court of its

29

power to determine the legality of the practice unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." App. 247; R. Doc. 161, at 28 (citing *Mo. Prot. & Advoc. Servs. v. Carnahan*, 499 F.3d 803, 811 (8th Cir. 2007) (*MOPAS*)). In the district court's view, "[t]his one-time interview does not address the continued problems with Defendant's system, nor the challenges Plaintiffs will face when they must recertify their benefits." *Id.*

But the fact that Defendant's call center may continue to pose difficulties in completing an interview for some applicants—all of whom have the option of going to a Resource Center for a face-to-face interview—does not exempt the Plaintiffs' claims from mootness. As this Court explained in the *MOPAS* case, an individual plaintiff whose "lawsuit has effectively remedied his only injury" does not have standing to "pursue broad equitable relief to remedy perceived injury to others." 499 F.3d at 811 ("This he may not do.").

Second, with respect to potential future injury to these three individuals, even if they were required to undergo interviews in the future, the possibility that they *may* at some point encounter difficulties in completing a telephone interview is not a sufficiently concrete injury

30

to confer standing. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983). A plaintiff seeking injunctive relief must show that he "will again be wronged in a similar way," *id.* at 111, and the "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 401 (2013) (emphasis in original).

It is far from certain, much less likely, that the individual Plaintiffs will suffer the same alleged injury in the future. DSS processes between 28,000 and 40,000 SNAP interviews each month, with the vast majority of eligible applicants completing their interviews. R. Doc. 148, at 11 ¶ 1; *see* R. Doc. 237-1 (showing number of application determinations per month and number of denials for failure to interview). To maintain standing despite having been interviewed and allotted their SNAP benefits, Plaintiffs Holmes and Davis would have had to allege, at the very least, that they will not qualify for the elderly and disabled interview waiver upon recertification (or that Missouri will terminate that waiver); that they will not be able to respond to an incoming call from DSS's predictive dialer; and that they will not be able to go to a Resource Center for a face-to-face interview. Plaintiff Dallas would further have to show that he will be unable to complete his forms without an accommodation

31

Appellate Case: 25-1987     Page: 42     Date Filed: 10/07/2025 Entry ID: 5565546

and that he will not receive a reasonable accommodation in the future. Because they have not done so, and because they cannot assert claims on behalf of non-parties, the individual Plaintiffs' claims are moot.

In addition, because Plaintiffs cannot show "a real likelihood" that their alleged injuries will recur, the Eleventh Amendment bars the court from exercising jurisdiction over their claims. *Filyaw v. Corsi,* --- F. 4th ----, No. 24-3041, 2025 WL 2462965, *6 (8th Cir. Aug. 27, 2025); *see also Seminole Tribe of Florida v. Florida,* 517 U.S. 44 (1996) ("The Eleventh Amendment restricts the judicial power under Article III[.]"). As this Court explained in the *Filyaw* case, the "narrow" *Ex Parte Young* exception to the Eleventh Amendment is available only when there is an "ongoing violation of federal law." *Id.* at *3. In that case, the Court held that the plaintiff's receipt of an allegedly deficient notice "occurred at a discrete point in the past and is not a continuing violation" and that "the chain of causation . . . to receive the same [n]otice" in the future was "too attenuated" to represent a real likelihood that her rights would be violated in the future. *Id.* at *6. Here too, Plaintiffs fail to establish standing where they have not shown a likelihood of future harm.

32

## C. The Plaintiffs' Requests for Broad Systemic Relief Do Not Redress Their Individual Claims.

Each Plaintiff must demonstrate standing for each claim and each form of relief sought. *TransUnion*, 594 U.S. at 431. The relief sought must operate with respect to specific parties and, as part of the standing inquiry, courts must consider the relationship between the "relief requested" and the "injury suffered." *E.g.*, *California v. Texas*, 593 U.S. 659, 671 (2021). Plaintiffs lack standing when the relief sought goes "well beyond the violation of law alleged," *State of Md. v. USDA*, —F.4th—, 2025 WL 2586795, *6–10 (4th Cir. 2025) (citing *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014)), or principally vindicates the rights of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citation omitted).

Here, in a non-class action, four Plaintiffs—three individuals and one organization—seek a universal, statewide injunction to vindicate the rights of "all applicants for SNAP" and "all Missouri residents." App. 88; R. Doc. 88, at 49–50 ¶ E. They asked the court to institute "statewide and systemic policies and procedures" related to "in-person staffing of DSS offices," not just limited to those offices Plaintiffs may wish to access;

33

Appellate Case: 25-1987    Page: 44    Date Filed: 10/07/2025 Entry ID: 5565546

and the "meaningful opportunity for all applicants to complete their "required verifications[] and all other elements of the SNAP application," though the individual Plaintiffs make no allegations related to verification requirements or all aspects of the SNAP application process. *See* App. 67–83; R. Doc. 88, 28–44 ¶¶ 162–297. And, as set forth above in Section II(A), Empower Missouri is an advocacy organization that has no cognizable injury that is redressable.

The Plaintiffs unintentionally illustrated the inappropriateness of their requested relief by providing affidavits of third-party "witnesses," purportedly to show that systemic and statewide reform is needed. App. 219; R. Doc. 160, Tr. 73:5–18. However, Plaintiffs cannot "rest [their] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citations). The statewide, systemic scope of the requested relief far surpasses the allegations and showings Plaintiffs have made with respect to their individual injuries.

Other provisions of the relief, like the requirement to increase staffing at DSS Resource Centers and call centers, cannot be imposed on the Defendant because they require action by third parties. Indeed, the district court appeared to acknowledge this by requiring that monitoring

34

reports be sent to the Missouri Governor's Office, leaders of Missouri's Senate Budget Committee, House Budget Committee, House Social Service Appropriations Committee, and the majority and minority leadership of both houses of the legislature, *see* App. 258; R. Doc. 161, at 39, and by requesting that representatives of the Governor's office and the legislature attend the hearing to determine the scope of relief, App. 263; R. Doc. 220, at 4. But "[f]ederal courts do not exercise general legal oversight of the Legislative and Executive Branches," *TransUnion,* 594 U.S. at 423–24, and relief that depends on the actions of entities not before the court fails to satisfy the redressability inquiry, *see Murthy v. Missouri*, 603 U.S. 43, 73–74 (2024). Under the Missouri Constitution, DSS can spend only the funds appropriated to it. Mo. Const. art. IV § 28. By assigning responsibility for reform to Defendant while simultaneously recognizing the necessity of legislative action, the court highlights its own inability to order the relief Plaintiffs seek, making their claims unredressable.

Further, a request for declaratory relief does not create or preserve a live case or controversy on its own. *California v. Texas*, 593 U.S. at 673 (2021) (holding that the presence of declaratory relief "cannot alone

35

supply jurisdiction otherwise absent.") (citation omitted). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). For litigation concerning government defendants, declaratory relief may satisfy the redressability prong of standing when the plaintiff faces the choice between "abandoning his rights or risking prosecution," for example when an individual challenges a law threatened to be enforced against him. *Id.* at 129. Here, Plaintiffs have not alleged or established any "dilemma posed by [governmental] coercion" that "was the very purpose of the Declaratory Judgment Act to ameliorate," and they cannot establish that declaratory relief would meaningfully impact them at all. *Id.*[7]

---

[7] Moreover, because the claims of individual Plaintiffs are moot and they do not face any "ongoing violation" of federal law (*see supra* § II(B)), the court is without jurisdiction to provide declaratory relief. *Filyaw,* 2025 WL 2462965, at *7 ("*Ex parte Young* does not permit judgments against state officers declaring that they violated federal law in the past.").

Appellate Case: 25-1987    Page: 47    Date Filed: 10/07/2025 Entry ID: 5565546

**III. The District Court Erred in Granting Plaintiffs' Motion for Summary Judgment.**

The District Court's grant of summary judgment in favor of Plaintiffs, and the denial of Defendant's motion, should be reversed. Counts I and II, which allege violations of the SNAP Act, should have been dismissed because those provisions are enforceable in federal court only by the Attorney General after consultation with the Secretary of USDA, and not by private plaintiffs. It was also error for the court to rule in favor of Plaintiffs on Count III, finding a deprivation of property without due process of law, because the court failed to conduct the required balancing test or to consider the post-deprivation remedies available through the State's fair hearing process. Finally, Plaintiffs did not establish a violation of the ADA.

**A. The SNAP Act Does Not Create Enforceable Rights in Private Plaintiffs.**

Plaintiffs assert claims under two provisions of the SNAP Act, codified at 7 U.S.C. § 2014(a) and § 2020(e)(2)(B), as well as implementing regulations at 7 C.F.R. § 273.2; App. 85; R. Doc. 88, at 46 ¶ 315–16. In granting Plaintiffs' motion for summary judgment, and denying Defendants' cross-motion, the district court failed to conduct the required statutory analysis to determine whether Congress intended these

37

provisions to be privately enforceable under 42 U.S.C. § 1983. R. Doc. 145, at 34–41.

Binding precedent from the Supreme Court and this Court make clear only "an unambiguously conferred right [will] support a cause of action brought under § 1983," and courts therefore "must first determine whether Congress *intended to create a federal right." Gonzaga Univ. v. Doe* 536 U.S. 273, 283 (2002) (emphasis in original); *accord Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023); *Does v. Gillespie*, 867 F.3d 1034, 1040 (8th Cir. 2017). Rather than undertaking the required analysis, the district court held simply that: "[c]ourts commonly order heads of SNAP administering agencies to comply with the requirements of SNAP," App. 243–44; R. Doc. 161, at 24–25, citing two cases decided well before the relevant precedent.

This is reversible error. As this Court explained in *Gillespie*, "[t]here was a time" (including when the cases cited by the district court were decided) when Spending Clause statutes were "deemed to create an enforceable right if the provision in question was 'intended to benefit the putative plaintiff'." *Gillespie,* 867 F.3d at 1039. But "later decisions," as exemplified by the Supreme Court in *Gonzaga,* "expressly rejected the

38

notion" that anything short of an unambiguously conferred right can suffice. *Id.* Applying *Gonzaga*, this court in *Gillespie* held that a Medicaid provision lacked unambiguous "rights-creating" language, finding that other means of enforcement established by Congress, particularly funding conditions, evinced an "aggregate focus," not an individual right. *Id.* at 1042.

Consistent with the *Gillespie* decision, the Supreme Court in 2023 confirmed that the *Gonzaga* analysis remains the "established method for ascertaining unambiguous conferral," requiring provisions "phrased in terms of the persons benefited"; containing "rights-creating, individual-centric language"; and demonstrating "unmistakable focus on the benefited class." *Talevski,* 599 U.S. at 183 (citations and quotation marks omitted). Contrary to the district court's practice in this case, courts should not find enforceable rights "as a matter of course," and particularly not with respect to Spending Clause provisions typically enforced against States through federal funding terms. *Id.* at 183 (cleaned up); *see also id.* at 193, 195 (Barrett, J., concurring) (stating that "[t]his bar is high").

39

Appellate Case: 25-1987     Page: 50     Date Filed: 10/07/2025 Entry ID: 5565546

Most recently, in *Medina v. Planned Parenthood South Atlantic,* the Supreme Court again warned that "it is rare enough for any statute to confer an enforceable right" and that "spending-power statutes . . . are especially unlikely to do so." 606 U.S. ----, 145 S. Ct. 2219, 2230 (2025). The *Medina* decision specifically instructs "lower court judges" that they "should not" consult the Court's pre-*Gonzaga* precedents "when asking whether a spending-power statute creates an enforceable individual right." *Id.* at 2234.

SNAP is undisputably a Spending Clause program. As such, it was incumbent on the district court to carefully consider whether the statutory provisions cited by Plaintiffs as the basis for Count I and Count II of their Complaint confer unambiguous rights that can be enforced under Section 1983. The district court did not do so, and even a cursory analysis shows that those provisions do not clear the "significant hurdle" set forth in *Gonzaga, Talevski, Medina,* and *Gillespie.*

Section 2014(a) states that "participation in [SNAP] shall be limited to those households whose incomes and other financial resources . . . are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet" and that "[a]ssistance under this program

40

Appellate Case: 25-1987    Page: 51    Date Filed: 10/07/2025 Entry ID: 5565546

shall be furnished to all eligible households who make application for such participation."  As in *Gonzaga,* this language has an "aggregate focus," is "not concerned with whether the needs of any particular person have been satisfied" and thus "cannot give rise to individual rights." *Gonzaga,* 536 U.S. at 275.  Unlike *Talevski,* the statute here does not use the word "right," nor does it "focus on" the situation of individual beneficiaries, but rather "all eligible households."  599 U.S. at 184–85. *Medina* confirms that  the statute's use of compulsory language—"shall be furnished"—is not enough to create an enforceable right.  145 S. Ct. at 2238.

Section 2020(e)(2), the other statute relied on by Plaintiffs, likewise fails to contain "rights-creating" "individual-centric language" of the sort that can be enforced under Section 1983.  Plaintiffs focus on § 2020(e)(2)(B)(i), which provides that a State agency "shall provide timely, accurate, and fair service" to applicants.  This vague and amorphous language suffers from the same defects as Section 2014, in that neither its text nor its purpose grants rights to, or focuses on, the individual beneficiary.  Moreover, Plaintiffs ignore that subsection (B) is an instruction to be followed in "carrying out subparagraph (A)," which

41

provides that "the State agency shall establish procedures governing the operation of [SNAP] offices *that the State agency determines best serve households* in the State," 7 U.S.C. § 2020(e)(2)(A) (emphasis added). As the Court held in *Medina,* it is hard to interpret that "Congress sought to convey a right against the States in one breath" if it "let States control its scope in the next." 145 S. Ct. at 2235.[8]

Plaintiffs also seek to enforce various regulations promulgated by FNS regarding "office operations and application processing" and the "face-to-face interview," which applicants are required to complete to verify certain information on their applications. *See* App. 85; R. Doc. 88, at 46 ¶ 315 (citing 7 C.F.R. § 273.2(a)(2); (d)(1); (e)). Some of these regulations have been waived by FNS to allow Missouri to interview

_____

[8] Plaintiffs also cite Section 2020(e)(2)(B)(iii), which provides that a State agency "shall permit an applicant household to apply to participate in the program on the same day that the household first contacts a [SNAP] office in person during office hours." This language also is not "right-creating." In any event, the district court made no finding that any Plaintiff was not permitted to apply on the same day that they contacted a DSS office in person during office hours. The statute does not require State offices to make applications available by phone request. *Cf.* 7 U.S.C. § 2020(e)(2)(B)(ii)(II) (requiring a State to make the application available on a website, but only "if the State agency maintains a website for the State agency").

42

applicants by phone and thus could not possibly be the basis of suit to enforce their provisions. *See* App. 211–15; R. Doc. 145-7. In any case, as the Supreme Court has made clear, a private plaintiff may not bring suit based on a regulation for acts not prohibited by the text of the statute itself. *See Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 173 (1994). That is because, "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001). "[I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself." *Id.* at 291.

Finally, as was the case in *Gillespie* and *Medina,* the Food and Nutrition Act's enforcement provisions, set forth at 7 U.S.C. § 2020(g), confirm absence of a private right of action. That section provides that if the Secretary of the Department of Agriculture establishes a "failure by a State agency without good cause to comply" with any statutory or regulatory provision or the State plan of operation, the Secretary "shall allow the State agency a specified period of time for the correction of such

43

Appellate Case: 25-1987     Page: 54     Date Filed: 10/07/2025 Entry ID: 5565546

failure." *Id.* If the State agency does not correct such failure, the Secretary "*may* refer the matter to the Attorney General with a request that injunctive relief be sought to require compliance" and "upon suit by the Attorney General in an appropriate district court . . . and a showing that noncompliance has occurred, appropriate injunctive relief shall issue[.]" *Id.* (emphasis added). And, "whether or not the Secretary refers such matter to the Attorney General," the Secretary may "withhold from the State such funds . . . as the Secretary determines to be appropriate, subject to administrative and judicial review[.]" *Id.*

Enforcement by individual beneficiaries, rather than the Secretary working together with the Attorney General, entirely undercuts these provisions. Moreover, the statute is specific as to the penalty for noncompliance: withholding of federal funds or injunctive relief as specified by the Department of Justice. Reading the statutory provisions to create a private cause of action authorizing private relief—as the District Court did—undermines and countermands congressional intent.

Congress' decision to delegate enforcement to USDA makes sense in the context of SNAP, which is a complicated and expensive program involving millions of households. Missouri alone processes between

44

28,000 and 40,000 SNAP interviews *each month*. R. Doc. 148, at 11 ¶1. Missouri's 2026 budget appropriated at least $29,995,157 for SNAP administrative expenses. Mo. H.B. 11 (2025), §§ 11.110, 11.115, 11.126, and 11.155. SNAP requires coordination between the federal and State governments to ensure the State plan is properly administered. Allowing SNAP households, who are not parties to that plan, to file independent lawsuits undermines the State and federal government's working relationship. Thus, it makes sense that Congress expressly and exclusively delegated responsibility for enforcement of the SNAP Act to the executive branch of the federal government, and not to federal courts entertaining suits from private plaintiffs.

## B. The District Court's Due Process Analysis Was Flawed.

For their third claim, Plaintiffs allege "defendant's policies, practices and procedures deprive Plaintiffs of fair access to SNAP benefits by using an inaccessible call center for mandatory interviews, failing to provide notices, and subjecting otherwise eligible individuals to arbitrary denials of benefits in violation of the Due Process Clause of the 14th Amendment to the Constitution, made actionable by 42 U.S.C §1983." App. 85; R. Doc. 88, at 46 ¶ 316. The district court treated these

45

allegations as a procedural due process claim and entered summary judgment in favor of the Plaintiffs and against the Defendant on this point. App. 248–51; R. Doc. 161, at 29–32. However, the district court's analysis is fatally flawed.

"A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023); *see also Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

Defendant does not dispute that SNAP benefits "are a matter of statutory entitlement for persons qualified to receive them" and are "appropriately treated as a form of 'property' protected by the Due Process Clause." *Atkins v. Parker*, 472 U.S. 115, 128 (1985). But that is only half the inquiry. The second part—completely ignored by the district court—is whether the process provided is adequate to address any alleged deprivation of that property. This is critical: as the Supreme Court has explained, a procedural due process claim "is not complete when the deprivation occurs." *See Zinermon*, 494 U.S. at 126. Rather, the claim is "complete" only when "the State fails to provide due process." *Id.*

Appellate Case: 25-1987     Page: 57     Date Filed: 10/07/2025 Entry ID: 5565546

As set forth above, the State provides a process to review any denial of an application: any household whose application for SNAP benefits is denied is entitled to a notice explaining the decision, an administrative "fair hearing" to review that decision, and an appeal to State court. *See supra* § I(B). By federal rule, the hearing must be conducted, a decision reached, and the household notified of the decision within 60 days of receipt of a request for such a hearing. 7 C.F.R. § 273.15(c). The State agency must "restore to households benefits which were lost whenever the loss was caused by an error by the State agency." *Id.* § 273.17.

Granted, the fair hearing process is primarily a "post-deprivation" review process and in *Goldberg v. Kelly,* 397 U.S. 254 (1970), the Supreme Court held that "when welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process" because "termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits." 397 U.S. at 264. But, as the Supreme Court explained in the *Atkins* case, the SNAP fair hearing rules were adopted "in response to [its] decision" in *Goldberg* and, consistent with that decision, those rules provide for a "continuation of benefits" for

47

Appellate Case: 25-1987     Page: 58     Date Filed: 10/07/2025 Entry ID: 5565546

recipients who are challenging an adverse decision affecting their SNAP benefits.  7 C.F.R. §  273.15(k).

In this case, none of the Plaintiffs has a valid claim that their SNAP benefits were improperly terminated without adequate process. Empower Missouri is not eligible for SNAP benefits.  Mr. Dallas never experienced a lapse in benefits.  *See* R. Doc. 138, at 21 ¶ 82.  Plaintiffs Holmes and Davis were not yet receiving benefits and had their applications denied. R. Doc. 138, at 17 ¶ 52; *id.* at 25 ¶ 111.

Even assuming, without conceding, that *applicants* have a property interest in the processing of their applications, the Court erred by failing to consider whether the State's fair hearings provide adequate process when those applications are denied.  As the Supreme Court explained in *Mathews v. Eldridge,* "identification of the specific dictates of due process," including whether post-deprivation remedies suffice, "generally requires consideration of three distinct factors":

> **First**, the private interest that will be affected by the official action; **second**, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and **finally**, the Government's interest, including the function involved and the fiscal and

48

Appellate Case: 25-1987     Page: 59     Date Filed: 10/07/2025 Entry ID: 5565546

> administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 333–35 (1976) (emphasis added); *see also Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 926 (8th Cir. 2016) ("The Due Process Clause simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations.") (citation omitted).

The district court failed to undertake that balancing here. While the individual Plaintiffs may have a private interest in securing benefits for which they are eligible, it was incumbent on the district court to weigh that against the State's obligation to verify the accuracy of a household's information when determining SNAP eligibility; the requirement to make these careful determinations within 30 days; the risk of financial penalties if the State has a high error rate; and the already heavy workload DSS staff shoulder to meet these requirements. *See e.g.*, 7 U.S.C. §§ 2020(e)(3), (e)(9), (e)(18), (r)(2), (n); 7 C.F.R. § 273.2(b)(4)(i), (f). Though these interests are essential to the very existence of the program, the court gave them little or no consideration. Rather, the court demonstrated indifference to the Supreme Court's warning that "[a]t some point the benefit of an additional safeguard to

Appellate Case: 25-1987   Page: 60   Date Filed: 10/07/2025 Entry ID: 5565546

the individual . . . may be outweighed by the cost." *Mathews,* 424 U.S. at 348.

This is especially so where, as here, the prescribed procedures not only provide the claimant with an effective process for asserting claims prior to any administrative action, but also assure a right to an evidentiary hearing and subsequent judicial review before the denial becomes final. *Id.* at 349. As this Court recently explained, the availability of administrative and State court processes (and the plaintiffs' decision not to avail themselves of those processes) means there is no ongoing violation of the Due Process Clause to support jurisdiction under the *Ex Parte Young* exception to Eleventh Amendment immunity. *Filyaw*, 2025 WL 2462965, at \*6. As was the case in *Filyaw*, the "alleged denial of procedural process" here occurred "at a discrete point in the past and is not a continuing violation" because the individual Plaintiffs had the opportunity for a post-deprivation hearing. *Id.*

### C. The District Court Erred Finding Defendant Violated the ADA

The purpose of the ADA is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Analysis of

50

Plaintiffs' claim starts with the plain text of the statute, which reads in full:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C.A. § 12132. The ADA does not establish requirements or parameters for any federally funded program. It simply prohibits States from discriminating against individuals on the basis of disability. To state a claim for violation of the ADA, a Plaintiff must establish the following elements:

> (1) Plaintiff is a qualified individual with a disability;
> (2) Plaintiff was excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise subjected to discrimination by the public entity by reason of his disability; and
> (3) Such exclusion, denial of benefits, or other discrimination was by reason of his disability.

*Rinehart v. Weitzell*, 964 F.3d 684, 688 (8th Cir. 2020). The SNAP Act requires that eligibility certification by the State "be consistent with the rights of households under the [ADA]." 7 U.S.C. § 2020(c)(2).

51

Appellate Case: 25-1987    Page: 62    Date Filed: 10/07/2025 Entry ID: 5565546

In this case, the district court found that only Plaintiffs Holmes and Dallas are qualified individuals with disabilities. App. 253; R. Doc. 161, at 34. The record establishes Ms. Holmes and Mr. Dallas experienced difficulty and inconvenience during application and recertification, respectively. But for an actionable violation of the ADA, they must establish that, *because of their disability*, they were: 1) excluded from participation in SNAP; 2) denied the benefits provided by Missouri SNAP; or 3) otherwise subjected to discrimination by the public entity. None of these elements is present.

Neither Ms. Holmes nor Mr. Dallas were excluded from or denied participation in SNAP because of a disability. While Defendant denied Ms. Holmes' application, that denial was not final because she had a statutory right under SNAP to administrative review of that decision. §§ 208.080, 208.100, 208.110 RSMo; 13 C.S.R. § 40-2.160; 7 U.S.C. § 2020(e)(10); 7 C.F.R. 273.15. Instead of following that process, she filed this lawsuit. The opportunity to obtain administrative review of adverse decisions through *State* administrative procedures is a fundamental component of the SNAP program. *Id.* While Mr. Dallas identified his disability and requested an accommodation, he likewise was never

52

denied benefits.  Neither was excluded from participating in SNAP or denied benefits because of their disabilities.

Nor was either individual subject to *discrimination* on the basis of their disability.  The Supreme Court has concluded "to discriminate against a person . . . would seem to mean treating that individual worse than others who are similarly situated."  *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 657 (2020) (cleaned up).  Neither Ms. Holmes nor Mr. Dallas received differential treatment compared to a different group on the basis of their disabilities.  Ms. Holmes alleges her COPD required accommodation, but the undisputed facts establish she entered a Resource Center and spoke to staff without ever requesting an accommodation.  R. Doc. 138, at 15–16, ¶¶ 37–40.  Mr. Dallas asked for an accommodation, but it was not needed.  The form on which he wrote his accommodation request in 2021 had been completed appropriately, and in 2023 he filed his recertification form with help from a legal services organization so that he received his benefits without delay or denial at any point.  R. Doc. 138, at 21 ¶ 82.  Neither were treated differently because of their disabilities.

53

Appellate Case: 25-1987     Page: 64     Date Filed: 10/07/2025 Entry ID: 5565546

The Court erred finding Defendant violated Plaintiffs' rights under the ADA, and Defendant is entitled to judgment as a matter of law.

## IV. The District Court's Remedial Order Is Improper and Excessive.

### A. Plaintiffs Did Not Establish That They Do Not Have an Adequate Remedy at Law.

Under "well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). A plaintiff must establish:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.*

Absent this, the Supreme Court has held injunctive relief may not be awarded. *Id.* at 394. "Where a plaintiff seeks equitable relief he must demonstrate that he lacks an adequate remedy at law and that absent injunctive relief he will suffer irreparable harm." *Bonner v. Cir. Ct. of City of St. Louis, Mo.,* 526 F.2d 1331, 1336 (8th Cir. 1975) (citing *Allee v. Medrano*, 416 U.S. 802, 814 (1974)). This is particularly important when,

54

as here, plaintiffs ask federal courts for systemic relief *ab initio* where available remedies at law fall within the purview of State courts. *See id.* at 1336–37 (citing *Younger v. Harris*, 401 U.S. 37, 44 (1971)). "[F]ederal courts should not intervene where such interference unduly inhibits the legitimate functioning of the individual State's judicial system." *Id.* at 1336.

The district court ordered injunctive relief without analysis of the other remedies available to Plaintiffs in State courts. For example, the SNAP Act and implementing regulations require States to administer fair hearings at the State or local level and to fully restore benefits consistent with the outcome of those processes. 7 U.S.C. §2020(e)(10); 7 C.F.R. §§ 273.15(s), 273.17. Plaintiffs received notices of these rights. *See, e.g.*, App. 126–28; R. Doc. 138-12, at 36–38 (Action Notice provided to Ms. Holmes). Since Congress has conferred to States jurisdiction over the administration of remedies for adverse actions related to SNAP eligibility, the Plaintiffs' request for statewide, universal relief notwithstanding the availability of relief in State court directly violates the "vital consideration" of comity and ignores the remedies that Congress built into the SNAP Act. *See Bonner*, 526 F.2d at 1336.

Appellate Case: 25-1987     Page: 66     Date Filed: 10/07/2025 Entry ID: 5565546

**B. The District Court's Grant of Statewide Relief Exceeded Its Authority.**

The Supreme Court recently held federal courts have limited, if any, authority to grant universal injunctions that provide relief that extends to nonparties. *Trump v. CASA, Inc.*, 606 U.S. 831, 846–47 (2025). Such injunctions "circumvent Rule 23's procedural protections and allow courts to create *de facto* class actions at will." *Id.* at 849–50 (cleaned up). Rather, the type of universal relief sometimes permissible in the class action context "can come about in federal courts in just one way – through the procedure set out in Rule 23." *Id.* at 849.

The district court did what the Supreme Court prohibited: it treated this matter as a class action and issued an injunction requiring Defendant to make universally applicable systemic changes. Each requirement of the district court's orders expressly require Defendant to make changes for *all* SNAP participants and further requires Defendant to produce program-wide statistical reports each month. App. 258; R. Doc. 161, at 39 ¶¶ 2–3; App. 270; R. Doc. 220, at 11 ¶¶ 24–26.

The presence of an organizational plaintiff is not a substitute for a certified class, particularly where the organization purports to seek relief for itself, rather than as an association vindicating the interests of its

Appellate Case: 25-1987    Page: 67    Date Filed: 10/07/2025 Entry ID: 5565546

members. *See Trump v. CASA*, 606 U.S. at 852; *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 601 (8th Cir. 2022) (requiring associational plaintiffs to identify members with standing to sue if the organization intends to pursue relief for those members). Thus, even if Empower Missouri has standing to sue—which it does not—"relief to *everyone* potentially affected" exceeds the authority of the federal courts. *Trump v. CASA*, 606 U.S. at 852 (emphasis in original). The overbreadth of the relief here is particularly glaring, given that Empower Missouri brought suit only to vindicate its own interests and does not purport to represent members who would have standing in their own right.

The district court ordered universal relief because it decided the problems the individual Plaintiffs had were likely to reoccur when they had to recertify, App. 247; R. Doc. 161, at 28, and because it was dissatisfied with the Defendant's progress in the time between entry of the summary judgment Order and issuance of the permanent injunction, *see* App. 262; R. Doc. 220, at 3. Even if this Court agrees that Plaintiffs faced an ongoing violation of federal law justifying injunctive relief, the district court had jurisdiction only to fashion a remedy that ensured that the three individual plaintiffs could complete an interview (if required)

57

Appellate Case: 25-1987   Page: 68   Date Filed: 10/07/2025 Entry ID: 5565546

without going through the call center and could access reasonable accommodations to the extent any exist and are warranted.

**C.    The Ordered Relief is Incongruent With the Asserted Legal Violations.**

The district court's orders are fundamentally misaligned with the actual legal violations alleged under the SNAP Act, its implementing regulations, and the Due Process Clause, even assuming that Plaintiffs have standing to raise one or more these claims (which they do not, *see supra* § II), and that they state one or more valid causes of action (which they do not, *see supra* § III).

In addition to limiting their orders to the parties in the case, federal courts are must also ensure that any relief ordered is no broader than necessary to remedy the specific legal violations found. See *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[T]he scope of injunctive relief is dictated by the extent of the violation established[.]").  "[A]n injunction must be tailored to remedy specific harm shown." *Rogers v. Scurr,* 676 F.2d 1211, 1214 (8th Cir. 1982).  "The federal courts in devising a remedy must take into account the interests of state and local authorities in managing their own affairs, consistent with the Constitution." *Spallone v. United States*, 493 U.S. 265, 276 (1990).  "If [a remedial order] is not

Appellate Case: 25-1987     Page: 69     Date Filed: 10/07/2025 Entry ID: 5565546

limited to reasonable and necessary implementations of federal law, it may improperly deprive future officials of their designated legislative and executive powers." *Horne v. Flores*, 557 U.S. 433, 450 (2009) (cleaned up).

The core of Plaintiffs' claims—and the court's findings—are the denial of SNAP applications for failure to complete an interview when applicants were not given a meaningful opportunity to do so, but the district court's Remedial Order goes far beyond what is necessary to address this. Rather than narrowly targeting deficiencies that led to allegedly wrongful denials, the court imposed a sweeping set of requirements for the phone system and wider program operations without even attempting to tie the relief back to the statutory and constitutional provisions that it found Defendant to be violating.

For example, the Order mandates that Defendant to "take whatever steps are necessary to reduce the average wait time for Tier 1 and Tier 3 callers so that 90% of callers have no more than a 20 minute wait time," and "take whatever steps are necessary to bring the number of applications which are rejected for failure to interview to no more than 20% of all applications." App. 264–65; R. Doc. 220, at 5–6. The standards

59

that DSS is required to achieve are not set forth in the SNAP Act, and the Due Process Clause of the Constitution is silent on the question of constitutionally adequate wait times. The court nowhere identifies what legal violation these provisions and the extensive reporting requirements associated with them, App. 270; R. Doc. 220, at 11 ¶¶ 24–26, are supposed to redress.

The SNAP Act does not mandate the use of a call center, nor does it require that interviews be conducted by phone. In fact, the regulations provide that interviews are to be conducted in person by default, with telephone interviews permitted only at the State's option or by federal waiver. 7 C.F.R. § 273.2(e)(1)–(2). The Act and its regulations are silent as to call wait times, the percentage of denials for failure to interview, or the technological features of a State's phone system. Procedural Due Process likewise does not require the district court's directives, or the option to use a phone system at all.

The fourteen provisions of relief for "wrongful denials," App. 266–70; R. Doc. 220, at 7–11 ¶¶ 7–21, are similarly overly broad to comply with the SNAP Act and procedural Due Process provisions, particularly given that SNAP applicants already receive advanced notice of their

60

interview calls, an additional letter upon a missed interview, a notice of hearing rights upon denial, and restoration of benefits wrongfully denied. *See, e.g.*, App. 120; R. Doc. 138-12, at 30 (notifying Ms. Holmes to expect the interview call); App. 122–23; R. Doc. 138-12, at 32–33 (notifying Ms. Holmes of missed interview); App. 126–28; R. Doc. 138-12, at 36–38 (Action Notice informing Ms. Holmes of determination and hearing rights). For example, it is unclear how the additional notices the district court has mandated are required by the statute or by the Constitution, and no explanation is given. Further, provisions 7(a) through (c) prevent Defendant from denying applications when an applicant attempts to contact SNAP resource centers for any reason, App. 266–67; R. Doc. 220, at 7–8 ¶ 7, but the regulations implementing SNAP expressly provide processes for application and interview delays, including a mandatory process for determining fault for the delay and requiring the denial of an application even, in some instances, when the household attempts to schedule an interview, *see* 7 C.F.R. 273.2(h). It is doubtful that provisions requiring Defendant to violate regulations implementing the SNAP Act could fall within the permissible scope of relief for the court to order.

Appellate Case: 25-1987    Page: 72    Date Filed: 10/07/2025 Entry ID: 5565546

The district court's Order also imposes broad "Right to File" relief that not only goes beyond the statute but is counterproductive in terms of getting applicants benefits quickly. For example, the Order requires Defendant to allow individuals to request a paper application online and promptly mail all requested paper applications. App. 266; R. Doc. 220, at 7 ¶¶ 5–6. However, the relevant statutory provision requires only that a State permit a household to apply on the same day that the household "first contacts a SNAP office in person"; it does not require the State to have an option for households to request paper applications through a website. 7 U.S.C. § 2020(e)(2)(B). It is counterproductive to promote online requests for paper applications, given that individuals with internet access could apply online, which would be faster and easier than requesting an application, paying for postage, and mailing it in.

The most burdensome aspect of the ordered relief requires Defendant to hold open certain applications (rather than deny for failure to complete an interview) based on a variety of factors, including whether the applicant has called into the call center, how long they may have been on hold, and whether they visited a Resource Center in person. App. 266–67; R. Doc. 220, at 7–8 ¶ 7. None of these criteria are set forth

62

Appellate Case: 25-1987    Page: 73    Date Filed: 10/07/2025 Entry ID: 5565546

in the SNAP Act, and implementing a system to try to identify applicants and participants who meet those standards would require extensive (and expensive) programming to try to match names and phone numbers across databases, even then such a system would be certain to miss individuals who, for example, use a different phone to call in than the number on their application. Moreover, DSS's experience is that the longer an application is held open, the more likely it will lead to payment errors. Under the changes imposed by H.R. 1, a high error rate could have catastrophic consequences on the State budget if it will be required to contribute to the cost of benefits. *See supra* n.2.

Accordingly, even if this Court finds that one or more plaintiffs have standing to pursue these claims, and that Plaintiffs have established a violation of law, it should remand the case to the district court with instructions that any injunction must meet the standards for equitable relief, be tailored only to the parties before the Court, and be limited to the minimum relief necessary to remedy the specified legal violations.[9]

---

[9] With respect to Plaintiffs' ADA claim, it appears that the district court limited its injunction to ordering DSS to "develop an ADA Policy that ensures the SNAP program is administered in compliance with the ADA." App. 270; R. Doc. 220, at 11 ¶ 22. "[L]anguage in an injunction that essentially requires a party to obey the law is overbroad and

Appellate Case: 25-1987    Page: 74    Date Filed: 10/07/2025 Entry ID: 5565546

# CONCLUSION

Appellant respectfully requests this Court reverse the District Court's entry of summary judgment against Defendant and grant her Motion for Summary Judgment and for any other relief which this court deems proper.

Respectfully submitted,

 s/ Caroline M. Brown
Caroline M. Brown
Rebecca L. Wolfe
Brown & Peisch PLLC
1225 19th Street NW, Ste. 700
Washington, D.C. 20036
(202) 499-4258
cbrown@brownandpeisch.com
rwolfe@brownandpeisch.com

Dated: October 3, 2025        *Counsel for Defendant-Appellant*

---

unenforceable because those against whom the injunction is issued 'must receive fair and precisely drawn notice of what the injunction actually prohibits.'" *Carson P. ex. Rel. Foreman vs. Heineman*, 240 F.R.D 456, 507 (D. Neb. 2007) (quoting *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir.1987)). Nevertheless, DSS has recently implemented an ADA policy providing instructions for requesting accommodation for disabilities and allowing DSS to track accommodation requests throughout the life of an applicant's or participant's case.

Appellate Case: 25-1987    Page: 75    Date Filed: 10/07/2025 Entry ID: 5565546

# CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 12,594 words, excluding the parts of the brief exempted from the word count by Fed. R. App. P. 32(f).

This brief complies with the requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in 14-point Century Schoolbook font using Microsoft Word.

This PDF file and the addendum to the foregoing were scanned for viruses and no viruses were found.

/s/ Caroline M. Brown
Caroline M. Brown

Appellate Case: 25-1987    Page: 76    Date Filed: 10/07/2025 Entry ID: 5565546

# CERTIFICATE OF SERVICE

The undersigned attorney for Defendant-Appellant certifies that on October 3, 2025, an electronic copy of the Brief of Defendant-Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: October 3, 2025

*/s/ Caroline M. Brown*
Caroline M. Brown