No. 25-1987

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

MARY HOLMES, EMPOWER MISSOURI, DENISE DAVIS, and
ANDREW DALLAS,

*Plaintiffs-Appellees,*

v.

JESSICA BAX, IN HER OFFICIAL CAPACITY AS DIRECTOR
OF THE MISSOURI DEPARTMENT OF SOCIAL SERVICES

*Defendant-Appellant.*

AN APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

## BRIEF OF APPELLEES

Katharine Deabler-Meadows
Saima Akhtar
National Center for Law
and Economic Justice
50 Broadway, Suite 1500
New York, NY 100004
St. Louis, Missouri 63101

Joel D. Ferber
Katherine A. Holley
Jamie L. Rodriguez
Lisa J. D'Souza
Legal Services of Eastern Missouri
701 Market St., Suite 1100

Andrew J. Scavotto
J. Nicci Warr
STINSON LLP
7700 Forsyth Blvd., Suite 1100
Clayton, MO 63105

*Attorneys for Plaintiffs-Appellees*

# CORPORATE DISCLOSURE STATEMENT

Empower Missouri states that it does not have any parent corporation and that there is no publicly held corporation that owns 10% or more of Empower Missouri.

i

Appellate Case: 25-1987     Page: 2     Date Filed: 11/10/2025 Entry ID: 5576748

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................ivv

STATEMENT OF THE ISSUES........................................................................1

STATEMENT OF THE CASE ...........................................................................4

SUMMARY OF THE ARGUMENT ...............................................................8

ARGUMENT ........................................................................................................9

I.    Arguments Raised For First Time on Appeal Are Barred. ............9

II.   Plaintiffs' Claims are Justiciable..................................................11

    A.   Empower Missouri has standing because Defendant's wrongdoing harmed its core business activities.....................11

    B.   The individual Plaintiffs' claims are not moot. ......................16

        1.   Defendant's voluntary provision of interviews does not moot Plaintiffs' claims. ...........................................17

        2.   Defendant's wrongdoing is capable of repetition and likely to evade review.................................................18

        3.   The Elderly and Disabled Interview Waiver does not moot Plaintiffs' claims...............................................20

           a.   Defendants waived a mootness argument based on the E&D waiver…………………………….........20

           b.   The record disproves Defendant's E&D waiver claims…………………………………………………21

        4.   Defendant's recent adoption of an ADA policy cannot moot Plaintiffs' claims...............................................22

        5.   Plaintiffs' ongoing injuries will recur without relief from the courts. ...........................................................24

        6.   The Eleventh Amendment does not bar jurisdiction. .25

    C.   Systemic relief is the only redress for Plaintiffs' injuries. .....26

III.  The District Court's Summary Judgment Order Should Be Affirmed........................................................................................30

Appellate Case: 25-1987    Page: 3    Date Filed: 11/10/2025 Entry ID: 5576748

A. Plaintiffs have a private right of action to enforce the relevant provisions. ............................................................... 30

    1. The statutes at issue contain rights-creating language with an unmistakable focus on the individual. ................................................................ 33

    2. Defendant has failed to overcome the presumption that these statutes are enforceable. ........................... 36

    3. The structure of the SNAP Act supports enforceability. ........................................................... 38

    4. The statutes provide ample notice regarding the risk of litigation. ............................................................... 40

    5. Plaintiffs do not seek to enforce regulations. .............. 41

B. The District Court properly decided the Due Process claims. .............................................................................. 42

    1. Plaintiffs have a property interest in SNAP benefits. 42

    2. Defendant's novel *Mathews* arguments are waived and unsupported by the law and the record. .............. 45

C. The District Court properly decided the ADA claims............ 48

IV. The District Court's Order on Relief Must Be Affirmed ............... 56

A. The District Court properly considered the injunction factors. ............................................................................. 56

B. Injunctive relief is appropriate to remedy Plaintiffs' irreparable harm. .............................................................. 57

C. Administrative remedies are irrelevant. ............................... 59

D. The Order on Relief is necessary to provide Plaintiffs' complete relief . ................................................................ 60

E. The relief awarded is no broader than necessary to remedy Plaintiffs' harm. ..................................................... 67

CONCLUSION ................................................................................. 73

Appellate Case: 25-1987    Page: 4    Date Filed: 11/10/2025 Entry ID: 5576748

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron v. Target Corp.,*
  357 F.3d 768 (8th Cir. 2004)................................................................9

*Alexander v. Choate,*
  469 U.S. 287 (1985)........................................................................49

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013)..........................................................................17

*Animal Legal Def. Fund v. Reynolds,*
  89 F.4th 1071 (8th Cir. 2024) ...........................................................26

*Arlington Cnty. Emps.' Supplemental Ret. Sys. II,*
  91 F.3d 630 (4th Cir. 1996)...............................................................42

*Barry v. Corrigan,*
  79 F. Supp. 3d 712 (E.D. Mich. 2015)................................................60

*Barry v. Lyon,*
  834 F.3d 706 (6th Cir. 2016)............................................................60

*Bliek v. Palmer,*
  102 F.3d 1472 (8th Cir. 1997)..........................................................48

*Bonner v. Cir. Ct. of City of St. Louis, Mo.,*
  526 F.2d 1331 (8th Cir. 1975)..........................................................60

*Bostock v. Clayton Cnty., Georgia,*
  590 U.S. 644 (2020)........................................................................48

*Bowen v. Georgetown Univ.Hosp.,*
  488 U.S. 204 (1988).........................................................................47

*Califano v. Yamasaki,*
  442 U.S. 682 (1979)........................................................................67

Appellate Case: 25-1987    Page: 5    Date Filed: 11/10/2025 Entry ID: 5576748

*Campbell v. Davol, Inc.*,
620 F.3d 887 (8th Cir. 2010) ...................................................9

*Chu Drua Cha v. Noot*,
696 F.2d 594 (8th Cir. 1982) ..................................................58

*City of Rancho Palos Verdes v. Abrams*,
544 U.S. 113 (2005) ................................................................31

*Commonwealth of Mass. v. Lyng*,
893 F.2d 424 (1st Cir. 1990) .................................................60

*Daniels v. Woodbury Cnty., Iowa*,
742 F.2d 1128 (8th. Cir. 1984) .............................................42

*Disabled in Action v. Bd. of Elections*,
752 F.3d 189 (2d Cir. 2014) ..................................................55

*Does v. Gillespie*,
867 F.3d 1034 (8th Cir. 2017) ..............................................30

*Eagle Tech v. Expander Americas, Inc.*,
783 F.3d 1131 (8th Cir. 2015) ................................................9

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) ................................................................58

*Elizabeth M. v. Montenez*,
458 F.3d 779 (8th Cir. 2006) .................................................26

*Filyaw v. Corsi*,
150 F.4th 936 (8th Cir. 2025) .........................................25, 48

*First Nat'l Bank v. Bellotti*,
435 U.S. 765 (1978) ................................................................19

*Fitzgerald v. Barnstable Sch. Comm.*,
555 U.S. 246 (2009) ...........................................................32, 37

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ......................................................... *passim*

v

Appellate Case: 25-1987    Page: 6    Date Filed: 11/10/2025 Entry ID: 5576748

*Friends of the Earth v. Laidlaw Enviro. Servs.*,
  528 U.S. 167 (2000) ...................................................................17

*Goldberg v. Kelly*,
  397 U.S. 254 (1970) ........................................................ 4, 46, 48

*Gonzaga Univ. v. Doe*,
  536 U.S. 273 (2002) .................................................... *passim*

*Gragg v. Astrue*,
  615 F.3d 932 (8th Cir. 2010) ..................................................10

*Hall v. Higgins*,
  77 F.4th 1171 (8th Cir. 2023) ...............................................49

*Hamby v. Neel*,
  368 F.3d 549 (6th Cir. 2004) ................................................42

*Harris v. James*,
  127 F.3d 993 (11th Cir. 1997) ..............................................42

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) .................................................... *passim*

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
  599 U.S. 166 (2023) .................................................... *passim*

*Heck v. Humphrey*,
  512 U.S. 477 (1994) ...............................................................60

*Henderson v. Shinseki*,
  562 U.S. 428 (2011) ...............................................................35

*Hennepin Cnty. v. Fed. Nat'l Mortg. Ass'n*,
  742 F.3d 818 (8th Cir. 2014) .........................................33, 34

*Henrietta D. v. Bloomberg*,
  331 F.3d 261 (2d Cir. 2003) ...................................... *passim*

*Immigrant Defs. L. Ctr. v. Noem*,
  145 F.4th 972 (9th Cir. 2025) ...............................................15

Appellate Case: 25-1987     Page: 7     Date Filed: 11/10/2025 Entry ID: 5576748

*Kingdomware Techs., Inc. v. United States,*
579 U.S. 162 (2016)..................................................................19

*Layton v. Elder,*
143 F.3d 469 (8th Cir. 1998).............................................49, 53

*Loye v. Cnty. of Dakota,*
625 F.3d 494 (8th Cir. 2010).................................................49

*Mathews v. Eldridge,*
424 U.S. 319 (1976)........................................................ *passim*

*Medina v. Planned Parenthood S. Atl.,*
145 S.Ct. 2219 (2025)..................................................... *passim*

*Mo. Prot. & Advoc. Servs. v. Carnahan,*
499 F.3d 803 (8th Cir. 2007)................................................17

*Monroe v. Pape,*
365 U.S. 167 (1961).............................................................60

*Morgan's Heirs v. Morgan,*
15 U.S. 290 (1817)...............................................................66

*Murthy v. Missouri,*
603 U.S. 43 (2024)...............................................................29

*Nairne v. Landry,*
151 F.4th 666 (5th Cir. 2025) .........................................14, 16

*Oglala Sioux Tribe v. C&W Enterprises, Inc.,*
542 F.3d 224 (8th Cir. 2008)................................................57

*Orion Fin. Corp. of S.D. v. Am. Foods Grp., Inc.,*
281 F.3d 733 (8th Cir. 2002)................................................10

*Osborn v. Bank of U.S.,*
22 U.S. 738 (1824)...............................................................66

*Patsy v. Bd. of Regents of State of Fla.,*
457 U.S. 496 (1982).............................................................59

vii

Appellate Case: 25-1987    Page: 8    Date Filed: 11/10/2025 Entry ID: 5576748

*Peebles v. Potter*,
354 F.3d 761 (8th Cir. 2004)..........................................................48, 50

*Pennhurst State Sch. and Hosp. v. Halderman*,
451 U.S. 1 (1981)................................................................................35

*Price v. City of Stockton*,
390 F.3d 1105 (9th Cir. 2004)............................................................41

*Randolph v. Rodgers*,
170 F.3d 850 (8th Cir. 1999)..............................................................49

*Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*,
120 F.4th 390 (4th Cir. 2024) ............................................................15

*Rodgers v. Bryant*,
942 F.3d 451 (8th Cir. 2019)..............................................................67

*S. Pac. Terminal Co. v. Interstate Com.*,
219 U.S. 498 (1911)............................................................................18

*Scott C. v. Riverview Gardens*,
19 F.4th 1078 (8th Cir. 2021) ..............................................................9

*Segal v. Metro. Council*,
29 F.4th 399 (8th Cir. 2022) .........................................................49, 51

*Shakhnes v. Belin*,
689 F.3d 244 (2d Cir. 2012) ...............................................................42

*Singleton v. Wulff*,
428 U.S. 106 (1976)............................................................................10

*Smith v. Kirk*,
821 F.2d 980 (4th Cir. 1987)..............................................................42

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).....................................................................11, 26

*In re Supervalu, Inc.*,
870 F.3d 763 (8th Cir. 2017)..............................................................30

Appellate Case: 25-1987    Page: 9    Date Filed: 11/10/2025 Entry ID: 5576748

*Texas Co. v. Cent. Fuel Oil Co.*,
    194 F. 1 (8th Cir. 1912)............................................................66

*Transunion LLC v. Ramirez*,
    594 U.S. 413 (2021)...........................................................11

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025)..................................................... *passim*

*Turner v. Rogers*,
    564 U.S. 431 (2011)...........................................................19

*Turner v. Walsh*,
    435 F. Supp. 707 (W.D. Mo. 1977)..................................58

*Universal Title Ins., Co. v. United States*,
    942 F.2d 1311 (8th Cir. 1991).........................................10

*Warth v. Seldin*,
    422 U.S. 490 (1975).........................................................16

*Weinstein v. Bradford*,
    423 U.S. 147 (1975).........................................................18

*Williston v. Eggleston*,
    379 F. Supp. 2d 561 (S.D.N.Y. 2005)..............................60

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008).............................................................57

*Zinermon v. Burch*,
    494 U.S. 113 (1990).........................................................46

## Statutes

7 U.S.C. § 2011 ....................................................................4

7 U.S.C. § 2014(a) ...................................................... *passim*

7 U.S.C. § 2020 ..............................................................38, 39

7 U.S.C. § 2020(a)(3)(B)(ii) ...............................................41

Appellate Case: 25-1987    Page: 10    Date Filed: 11/10/2025 Entry ID: 5576748

7 U.S.C. § 2020(c)(2)(B)(iii) ....................................................................66

7 U.S.C. § 2020(e)(2)....................................................................................36

7 U.S.C. § 2020(e)(2)(A)...............................................................................36

7 U.S.C. § 2020(e)(2)(B)(i) ..........................................................................34

7 U.S.C. § 2020(e)(2)(B)(iii) ................................................................. 34, 73

7 U.S.C. § 2020(e)(2)(B)................................................................. *passim*

7 U.S.C. § 2020(g) ........................................................................................37

7 U.S.C. § 2023(b) ........................................................................................41

7 U.S.C. §2027(a)(2)......................................................................................41

42 U.S.C. § 1396r(c)(1)(A)(ii) .....................................................................40

42 U.S.C. § 1396r(c)(2)(A) ................................................... 33, 35, 36, 40

42 U.S.C. § 1396r(c)(2)(A)-(B) .....................................................................32

42 U.S.C. § 1983 ................................................................. *passim*

42 U.S.C. § 12112(b)(5)(A).............................................................................50

Americans With Disabilities Act of 1990, 42 U.S.C. § 12101
   et seq. (1990) ................................................................. *passim*

Food and Nutrition Act of 2008, 7 U.S.C. 2011-2036a (2008)...................2

## Other Authorities

7 C.F.R. § 273.2(c)(1), (2)(i) ................................................................. 42, 73

7 C.F.R. § 273.2(e)(3) ....................................................................................5

7 C.F.R. § 273.2(h)(1)(i)(D) .........................................................................71

7 C.F.R. § 273.10(f) ......................................................................................20

7 C.F.R. § 273.10(f)(1).....................................................................................20

Appellate Case: 25-1987     Page: 11     Date Filed: 11/10/2025 Entry ID: 5576748

7 C.F.R. § 273.15(k)(1)............................................................47

28 C.F.R. Part 35, Title II ........................................................3

28 C.F.R. § 35.106 ................................................................55

28 C.F.R. § 35.107 ................................................................55

28 C.F.R. § 35.130(b)(7)(i) ................................................. 50, 52

*A Response to Professor Sohoni*, 72 Ala. L. Rev. 239, 241
   (2020)..........................................................................64

Appellate Case: 25-1987     Page: 12     Date Filed: 11/10/2025 Entry ID: 5576748

<u>STATEMENT OF THE ISSUES</u>

1.   Did the District Court correctly decide that Plaintiff Empower Missouri had standing when Defendant's wrongdoing disrupted its core business functions of advocating for adequate nutrition and just food access for Missourians?

    a.   *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024)

    b.   *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)

2.   Did the District Court correctly find that Plaintiffs Holmes, Davis, and Dallas' claims were justiciable under Article III because they have an ongoing need for SNAP and require the court-ordered remedies to avoid future wrongful denials of subsistence benefits?

    a.   *Mo. Prot. & Advoc. Servs. v. Carnahan*, 499 F.3d 803 (8th Cir. 2007)

    b.   *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)

    c.   *S. Pac. Terminal Co. v. Interstate Com.*, 219 U.S. 498 (1911)

    d.   *Weinstein v. Bradford*, 423 U.S. 147 (1975)

3.   Did the District Court correctly hold that the relevant Food and Nutrition Act of 2008 (hereinafter "SNAP Act") provisions create a

1

private right of action under 42 U.S.C. § 1983 given their clear rights-creating language and unmistakable focus on the individuals who are entitled to SNAP?

a. *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)

b. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023)

c. *Medina v. Planned Parenthood S. Atl.*, 145 S.Ct. 2219 (2025)

d. 42 U.S.C. § 1983

e. 7 U.S.C. § 2014(a)

f. 7 U.S.C. § 2020(e)(2)(B)

4. Did the District Court correctly find that Defendant violated Plaintiffs' Due Process rights under the *Mathews v. Eldridge* test?

a. *Mathews v. Eldridge,* 424 U.S. 319 (1976)

b. *Goldberg v. Kelly*, 397 U.S. 254 (1970)

c. *Daniels v. Woodbury Cnty., Iowa*, 742 F.2d 1128 (8th. Cir. 1984)

Appellate Case: 25-1987    Page: 14    Date Filed: 11/10/2025 Entry ID: 5576748

5.   Did the District Court correctly find that Defendant violated the Americans with Disabilities Act when Plaintiff Dallas requested but was not given any reasonable accommodations and Plaintiff Holmes was not notified of her right to seek a reasonable accommodation, both of which caused significant impediments to their ability to complete the process to apply for SNAP benefits?

a.   *Layton v. Elder*, 143 F.3d 469 (8th Cir. 1998)

b.   *Peebles v. Potter*, 354 F.3d 761 (8th Cir. 2004)

c.   *Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003)

d.   28 C.F.R. Part 35, Title II of the ADA

6.   Did the District Court properly order systemic relief after Plaintiffs proved systemic violations and process-oriented relief was necessary to ensure that the individual Plaintiffs' future applications and recertifications would be processed in compliance with the SNAP Act and Due Process, and that Empower Missouri's core business function would not be frustrated?

a.   *Oglala Sioux Tribe v. C&W Enterprises, Inc.*, 542 F.3d 224 (8th Cir. 2008)

3

b. *Rodgers v. Bryant*, 942 F.3d 451 (8th Cir. 2019)

c. *Trump v. CASA, Inc.*, 606 U.S. 831 (2025)

<u>STATEMENT OF THE CASE</u>

The importance of food cannot be overstated. Neither can the consequences of hunger. Courts have long recognized that food deprivation creates a "brutal need" with significant, lasting harms. *Goldberg v. Kelly*, 397 U.S. 254, 260–65 (1970). Congress established the Supplemental Nutritional Assistance Program ("SNAP") to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011.

To be found eligible for SNAP, households must apply and complete an interview with the administering state agency, which in Missouri is the Department of Social Services ("DSS"). Aples.App. 543; R. Doc. 152, at 2 ¶¶ 1, 3.[1] Defendant is sued in her official capacity as the Commissioner of DSS. App. 41; R. Doc. 88, at 2 ¶ 3. DSS must provide SNAP benefits to all eligible Missourians. 7 U.S.C. § 2014(a); Aples.App. 543; R. Doc. 152, at 2 ¶ 3. Under SNAP regulations, state agencies must

---

[1] This brief hereinafter cites only to the Defendant's responses to Plaintiffs' Statement of Uncontroverted Material Facts.

4

Appellate Case: 25-1987   Page: 16   Date Filed: 11/10/2025 Entry ID: 5576748

schedule interviews to provide applicants an opportunity to participate before the application processing deadline. 7 C.F.R. § 273.2(e)(3); Aples.App. 547–48; R. Doc. 152, at 6–7 ¶ 23. However, DSS has a waiver that permits it to forgo scheduling and provide interviews on an "on-demand" basis instead. Aples.App. 547–48; R. Doc. 152, at 6–7 ¶ 23. Pursuant to its waiver, DSS maintains a call center that applicants must contact to complete interviews. *Id.* at 4 ¶ 10, 6–7 ¶ 23. DSS's eligibility system automatically denies applications when no interview has been completed by the processing deadline, even if the applicant has tried to interview and been unable to do so due to agency dysfunction. *Id.* at 6 ¶ 21. Additionally, until the District Court's Relief Order, DSS did not notify applicants of their right to seek accommodation for a disability, had no policy governing the recognition or provision of reasonable accommodations, and did not ensure that reasonable accommodations were appropriately or consistently provided. App. 256–57; R. Doc. 161, at 37–38.

In January 2022, Mary Holmes needed SNAP. Aples.App. 551–55; R. Doc. 152, at 10–14 ¶¶ 37–53. She called DSS multiple times using her pay-per-minute phone to request an application. No one at DSS ever

5

answered, so she was unable to request the form. *Id.* at 10–11 ¶ 37. Despite having just been hospitalized for weeks with COVID-19 and pneumonia, Ms. Holmes paid someone to drive her to a DSS office where she submitted an application. *Id.* at 9 ¶ 34, 11 ¶¶ 38–39. However, DSS refused her request to interview that day. *Id.* at 11 ¶ 40. Over the following month, Ms. Holmes called DSS at least thirteen times, trying to interview. *Id.* at 12-14 ¶¶ 42–53. She waited on long holds, sometimes over two hours, but DSS never answered. *Id.* at 10–14. Despite Ms. Holmes' serious health problems, she was never given the opportunity to request a reasonable accommodation under the Americans with Disabilities Act (ADA). Ms. Holmes' SNAP application was denied for failure to interview. *Id.* at 14 ¶ 52.

In late 2022, Denise Davis needed SNAP. She applied for SNAP benefits online but her application was never registered by DSS. App. 235–36; R. Doc. 161, at 16–17. When she called to inquire about her first application, DSS said she had none pending. Aples.App. 565; R. Doc. 152, at 24 ¶ 87. She submitted a second, and then a third application. *Id.* at 25–30 ¶¶ 88–109. She tried to interview for three months, calling DSS on numerous occasions, only to find herself in a queue with hundreds ahead

6

Appellate Case: 25-1987    Page: 18    Date Filed: 11/10/2025 Entry ID: 5576748

of her. *Id.* Ms. Davis tried to interview online and in person at a DSS office, but DSS sent her back to the call center. *Id.* at 29 ¶¶ 106–07. Ms. Davis's SNAP application was denied for failure to interview. *Id.* at 27 ¶ 97.

In 2021, Andrew Dallas submitted a written request for accommodation to complete paperwork necessary to maintain SNAP eligibility. *Id.* at 19 ¶¶ 71–72. DSS failed to recognize his request or offer him assistance. *Id.* at 21 ¶ 78. In 2023, Plaintiff Dallas made multiple attempts to request an accommodation. *Id.* at 21–22 ¶¶ 79–81. DSS never answered. *Id.* At the time, DSS's accommodation policy was a single page document that addressed a variety of anti-discrimination laws, but made no reference to disability or rights to a reasonable accommodation under the ADA. Aples.App. 625; R. Doc. 152, at 84 ¶ 390.

Plaintiffs Holmes, Davis, and Dallas now receive SNAP. They anticipate needing SNAP for years to come. Aples.App. 556, 564–65; R. Doc. 152, at 15 ¶¶ 57–58; 23–24 ¶ 85; 31 ¶ 113. Each time they engage with DSS, they will have to navigate this inaccessible system. App. 256–57; R. Doc. 161, at 37–38. Empower Missouri has advocated for adequate nutrition and food access for Missourians for over a century, and

7

recognizes the key role of SNAP in meeting basic needs. Its core business functions have been and will continue to be disrupted until DSS properly administers SNAP. Aples.App. 572–74; R. Doc. 152, at 31–33 ¶¶ 115–25.

After considering the parties' cross-motions, the District Court entered summary judgment in Plaintiffs' favor and denied Defendant's motion. The District Court found "systemic, ongoing problems" that place Plaintiffs "further at risk of losing SNAP benefits . . . ." App. 220; R. Doc. 161. Subsequently, the District Court entered an injunctive relief order to remedy the systematic failures the Plaintiffs proved. App. 260; R. Doc. 220. Defendant appeals.

## SUMMARY OF THE ARGUMENT

Defendant raises several arguments on appeal that she failed to present below; these arguments are both barred and meritless. The orders Defendant challenges contain no reversible error and should be affirmed in their entirety. Specifically, the District Court correctly concluded at summary judgment that 1) each Plaintiff has standing, their claims are not moot, and their claims were justiciable under Article III; 2) the SNAP Act provisions at issue in this litigation—7 U.S.C. §§ 2014(a) and 2020(e)(2)(B)—identify rights that are privately enforceable via 42

8

U.S.C. § 1983; 3) Defendant's actions violated Plaintiffs' Due Process rights; and 4) Defendant violated the Americans with Disabilities Act ("ADA"). Further, the District Court's relief order is appropriate and no broader than necessary to provide an adequate remedy to Plaintiffs.

ARGUMENT

## I. ARGUMENTS RAISED FOR FIRST TIME ON APPEAL ARE BARRED.

Defendant makes multiple new arguments on appeal, often without support in the record. Generally, appellate courts "will not consider an argument raised for the first time on appeal." *Eagle Tech v. Expander Americas, Inc.*, 783 F.3d 1131, 1138 (8th Cir. 2015); *Scott C. v. Riverview Gardens*, 19 F.4th 1078, 1082 (8th Cir. 2021). This is especially true when "no good reason has been advanced to depart from that rule." *Aaron v. Target Corp.*, 357 F.3d 768, 779 (8th Cir. 2004); *Campbell v. Davol, Inc.*, 620 F.3d 887, 892 (8th Cir. 2010) (litigant "should not be surprised on appeal" by decision on issues not fully developed below, as "contrary rule could encourage a party to 'sandbag' at the district court level, only then to play his 'ace in the hole' before the appellate court" ). Appellate courts "consider newly raised issues *only* if they are purely legal and no additional factual development is necessary, or where manifest injustice

9

would otherwise result." *Orion Fin. Corp. of S.D. v. Am. Foods Grp., Inc.*, 281 F.3d 733, 740 (8th Cir. 2002) (emphasis added); *see also Riverview Gardens*, 19 F.4th at 1081 (citing *Universal Title Ins., Co. v. United States*, 942 F.2d 1311, 1314–15 (8th Cir. 1991)). Appellate courts may abuse their discretion by reaching the merits of a newly raised issue absent a clear exception to the rule. *Singleton v. Wulff*, 428 U.S. 106, 120–21 (1976).

Defendant's brief includes new, unsupported factual allegations about the "elderly and disabled" waiver to bolster Defendant's mootness challenge; a newly alleged, unsupported government "burden" to counter the summary judgment Due Process findings; new facts and arguments regarding the availability of administrative remedies to counter findings on due process, the ADA, and injunctive relief; and, new arguments regarding the appropriate standard for injunctive relief. Defendant failed to demonstrate an exception to the general rule. No such exception applies. This Court should not consider these belated, unsupported facts and contentions. *See Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).[2]

---

[2] Plaintiffs specifically identify these new facts and arguments in the appropriate sections below.

10

## II.  PLAINTIFFS' CLAIMS ARE JUSTICIABLE.

### A.  Empower Missouri has standing because Defendant's wrongdoing harmed its core business activities.

To establish standing, a plaintiff must show they have suffered an injury in fact that is fairly traceable to the defendant's actions and likely to be redressed by a favorable court decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In *Food & Drug Admin. v. All. for Hippocratic Med.*, the Supreme Court acknowledged that a non-profit has standing when a defendant directly affects and interferes with its core business activities. 602 U.S. 367, 395 (2024) (citing *Havens Realty v. Coleman*, 455 U.S. 363, 379 (1982)). Plaintiff Empower Missouri asserts standing on its own behalf as an organizational plaintiff.

Defendant argues that "diversion of resources" is not sufficiently concrete to establish standing. *See* Appellant's Br. at 21–23.[3] But Defendant's wrongdoing has done more than cause Empower to redirect resources. Defendant's illegal administration of SNAP frustrates

---

[3] Citing *Transunion LLC v. Ramirez*, 594 U.S. 413 (2021), Defendant argues ensuring compliance with regulatory law is not grounds for standing. Appellant's Br. at 24. Defendant takes *Ramirez* out of context. There, a plaintiff class sought damages for violations of the Fair Credit Reporting Act, and the Supreme Court found that uninjured plaintiffs could not seek regulatory compliance in federal court. *See* 594 U.S. at 427–28. Here, Empower has suffered concrete harm.

11

Appellate Case: 25-1987     Page: 23     Date Filed: 11/10/2025 Entry ID: 5576748

Empower's core business activities. While the District Court did not have the benefit of *Alliance* at summary judgment, the record nonetheless establishes that Empower has standing.

Empower works to ensure Missourians have access to adequate nutrition, health care, housing, and education. App. 83; R. Doc. 88, at 44 ¶¶ 298–301; Aples.App. 258–59; R. Doc. 138-30, at 8–9. It also provides education and resources to anti-hunger organizations. Aples.App. 259; R. Doc. 138-30, at 9 ¶ 16; App. 83; R. Doc. 88, at 44 ¶ 301. Anti-hunger initiatives are a core business activity of Empower, Aples.App. 259; R. Doc. 138-30, at 9 ¶ 16, which were disrupted by Defendant's practices and policies, Aples.App. 258–59; R. Doc. 138-30, at 8–9 ¶¶ 14–16; Aples.App. 572–74; R. Doc. 152, at 31–33 ¶¶ 115–25. Consequently, Empower has standing to sue on its own behalf. *Havens*, 455 U.S. at 379.

In fact, Empower spent $96,000 for fiscal years 2021, 2022, and 2023 on issues related to Defendant's unlawful administration of SNAP, and both Empower's Executive Director and Food Security Policy Manager divert at least 10 percent of their time to address SNAP administration problems. Aples.App. 258–59; R. Doc. 138-30, at 8–9 ¶¶ 14–16. Additionally, a portion of each meeting of Empower's SNAP

12

Advisory group, which brings together advocates from across the state to address Defendant's operation of SNAP, is dedicated to the dysfunctional call center. Aples.App. 252–53; R. Doc. 138-30, at 2–3 ¶ 4. Empower also runs the Food Security Coalition, which provides information and resources to advocates and food providers. Defendant's failures cause Empower to spend considerable time managing and organizing the Coalition. *Id.* Empower must spend time and resources on these initiatives instead of other activities because Defendant persists in administering SNAP in violation of the law. App. 84; R. Doc. 88, at 45 ¶ 311; Aples.App. 259; R. Doc. 138-30, at 9 ¶ 16.

Unlike the organizational plaintiff in *Alliance*, Empower has not spent its way into standing. *Compare* App. 83–84; R. Doc. 88, at 44–45 ¶¶ 298–306 (Empower's longstanding focus on anti-hunger advocacy) with *FDA v. Alliance for Hippocratic Medicine,* 602 U.S. 367, 394 (2024) (organizational plaintiff with no monetary, property, or other actual injury caused by defendant agency could not obtain standing by spending money to oppose defendant's action). Empower did not raise additional funds or grow its budget to oppose Defendant's wrongful SNAP denials resulting from its dysfunctional call center. It diverted funding from its

Appellate Case: 25-1987    Page: 25    Date Filed: 11/10/2025 Entry ID: 5576748

existing work to respond to Defendant's conduct. Aples.App. 574; R. Doc. 152, at 33 ¶ 122.

Nor does the disruption of Empower's core business activities constitute a mere setback to abstract social interests. *See Alliance,* 602 U.S. at 394–95; *Havens,* 455 U.S. at 379. The plaintiff in *Havens,* a case in which a nonprofit established standing, provided counseling services but interrupted those activities to combat discrimination. *See Alliance,* 602 U.S. at 395; *Havens,* 455 U.S. at 379. Similarly, Empower interrupted its core anti-hunger activities to respond to Defendant's maladministration of SNAP. *See id.*

Appellate opinions interpreting *Alliance* similarly demonstrate that Empower has Article III standing. In *Nairne v. Landry*, 151 F.4th 666 (5th Cir. 2025), the Fifth Circuit held that the National Association for the Advancement of Colored People ("NAACP") and the Black Voters Matter Capacity Building Institute ("BVM") had standing because they had to "divert[] resources away from 'their core activities towards previously unplanned response strategies,'" due to Texas redistricting. *Id.* at 681. The court rejected any comparison to *Alliance*, explaining that NAACP and BVM did not simply "'expend[] money to express

14

Appellate Case: 25-1987    Page: 26    Date Filed: 11/10/2025 Entry ID: 5576748

disagreement' with the [challenged] maps." *Id.* at 683 (quoting *Alliance*, 602 U.S. at 394). Because the plaintiffs "were forced to reallocate staff and launch new initiatives to mitigate the effect of the maps on Black voter confidence and candidate available," they had suffered an injury in fact. *Id.* at 682.

The same is true here: because Empower was forced to spend its finite time and resources to assist SNAP applicants and address Defendants' procedural failures, it has suffered an injury in fact and possesses standing. *See id.; see also Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, 120 F.4th 390, 397 (4th Cir. 2024) (organizational plaintiffs had standing due to impact on core missions); *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 988 (9th Cir. 2025) (organization had standing because of interference with core business purpose).

Defendant's assertions to the contrary are erroneous. Defendant asserts that Empower's sole injury is time spent bringing issues to the attention of DSS and the legislature. Appellant's Br. at 24. This mischaracterizes Empower's work. As detailed above, Defendant's illegal

15

Appellate Case: 25-1987     Page: 27     Date Filed: 11/10/2025 Entry ID: 5576748

actions caused a concrete injury to Empower's core business activities. *See Alliance,* 602 U.S. at 395, citing *Havens*, 455 U.S. at 379.

Defendant also argues Empower does not have a cognizable interest in SNAP because it is not a membership organization and lacks direct relationships with SNAP applicants. This misunderstands Plaintiffs' allegations and the applicable law. Empower sues on its own behalf based on harm to its core business activities. *See Alliance,* 602 U.S. at 395. Empower need not have an interest in or due process right to SNAP benefits to establish standing. *Warth v. Seldin*, 422 U.S. 490, 510–11 (1975) ("an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate" its "rights and immunities"); *Nairne*, 151 F.4th at 681–83.

### B. The individual Plaintiffs' claims are not moot.

Defendant argues the individual Plaintiffs' claims are moot because they received complete relief and are unlikely to suffer future harm. Appellant's Br. at 26. There is no basis for either argument, especially considering recipients are required to recertify their eligibility in the future. Without court-ordered relief, Plaintiffs will continue to face Defendant's dysfunctional SNAP system, illegal policies causing

16

wrongful denials of SNAP benefits, and ongoing failures to provide reasonable accommodations. Defendant's practices and policies place Plaintiffs Holmes, Davis, and Dallas at serious risk of losing SNAP.

      1.  <u>Defendant's voluntary provision of interviews does not moot Plaintiffs' claims.</u>

Defendant argues Plaintiffs Holmes' and Davis' claims are moot because DSS provided one-time eligibility interviews after this lawsuit was filed. Appellant's Br. at 26–28. But "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Mo. Prot. & Advoc. Servs. v. Carnahan*, 499 F.3d 803, 811 (8th Cir. 2007) (cleaned up). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating the cycle until he achieves all his unlawful ends*." Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91 (2013). Defendant "'bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth v. Laidlaw Enviro. Servs.*, 528 U.S. 167, 190 (2000)). Here, the District Court found Defendant is operating a

17

broken, dysfunctional system. App. 250–251, 253–254, 256–257; R. Doc. 161 at 31–32, 34–35, 37–38. Defendant's one-time offer does not remediate her unlawful practices and policies. Nor does it suggest Plaintiffs will not encounter the same challenges again when attempting to recertify.[4]

### 2. Defendant's wrongdoing is capable of repetition and likely to evade review.

A claim is also not moot when the conduct at issue is "capable of repetition, yet evading review." *S. Pac. Terminal Co. v. Interstate Com.*, 219 U.S. 498, 515 (1911). The duration of the challenged action must be "too short to be fully litigated prior to its cessation or expiration," and there must be a "reasonable expectation that the same complaining party would be subjected to the action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). Both elements are met here. At the onset of this

---

[4] Defendant also ignores the likely scenario that Plaintiffs could lose SNAP and need to complete eligibility interviews to reapply. During this lawsuit, Plaintiff Holmes was terminated from SNAP due to agency dysfunction and had to complete a new interview to reapply. Aples.App. 200–246; R. Doc. 138-16, 138-17. Absent legal representation, she would have faced Defendant's dysfunctional call center on her own again. *Id.* The voluntary circumvention of the call center does not render Plaintiffs' claims moot.

18

Appellate Case: 25-1987     Page: 30     Date Filed: 11/10/2025 Entry ID: 5576748

litigation, Plaintiffs Holmes and Davis were without SNAP benefits for a duration that was too short for this action to be fully litigated. Both applied for SNAP, and their applications were denied for failure to complete an interview—despite their diligent attempts to do so. Aples.App. 552–55; R. Doc. 152, at 11–14 ¶¶ 40–52, 24–27 ¶¶ 87–97. These Plaintiffs only obtained benefits after initiating this litigation. *See* Aples.App. 555; R. Doc. 152, at 14 ¶ 54, 30 ¶ 112. Similarly, when he joined this litigation, Plaintiff Dallas was on the verge of losing benefits because without an accommodation for his disabilities, he is unable to navigate the eligibility process. Aples.App. 559–60; R. Doc. 152, at 18–19 ¶ 69, 20–23 ¶ 77–82.

Plaintiffs must recertify SNAP eligibility when their current certification period ends. This is 24 months for elderly and disabled participants. *See* 7 C.F.R. § 273.10(f)(1). Periods of two years or less satisfy the first element of this exception to mootness. *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (two-year contract); *Turner v. Rogers*, 564 U.S. 431, 440 (2011) (one-year imprisonment); *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 774 (1978) (eighteen-month interval). Plaintiffs Holmes and Davis likely will be subjected to the same

19

Appellate Case: 25-1987   Page: 31   Date Filed: 11/10/2025 Entry ID: 5576748

harm—denials for failure to interview, despite diligent attempts to complete interviews—in the future. Both Holmes and Davis will continue to be eligible for and rely on SNAP for food assistance; due to their disabilities, their financial situation is unlikely to change. App. 72, 82; R. Doc. 88, at 33 ¶ 202, 43 ¶ 292; Aples.App. 546; R. Doc. 152, at 8 ¶ 28, 9 ¶ 33. They will regularly need to recertify, which will require them to navigate DSS's call center and pursue an interview each time. App. 72, 82; R. Doc. 88 at 33 ¶ 203, 43 ¶ 293; *cf.* 7 C.F.R. § 273.10(f).

3. <u>The Elderly and Disabled Interview Waiver does not moot Plaintiffs' claims.</u>

Defendant claims Missouri has a SNAP waiver exempting elderly and disabled participants from the interview requirement at recertification (the E&D waiver), and suggests Plaintiffs are unlikely to experience future harm. Having failed to raise this issue before the District Court, Defendant is not permitted to bring it now. In any event, the record establishes the E&D waiver has not and will not mitigate ongoing harm to the Plaintiffs.

a. Defendants waived a mootness argument based on the E&D waiver.

Defendant had multiple opportunities—in her motion to dismiss, motion for summary judgement, and briefing and oral argument on

20

relief—to argue the E&D waiver deprived Plaintiffs of standing. Defendant failed to do so. When Plaintiffs asserted at summary judgment that they would have to reapply and interview for SNAP benefits for the foreseeable future, Defendant failed to mention the E&D waiver. Sup. App. 556; R. Doc. 152, at 15 ¶ 57, 31 ¶ 114. She provides no justification or explanation for why these arguments are raised for the first time on appeal. Therefore, Defendant has not established exception to the rule that new arguments shall not be raised on appeal. *See supra* at 9–11. This Court should decline to consider this argument.

> b. The record disproves Defendant's E&D waiver claims.

Defendant cites no record evidence to support her assertion that the E&D waiver renders Plaintiffs' claims moot. In fact, the record contains no evidence regarding the implementation, application, or effect of the E&D waiver. Unlike the On Demand (OND) waiver, *see* App. 211; R. Doc. 145-7, Defendant never entered the E&D waiver into the record. Thus, the Court cannot assess its impact on mootness. In any event, the record demonstrates that Defendant does not consistently waive recertification interviews for all elderly and disabled households. App. 204; R. Doc. 145-2, at 237:1–12. It shows Defendant provided no specific training to staff

21

Appellate Case: 25-1987     Page: 33     Date Filed: 11/10/2025 Entry ID: 5576748

regarding the E&D waiver, App. 202–04; R. Doc. 145-2, at 235:20–237:25. It shows that for the last "couple of years," Defendant has not reminded staff about the availability of the E&D waiver, *id.* at 237:10–18. Even if this Court could consider the E&D waiver, the record confirms it does not impact Plaintiffs' claims of ongoing harm.

4. <u>Defendant's recent adoption of an ADA policy cannot moot Plaintiffs' claims.</u>

Defendant argues Plaintiff Dallas' claim is moot because individuals with disabilities can now request accommodations. Appellant's Br. at 26. If true, this accomplishment was achieved only because of the District Court's order. App. 270; R. Doc. 220, at 11 ¶¶ 22–23; App. 276; R. Doc. 228-1. Prior to this litigation, Defendant had no functional ADA policy. App. 262; R. Doc. 220, at 3. As recently as May 2025, Defendant could not determine the number of applicants who had requested reasonable accommodations under the ADA. Aples.App. 654–84; R. Docs. 169-1, 172-1, 182-1, 190-1, 194-1, 197-1, 200-1, 203-1, 210-1, 218-1, 219-1, 222-1, 227-1.[5] The record contains no evidence of the allegedly "robust measures" Defendant touts. *See* Appellant's Br. at 26.

---

[5] In May–October 2024 and January–March 2025 status reports, Defendant stated that "DSS does not currently track the number of

22

The record establishes Plaintiff Dallas' standing. He struggles to comprehend SNAP paperwork due to his disabilities. Aples.App. 559–60; R.Doc. 152, 18–19 ¶ 68–69. He cannot complete the recertification paperwork needed to maintain his benefits without assistance. *Id.* Prior to joining this action, Plaintiff Dallas tried to seek a reasonable accommodation through the call center, *id.* at 21 ¶ 79–80. He also requested an accommodation in writing, stating, "I have epilepsi [sic] + cannot understand like normal people do. Please help! I am not sure I understand all of the letter. I am disabled." Aples.App. 560; R.Doc. 152, 19 ¶ 71. Defendant understood this to be a reasonable accommodation request, yet no one assisted him. Aples.App. 560; R.Doc. 152, 19 ¶ 72–73. He requires ongoing assistance to maintain his SNAP benefits. App. 79; R. Doc. 88, at 40 ¶¶ 263–66. Because of Defendant's unlawful practices, Plaintiff Dallas will suffer ongoing harm without the remedies ordered by the District Court.

---

accommodations made by SNAP applicants and participants at a systemic level." In November–December 2024 and April–May 2025, the Defendant acknowledged that "[c]urrently no measurement exists that capture the number of requests made by customers for accommodations based on disability."

23

Appellate Case: 25-1987     Page: 35     Date Filed: 11/10/2025     Entry ID: 5576748

5. <u>Plaintiffs' ongoing injuries will recur without relief from the courts.</u>

Defendant makes two additional meritless arguments about mootness. First, Defendant suggests Plaintiffs will not suffer future injuries because the "vast majority" of eligible SNAP applicants complete interviews. The record shows otherwise. In July 2023, Defendant approved only 64% of SNAP applications, and fully 54% of the denied applications were denied for failure to complete an interview. Aples.App. 603; R. Docs. 152, at 62 ¶ 277. In 2025, the monthly percentage of denied applications based on a purported failure to interview has been above 30%, sometimes reaching as high as 50%. Aples.App. 679–84; R. Doc. 237-1. To the extent there has been sporadic improvement since the District Court's order, that hardly minimizes the risk enough to moot Plaintiff's claims or deprive them of standing.

Defendant also suggests Plaintiffs can obtain a face-to-face eligibility interview. Again, the record proves otherwise. Plaintiff Holmes was turned away from a Resource Center when she requested a face-to-face interview; Defendant's staff instructed her to complete the interview by phone. Aples.App. 552; R. Doc. 152, at 11 ¶ 40 Similarly, Plaintiff Davis was unable to obtain a face-to-face interview. *Id.* at 26 ¶ 106.

24

Appellate Case: 25-1987     Page: 36     Date Filed: 11/10/2025 Entry ID: 5576748

Nothing indicates applicants can readily or easily obtain face-to-face interviews. In fact, the record confirms they are rarely available. Aples.App. 263–64; R. Doc. 138-41, at 2–3 ¶¶ 6–7.

6. <u>The Eleventh Amendment does not bar jurisdiction.</u>

Relying on *Filyaw v. Corsi*, 150 F.4th 936 (8th Cir. 2025), Defendant argues the Eleventh Amendment bars jurisdiction over Plaintiffs' claims. However, *Filyaw* is inapplicable. In *Filyaw*, the plaintiff was a *former* Medicaid participant who had no claim to ongoing benefits. *Id.* at 941. This Court concluded she had no ongoing harm, as the alleged harm arose from an inadequate notice from "a discrete point in the past" and she was "not at risk to receive the same. . .Notice in the future." *Id.* at 945–6. Additionally, the *Filyaw* plaintiff sought an injunction to cure past injuries. She did not seek prospective relief. *Id.* at 941. In contrast, Plaintiffs Holmes, Davis, and Dallas are current SNAP participants who allege ongoing violations and seek prospective relief. Unlike *Filyaw*, where the plaintiff alleged harm from a single discrete act in the past, Plaintiffs allege harm from a continuing, widespread systemic failure. Defendant's claim of Eleventh Amendment immunity is inapposite.

25

Appellate Case: 25-1987     Page: 37     Date Filed: 11/10/2025 Entry ID: 5576748

### C. Systemic relief is the only redress for Plaintiffs' injuries.

With no support, Defendant argues that Plaintiffs' requested systemic relief does "not redress their individual claims." Appellant's Br. at 33. In fact, the District Court ordered relief to correct systemic flaws and remedy multiple legal violations that harmed Plaintiffs. The redressability element of Article III standing requires plaintiffs to establish an injury "that is likely to be redressed by a favorable judicial decision," *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016); *see also Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1078 (8th Cir. 2024) (finding redressability existed as favorable decision would relieve plaintiff's injury). The threat of continuing legal violations may be redressed by injunctive relief. *Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006). Here, Plaintiffs established injuries that can only be redressed by systemic injunctive relief, forcing action from Defendant.

When arguing redressability, Defendant mischaracterizes Plaintiffs' request for relief, the significance of Plaintiffs' summary judgment evidence, and the relief ordered by the District Court. Defendant distracts with irrelevant facts, insinuating the relief cannot

26

Appellate Case: 25-1987    Page: 38    Date Filed: 11/10/2025 Entry ID: 5576748

be effectuated without action from third parties. These arguments are unsupported.

First, Plaintiffs did not seek injunctive relief to "vindicate the rights of all applicants for SNAP and all Missouri residents." Appellant's Br. at 33. Instead, Plaintiffs alleged and argued that "[s]ystemic failures in Defendant's administration of SNAP have harmed Plaintiffs and will harm them again." Aples.App. 104; R. Doc. 138, at 10. Specifically, Plaintiffs Holmes and Davis requested access to interviews. They requested systemic changes to ensure future applications would be processed in compliance with the SNAP Act and Due Process. Empower Missouri requested injunctive relief to prevent its core business activities from being frustrated going forward. Plaintiffs Holmes and Dallas sought systemic change to ensure Defendant would recognize and honor reasonable accommodation requests, and provide accommodations on an ongoing basis. App. 86–89; R. Doc. 88, at 47–50.

Second, Defendant argues incorrectly that Plaintiffs' evidence of systemic failure demonstrates the "inappropriateness of their requested relief" because Plaintiffs "rest [their] claim to relief on the legal rights or interests of third parties." Appellant's Br. at 34. Plaintiffs used third

27

party declarations to prove that their injuries resulted from widespread, systemic failures, not isolated illegal acts. App. 219; R. Doc. 160, at 73:5–18; *see also* Aples.App. 574–81; R. Doc. 152, at 33–40 ¶¶ 126–48 (facts evidencing systemic dysfunction).[6] Plaintiffs' evidence established the need for systemic injunctive relief to redress and prevent *their* injuries.

Third, the District Court's relief order contains no "requirement to increase staffing at DSS Resource Centers and call centers." Appellant's Br. at 34. When this action was filed, Defendant's offices had ostensibly re-opened after the pandemic, but remained understaffed and inaccessible. Aples.App. 617–19; R. Doc. 152, at 76–78 ¶¶ 351–58. Plaintiff Holmes tried to obtain an interview at a Resource Center but could not do so. *Id.* at 11 ¶¶ 39–40. Plaintiffs were also unable to communicate with Defendant through the call center due to systemic agency dysfunction. *Id.* at 12–13 ¶¶ 43–48, 21–22 ¶¶ 79–80, 25–26 ¶¶ 89–94. Accordingly, Plaintiffs sought injunctive relief to ensure Defendant's office closures or reductions in hours would not limit access to SNAP and harm Plaintiffs' ability to obtain benefits. App. 88; R. Doc. 88, at 49. The District Court's relief order is narrowly tailored to ensure

---

[6] Page numbers for R.Doc. 138 refer to ECF stamped pages.

Appellate Case: 25-1987    Page: 40    Date Filed: 11/10/2025 Entry ID: 5576748

Plaintiffs can complete recertifications and reapplications going forward. Specifically, it orders Defendant to employ "sufficient staff to provide meaningful access to SNAP interviews" and "take all practicable steps" to assign staff so Defendant can make SNAP interviews accessible according to certain metrics. App. 269–70; R. Doc. 220, at 10–11 ¶¶ 20–21.

Suggesting the relief order implicates non-parties, Defendant cites the requirement that its status reports be provided to executive and legislative offices. Appellant's Br. at 34–35. This is a red herring. The District Court's decision to share courtesy copies of reports—or to invite non-parties to a hearing—hardly makes these non-parties necessary for relief. Plaintiffs asserted wrongdoing by Defendant and no one else. Defendant's compliance with the relief order is entirely within her own control. Defendant relies on *Murthy v. Missouri*, 603 U.S. 43, 73–74 (2024), which is easily distinguishable. There, the Supreme Court found plaintiffs harmed by social media platforms lacked standing to sue government agencies, in part because enjoining the agencies could not redress their harm and the platforms were not parties. Here, Plaintiffs established Defendant's behavior violated governing federal law, caused

Appellate Case: 25-1987     Page: 41     Date Filed: 11/10/2025 Entry ID: 5576748

them injury, and was very likely to cause ongoing harm. *See In re Supervalu, Inc.*, 870 F.3d 763, 774 (8th Cir. 2017) (standing exists when plaintiffs' injuries are fairly traceable to defendants' practices and are likely to be redressed by favorable judgment).[7]

## III. THE DISTRICT COURT'S SUMMARY JUDGMENT ORDER SHOULD BE AFFIRMED.

Defendant offers three grounds for reversal of the District Court's liability finding. Each fails for the reasons discussed below.

### A. Plaintiffs have a private right of action to enforce the relevant provisions.

The District Court correctly allowed enforcement of Plaintiffs' rights via 42 U.S.C. § 1983. In *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002), the Supreme Court articulated the current Section 1983 enforcement test. The Court has reaffirmed repeatedly that "*Gonzaga* sets forth [the Court's] established method for" deciding the applicability of Section 1983. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 180, 183, 186 (2023) (noting the test is "stringent" and "demanding"); *Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2229, 2233 (2025)

---

[7] Plaintiffs do not assert their request for declaratory relief alone creates or preserves a live case or controversy. *See* Appellant's Br. at 35–36. They asserted and proved systemic violations establishing a need for *both* injunctive and declaratory relief.

30

(same); *see also*, *Does v. Gillespie*, 867 F.3d 1034, 1039–40 (8th Cir. 2017).

Under *Gonzaga* and *Talevski*, first, a court must use tools of statutory construction to determine whether Congress has "unambiguously conferred" "individual rights upon a class of beneficiaries." *Talevski*, 599 U.S. at 183 (quoting *Gonzaga*, 536 U.S. at 283, 285–86). The court looks for both "rights-creating language" and an "unmistakable focus" on the individual, as opposed to the aggregate. *Talevski*, 599 U.S. at 183–84 (quoting *Gonzaga*, 536 U.S. at 284, 287, 290). Once plaintiffs clear this hurdle, their rights are "deemed 'presumptively enforceable' under § 1983." *Talevski*, 599 U.S. at 184 (quoting *Gonzaga*, 536 U.S. at 284).

To overcome that presumption, defendants must "'demonstrat[e] that Congress did not intend' that § 1983 be available to enforce those rights," *Talevski*, 599 U.S. at 186 (quoting *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005)), either by pointing to language in the statute explicitly forbidding the use of § 1983 for enforcement, or by demonstrating implicit preclusion. *Talevski*, 599 U.S. at 186. Implicit preclusion occurs when the statute's remedial scheme is incompatible

31

Appellate Case: 25-1987    Page: 43    Date Filed: 11/10/2025 Entry ID: 5576748

with § 1983 enforcement. *Talevski,* 599 U.S. at 186–87. The "crucial consideration" is whether the statute's remedial scheme is "*the exclusive avenue*" for asserting a plaintiff's claims. *Talevski*, 599 U.S. at 187 (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 252 (2009)) (emphasis in original).

*Talevski* concerned two provisions of the Federal Nursing Home Reform Act. Those required, in relevant part, that nursing homes "'protect and promote' residents' 'right to be free from . . ... any physical or chemical restraints imposed for purposes of discipline or convenience and not required to treat the resident's medical symptoms,'" and stated they "'must not transfer or discharge [a] resident' unless certain enumerated preconditions, including advance notice of such a transfer or discharge, are met." *Talevski*, 599 U.S. at 181–82 (quoting 42 U.S.C. § 1396r(c)(1)(A)(ii) and §§ 1396r(c)(2)(A)–(B)). The *Medina* Court characterized these provisions as the "yardstick" against which to measure whether a Spending Clause provision meets the *Gonzaga* test. 145 S. Ct. at 2234.

Here, Plaintiffs sued to enforce two specific provisions of the SNAP Act: 7 U.S.C. § 2014(a) and § 2020(e)(2)(B) (together, "the Provisions").

32

Appellate Case: 25-1987     Page: 44     Date Filed: 11/10/2025 Entry ID: 5576748

Both are enforceable via § 1983. Like the *Talevski* provisions, the SNAP Act provisions at issue here clearly satisfy the *Gonzaga* test, affirmed in *Talevski* and *Medina*. Both sets of statutes are written with unmistakable focus on the benefited class of individuals, and both contain rights-creating language.

      1. <u>The statutes at issue contain rights-creating language with an unmistakable focus on the individual.</u>

7 U.S.C. § 2014(a) requires of Defendant that "[a]ssistance under [SNAP] shall be furnished to all eligible households who make application for such participation." "[S]hall" is mandatory, rights-creating language, similar to the language found in 42 U.S.C. § 1396r(c)(2)(A), which states that nursing homes "must not" transfer or discharge a resident except for when a variety of specific conditions are met. *See also Hennepin Cnty. v. Fed. Nat'l Mortg. Ass'n*, 742 F.3d 818, 822 (8th Cir. 2014). Like the *Talevski* statutes, it is unmistakably individual in focus—requiring that SNAP be furnished to "*all* eligible households," meaning each and every one, not households in general. *Talevski*, 599 U.S. at 184–86 (holding that references in both statutory provisions to "the resident," a specific individual, indicated an individual

33

Appellate Case: 25-1987    Page: 45    Date Filed: 11/10/2025 Entry ID: 5576748

focus); *see also Hennepin Cnty*, 742 F.3d at 822 ("'all' means all") (citation omitted).

Likewise, the language from 7 U.S.C. § 2020(e)(2)(B) is enforceable. It states Defendant "shall provide timely, accurate, and fair service to applicants for, and participants in, [SNAP]" and "shall permit an applicant household to apply to participate in the program on the same day that the household first contacts a [SNAP] office in person during office hours." 7 U.S.C. §§ 2020(e)(2)(B)(i), (iii). As with 7 U.S.C. § 2014(a), "shall" constitutes mandatory language similar to that from *Talevski. See supra* at 32. And the relevant parts of 7 U.S.C. § 2020(e)(2)(B) are phrased in terms of the individuals benefited, namely applicants and participants. Just as the pre-discharge notice provision analyzed in *Talevski* was directed at residents, the timely, accurate, and fair service in Section 2020(e)(2)(B)(i) is directed at SNAP applicants and participants. *See generally Talevski*, 599 U.S. 166.

Defendant asserts, incorrectly, that statutory obligations focused on "all eligible households" do not "'focus on' the situation of the individual beneficiaries." Appellant's Br. at 41. *Gonzaga* and *Talevski* require "unambiguously conferred' 'individual rights upon a class of

34

beneficiaries.'" *Talevski*, 599 U.S. at 183 (*quoting Gonzaga*, 536 U.S. at 283, 285–86). Households, composed of one or more individuals, *are* the beneficiaries of SNAP. All of them have enforceable rights, just like the nursing home residents in *Talesvki*. Other than listing Plaintiffs Holmes and Davis by name, it is not clear how these SNAP Act provisions could be any *more* focused on the situation of the individual.

Defendant notes the word "rights" is not included in either 2014(a) or 2020(e)(2)(B). Appellant's Br. at 40–42. But the word "rights" is not required. As the Supreme Court has recognized, "Congress . . . need not use magic words in order to speak clearly . . . ." *Henderson v. Shinseki*, 562 U.S. 428, 436 (2011). In fact, one of the statutes found privately enforceable in *Talevski* does not use word "rights."[8] It utilizes language similar to that found in the SNAP Act provisions at hand. 42 U.S.C. § 1396r(c)(2)(A) (nursing homes "must not transfer or discharge [a] resident"). Defendant's position requires ignoring one of the statutes at

---

[8] The word "rights" appears in the title of 42 U.S.C. § 1396r(c)(2)(A), but as the Court noted in *Medina*, titles cannot create private rights of action unto themselves. *Medina*, 145 S. Ct. at 2237 (quoting *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 19 n.14 (1981)). They can only underscore a right created by statute. *Id.*

35

Appellate Case: 25-1987    Page: 47    Date Filed: 11/10/2025 Entry ID: 5576748

issue in *Talevski*, along with *Medina*'s instruction to use the *Talevski* statutes as a yardstick.

Defendant also disputes the enforceability of 7 U.S.C. § 2020(e)(2) by pointing to 7 U.S.C. § 2020(e)(2)(A), which imposes a general duty to establish procedures to best serve households in a state. Appellant's Br. at 41–42. Plaintiffs, however, do not seek to enforce this provision. 7 U.S.C. § 2020(e)(2)(B) lists specific duties that *must* be carried out, in a nondiscretionary fashion, when the state undertakes those procedures. The state has no discretion as to the requirements listed in 7 U.S.C. § 2020(e)(2)(B).

2. <u>Defendant has failed to overcome the presumption that these statutes are enforceable.</u>

Because the provisions use individualized, rights-creating language, they are presumptively enforceable. *Gonzaga*, 536 U.S. at 284. Under *Gonzaga* and *Talevski*, this presumption is overcome only by a clear demonstration, via either an explicit prohibition or implicit preclusion, that Congress did not intend the statutes to be enforced via private suit. *Id.*; *Talevski*, 599 U.S. at 187.

The SNAP Act contains no language that explicitly forbids enforcement via § 1983. And no part of the SNAP Act is subject to a

36

"comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Talevski*, 599 U.S. at 188. No federal entity or systemic process is established for individual complaints to the Secretary of Agriculture or the U.S. Department of Agriculture (USDA). 7 U.S.C. § 2020(g) merely authorizes the USDA to seek the state's compliance and allows the federal agency to withhold federal funds. This lines up with *Talevski*, in which the statutory means of enforcement was denying federal funds to nursing homes that failed to comply with the relevant statutory provisions. *Talevski*, 599 U.S. at 182, 188–91. Neither the provisions at issue in *Talevski* nor the provisions at issue here contain "a private judicial right of action, a private federal administrative remedy, or any 'carefu[l]' congressional 'tailor[ing].'" *Id.* at 190 (quoting *Fitzgerald*, 555 U.S. at 255).

Defendant erroneously asserts that because there are other mechanisms through which compliance can be enforced against states, the statutes are not enforceable. Appellant's Br. at 43–45. But that is not the test. Neither a funding cut nor a lawsuit brought by the United States Attorney General on behalf of the United States government constitutes a "comprehensive enforcement scheme that is incompatible with

37

individual enforcement under § 1983." *Talevski*, 599 U.S. at 188. Moreover, Defendant provides no authority indicating these specific alternative enforcement mechanisms are sufficient to overcome the presumption of enforceability as required by *Gonzaga*. Nor does Defendant provide any authority supporting her assertion that because many people receive SNAP, and that SNAP is a complicated program, SNAP Act provisions cannot be enforceable. In fact, as noted earlier, provisions that focus on a "class of beneficiaries" are precisely the kinds of provisions that create enforceable rights. *Supra* at 35–36 (and citations therein).

### 3. The structure of the SNAP Act supports enforceability.

In addition, the structure of the statutory scheme further supports enforceability. 7 U.S.C. § 2020 lists many requirements that states must meet when administering SNAP. Many of these are likely the sort of generalized obligations to the federal government that are not enforceable by private litigants under *Gonzaga*, *Talevski*, and *Medina*. However, the rights Plaintiffs seek to enforce are contained in 7 U.S.C. § 2020(e)(2)(B)—a brief list of mandatory procedures and protections to which every applicant is entitled when navigating the SNAP application

38

process. This list stands apart from other, more amorphous instructions to states contained in much of the rest of 7 U.S.C. § 2020. The placement of the right to file and right to fair and accurate service provisions in a stand-alone list only provides further support for enforceability. Similarly, the structure of 7 U.S.C. § 2014(a) favors enforceability. Titled "[e]ligible households," Section 2014 as a whole defines which individuals are entitled to SNAP benefits. Section 2014(a) establishes that those eligible individuals have a right to SNAP benefits if they apply for them.

Additionally, neither of the statutes at issue contain exceptions. Both impose absolute obligations on the part of Defendant to SNAP applicants and recipients. *Medina* noted the statute in that case included a number of exceptions that provided states implementing Medicaid significant discretion in applying the provision and concluded that a statute that gave states so much discretion could not possibly create an enforceable right. *Medina*, 145 S. Ct. at 2235. The *Talevski* statutes included some exceptions, though significantly narrower—and thus creating significantly less discretion—than the *Medina* statute.[9] The lack

---

[9] 42 U.S.C. § 1396r(c)(1)(A)(ii) (nursing home residents have a right to be free from chemical restraints except when necessary to ensure the physical safety of themselves or other residents, or upon a physician's

Appellate Case: 25-1987    Page: 51    Date Filed: 11/10/2025   Entry ID: 5576748

of exceptions here provides even more support for the enforceability of § 2014(a) and § 2020(e)(2)(B).

    4. <u>The statutes provide ample notice regarding the risk of litigation.</u>

*Medina* emphasizes that the *Gonzaga* test is necessary to ensure state actors are on notice that they risk litigation when they participate in a Spending Clause program. *Medina*, 145 S.Ct. at 2234. The two statutes at issue here provide ample notice of this possibility. As discussed above, both statutes contain individualized, rights-creating language as required by *Gonzaga*. In addition, other provisions of the SNAP Act refer specifically to individual actions, confirming Congress intended enforcement by private plaintiffs.

The Act expressly acknowledges the availability of individual lawsuits under 7 U.S.C. § 2023(b), which requires corrective action "[i]n any judicial action" where SNAP allotments are wrongfully withheld, and discusses the restoration of allotments after the discovery of "the possible loss [of benefits] to a household." *Id.* The SNAP Act also mandates the

---

written order); 42 U.S.C. § 1396r(c)(2)(A) (nursing homes must not transfer or discharge a resident, except for in six specific circumstances relating to resident welfare and safety, payment for services, and facility closure).

Appellate Case: 25-1987    Page: 52    Date Filed: 11/10/2025   Entry ID: 5576748

state maintain records necessary to determine compliance and make them "available for review in any action filed by a household" to enforce the Act and implementing regulations. 7 U.S.C. § 2020(a)(3)(B)(ii). Further, § 2027(a)(2) provides that SNAP funding limitations will not apply "to the provision of legal and related assistance in connection with any proceeding or action before any State or Federal agency or court." These sections demonstrate express congressional acknowledgement of private suits by individuals seeking judicial enforcement.

    5. <u>Plaintiffs do not seek to enforce regulations.</u>

Finally, Plaintiffs do not claim that any regulations cited in the Amended Complaint or the Motion for Summary Judgement create private rights of action. The cited statutory provisions are the source of the relevant private rights of action. The regulations merely provide additional detail and guidance as to Defendant's specific obligations.[10] *Price v. City of Stockton*, 390 F.3d 1105, 1112 n.6 (9th Cir. 2004) (noting it is "well settled that regulations alone cannot create rights . . . however, regulations may be relevant in determining the scope of the right

---

[10] For example, 7 C.F.R. § 273.2(c)(1), (2)(i) articulate the specific steps a state agency is expected to take to fulfill the right to file set forth in 7 U.S.C. § 2020(e)(2)(B).

41

conferred by Congress") (citation modified); *Shakhnes v. Belin*, 689 F.3d 244, 253 (2d Cir. 2012) ("[R]egulation merely further defines or fleshes out the content" of the statutory right to a fair hearing); *Harris v. James*, 127 F.3d 993, 1009 (11th Cir. 1997) (same); *see also Smith v. Kirk*, 821 F.2d 980, 984 (4th Cir. 1987).

B.   **The District Court properly decided the Due Process claims.**

1.   Plaintiffs have a property interest in SNAP benefits.

Defendant does not dispute that procedural due process protections attach where an individual has a property or liberty interest from which they are deprived. Nor does she dispute that SNAP benefits are property protected by Due Process. Appellant's Br. at 46. And it is settled law in the Eighth Circuit that applicants for subsistence benefits are entitled to Due Process protections. *Daniels v. Woodbury Cnty., Iowa*, 742 F.2d 1128, 1132–33 (8th Cir. 1984); *see also Hamby v. Neel*, 368 F.3d 549, 559–60 (6th Cir. 2004); *Mallette v. Arlington Cnty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630, 635–36 (4th Cir. 1996).[11]

---

[11] Defendant indirectly questions whether SNAP applicants have a property interest in their benefits, but does not ask this Court to overturn *Daniels*. Appellant's Br. at 48 ("Plaintiffs Holmes and Davis were not yet receiving benefits and had their applications denied"; "Even assuming, without conceding, that *applicants* have a property interest in the processing of their applications…").

Appellate Case: 25-1987   Page: 54   Date Filed: 11/10/2025 Entry ID: 5576748

1. <u>The District Court correctly held Defendant violated Due Process under the *Mathews v. Eldridge* test.</u>

Defendant correctly articulates the *Mathews* test, which considers: (1) the private interest affected; (2) the risk of erroneous deprivation and the value of additional or changed procedures; and (3) the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). However, Defendant's application of the test is flawed and relies on facts and arguments not asserted at summary judgment. *Supra* at 9–11. The District Court's Due Process holding should be affirmed.

The District Court held Plaintiffs' private interest is high because Defendant "has deprived them of subsistence benefits." App. 250; R. Doc. 161, at 31. Defendant incorrectly conflates the *Mathews* private interest with the threshold Due Process property interest but does not challenge the District Court's finding on this issue. Appellant's Br. at 46.

Defendant claims the District Court ignored the second prong of *Mathews*. Appellant's Br. at 46. However, the District Court considered the risk of erroneous deprivation at length, relying on Eighth Circuit precedent holding that arbitrary decision-making in benefits programs creates a "high risk of erroneous deprivation." App. 250–251; R. Doc. 161, at 31–32. The District Court correctly identified the insufficient

43

Appellate Case: 25-1987     Page: 55     Date Filed: 11/10/2025 Entry ID: 5576748

procedures at issue as Defendant's "reject[ing] Plaintiffs' applications for failure to complete an interview within 30 days," combined with "Defendant's inability to provide an efficient and successful system that allows applicants to schedule and complete an interview within the required time frame" which "constitute actual barriers to Plaintiffs receiving benefits they are entitled to under SNAP." App. 251; R. Doc. 161, at 32. The District Court also correctly found that Plaintiffs' SNAP applications were wrongfully denied as a result of Defendant's flawed processes, and this deprivation was likely to reoccur. App. 250–251; R. Doc. 161, at 31–32. At summary judgment, Defendant argued—in contradiction of undisputed facts—that none of the Plaintiffs' SNAP applications were arbitrarily denied. Defendant pointed to various notices sent to SNAP applicants, none of which addressed the actual failures that led to Plaintiffs' wrongful denials. R. Doc. 145, at 48–49.

Defendant argues the District Court failed to consider the burden on the government, as required by the third *Mathews* prong. But Defendant failed to articulate or submit evidence of any burden at all at summary judgment, thus giving the District Court no facts or argument

44

Appellate Case: 25-1987    Page: 56    Date Filed: 11/10/2025 Entry ID: 5576748

related to burden to consider. *See* R. Doc. 145, at 47–49; Aples.App. 643–46; R. Doc. 152, at 102–05.

### 2. <u>Defendant's novel *Mathews* arguments are waived and unsupported by the law and the record.</u>

Defendant now puts forth two novel arguments—one as to *Mathews* prong two, and one as to *Mathews* prong three. Because they were not asserted at summary judgment, these arguments are waived.[12] Defendant presents no justification for why these arguments are raised for the first time as to liability on appeal. There are no valid grounds for considering them now. *Supra* at 9–11.

To the extent this Court is inclined to consider the new argument regarding prong two, Defendant's fair hearing analysis is contrary to long-standing precedent. Defendant points to the fair hearing process as a source of constitutionally sufficient procedures. Appellant's Br. at 47–49. But as Defendant admits, fair hearings are post-deprivation remedies. Defendant's argument would impose a requirement to complete the fair hearing process before a plaintiff could vindicate their

---

[12] Defendant did not raise the fair hearing process until the relief phase, well after the District Court had found due process violations that were likely to recur.

45

Appellate Case: 25-1987     Page: 57     Date Filed: 11/10/2025 Entry ID: 5576748

Due Process rights in court. But it is well established that exhaustion of administrative remedies is not required prior to bringing a § 1983 claim. *See infra* at 60–61.

Moreover, *Goldberg v. Kelly* holds that post-deprivation process is not sufficient to satisfy due process when subsistence benefits are at issue.[13] 397 U.S. at 264. The fact that SNAP fair hearing regulations were promulgated after *Goldberg* has nothing to do with whether post-deprivation process satisfies the *Mathews* analysis here.

Contrary to Defendant's representation, continuation of benefits while a fair hearing is pending is not available for SNAP applicants, either initially or at recertification. Initial applicants have no existing benefits to continue. And the regulation cited by Defendant, 7 C.F.R. § 273.15(k)(1), provides for a continuation of benefits only when the

---

[13] Defendant's reliance on *Zinermon v. Burch*, 494 U.S. 113 (1990), is puzzling. *Zinermon* held that post-deprivation remedies are *not* sufficient to satisfy due process except when "no predeprivation safeguards would be of use in preventing the kind of deprivation alleged." *Id.* at 139. Defendant makes no argument that this is such a situation, nor could she, since Plaintiffs have proven that specific systemic deficiencies caused their deprivation, and the District Court has ordered remedies to address those same deficiencies. *Zinermon*'s analysis also primarily concerned random, isolated acts by state employees. *Id.* at 115, 129–39. Here, Plaintiffs proved their injuries were the result of systemic failures in Defendant's administration of SNAP.

46

"certification period has not expired." By definition, applicants for recertification are at the end of their existing certification period and thus are not entitled to a "continuation." Any fair hearing requested by a SNAP applicant regarding a denied application results in the loss of benefits, regardless of whether a fair hearing request is made. It is necessarily post-deprivation relief and cannot satisfy due process.[14]

As for *Mathews* prong three, Defendant simply makes unsupported assertions about agency responsibilities, without pointing to any evidence of specific burden in the factual findings or record. Appellant's Br. at 49–50. These unsupported, post-hoc assertions by appellate counsel should be disregarded. *Cf. Bowen v. Georgetown Univ.Hosp.,* 488 U.S. 204, 212–13 (1988) (rejecting appellate counsel's litigation position and post-hoc rationalizations for agency action in interpreting federal statutes). Even if these concerns were properly raised, they are insufficient to overcome Plaintiffs' high private interest and significant

---

[14] Defendant also argues that Plaintiffs Empower and Dallas did not have "a valid claim that their SNAP benefits were improperly terminated without adequate process." Appellant's Br. at 48. Empower asserts organizational standing based on harm caused by Defendant's illegal administration of SNAP. *See supra* at 11–16. Plaintiffs have never argued that Plaintiff Dallas' due process rights were violated, nor do they do so now.

47

risk of harm, since administrative burdens to the state are "not overriding in the [subsistence benefits] context." *Bliek v. Palmer*, 102 F.3d 1472, 1478 (8th Cir. 1997) (*citing Goldberg*, 397 U.S. at 266).[15]

C.     The District Court properly decided the ADA claims.

Defendant's ADA argument misstates the applicable legal standards. Defendant argues neither Plaintiff Holmes nor Dallas was subject to discrimination because neither "received differential treatment compared to a different group on the basis of their disabilities." Appellant's Br. at 53. The only case cited in support of Defendants "differential treatment" argument is *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 657 (2020)—an employment gender discrimination case that is not applicable to Title II of the ADA. In fact, courts have rejected a requirement to show disparate impact in cases alleging discrimination based on failure or refusal to accord reasonable accommodations. *Cf. Peebles v. Potter*, 354 F.3d 761, 767 (8th Cir. 2004) ("In a reasonable accommodation case, the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the

---

[15] Defendant cites *Filyaw*, 150 F. 4th 936, to buttress her due process argument. *Filyaw* is wholly unrelated to the *Mathews* test, and as explained above, *Filyaw* is not applicable here. *Supra* at 25–26.

Appellate Case: 25-1987     Page: 60     Date Filed: 11/10/2025 Entry ID: 5576748

disabled individual's limitations."); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003) (citing *Alexander v. Choate*, 469 U.S. 287, 300–01 (1985)).

Title II provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998) (stating elements of Title II ADA claim and confirming the exclusion or denial must be caused "by reason of" the disability). Public entities such as DSS discriminate against otherwise qualified individuals with disabilities when they exclude such individuals by failing to make reasonable accommodations such that they have "equal opportunity to . . . gain the same benefit." *Segal v. Metro. Council*, 29 F.4th 399, 404 (8th Cir. 2022) (*quoting Loye v. Cnty. of Dakota*, 625 F.3d 494, 496 (8th Cir. 2010); *see also* 28 C.F.R. § 35.130(b)(7)(i); *Henrietta D.*, 331 F.3d at 273–77; *cf.* 42 U.S.C. § 12112(b)(5)(A); *Alexander*, 469 U.S. at 300–01 (under Section 504 of the Rehabilitation Act, people with disabilities must be able to access benefits to which they are entitled); *Hall v. Higgins*, 77 F.4th 1171, 1181

49

(8th Cir. 2023) (quoting *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999)) ("[P]ublic entity must make reasonable accommodations where necessary to give 'meaningful access' to programs or benefits; mere 'limited participation' by persons with disabilities is not equivalent to 'meaningful access.'").

The ADA imposes an affirmative obligation to provide reasonable accommodations in order to avoid disability-based discrimination. *Henrietta D.*, 331 F.3d at 275–76 (collecting cases); *see also Peebles*, 354 F.3d at 767 ("In a reasonable accommodation case, the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations."). This authority is clear—agencies such as DSS must provide reasonable accommodations so those with disabilities can access benefits, as a practical matter.

In addition to misstating the legal standard, Defendant mischaracterizes the record. Brazenly, and with no support, Defendant states an accommodation for Plaintiff Dallas "was not needed." Appellant's Br. at 53. Defendant admitted at summary judgment that Plaintiff Dallas submitted a written request for accommodation on the

50

back of his SNAP Change Report in 2021, requesting assistance with his SNAP paperwork, which he struggles to understand due to brain fog caused by epilepsy. Aples.App. 560; R. Doc. 152, at 19 ¶¶ 70–71. Defendant admitted this note was a request for accommodation but offered him no assistance. Aples.App. 560; R. Doc. 152, at 19 ¶ 72, 21 ¶ 78.

In January 2023, Plaintiff Dallas received SNAP recertification paperwork. Aples.App. 561; R. Doc. 152, at 20 ¶ 77. He made multiple attempts to contact the call center, but never reached a DSS worker to ask for an accommodation. Aples.App. 562–63; R. Doc. 152, at 21–22 ¶¶ 78–80. He could not complete the 2023 recertification process until retaining counsel because DSS failed to accommodate his known disabilities. Aples.App. 564; R. Doc. 152, at 23 ¶84. Repeatedly, Plaintiff Dallas tried to request reasonable accommodations, but DSS ignored him and continued to place obstacles in his way, resulting in denial of meaningful access to SNAP recertification. Aples.App. 562–63; R. Doc. 152, at 21–22 ¶¶ 79–82; App. 253; R. Doc. 161, at 34. This violates the ADA. *See* 28 C.F.R. § 35.130(b)(7)(i) (failing to accommodate otherwise qualified individual is discrimination); *Segal*, 29 F.4th at 405 (question is

51

Appellate Case: 25-1987    Page: 63    Date Filed: 11/10/2025 Entry ID: 5576748

not whether plaintiff able to navigate a poor system, but whether defendant met ADA obligations).

Defendant claims Plaintiff Holmes did not suffer discrimination because she entered a Resource Center and spoke to staff without requesting an accommodation. Appellant's Br. at 53. This is an oversimplification. It ignores much of Plaintiff Holmes' experience, including Defendant's failure to notify her of her ADA rights, her inability to navigate Defendant's dysfunctional call center, and Defendant's refusal to provide her a same-day in-person interview. The record shows that because of her disabling conditions, Plaintiff Holmes needs to complete required SNAP tasks by phone without waiting on hold for an extended period of time. Aples.App. 40; R. Doc 138, at 15 ¶ 35.

While stuck in Defendants' call center, she had no way to communicate her need for an accommodation. Aples.App. 625–27; R. Doc. 152, at 84–86 ¶¶ 390–97, 92–92 ¶¶ 424–32. When she attempted to seek a same-day interview, in person—after being frustrated and rejected by the dysfunctional Call Center—DSS rebuffed her. Aples.App. 552; R. Doc. 152, at 11 ¶ 40. At no point did Defendant provide Plaintiff Holmes with sufficient notice of her rights under the ADA. Aples.App. 633; R. Doc. 152,

52

Appellate Case: 25-1987    Page: 64    Date Filed: 11/10/2025 Entry ID: 5576748

at 92 ¶ 424. Plaintiff Holmes tried diligently to complete her SNAP interview without an accommodation, but she could not do so, and Defendant denied her SNAP application.

Defendant also argues Plaintiffs Holmes and Dallas "must establish that, *because of their disability*," they were excluded from participation, denied benefits, or otherwise discriminated against, and that they have failed to do so. Appellant's Br. at 52. As already explained, depriving an individual with a disability of a reasonable accommodation needed to access a government program *is* discrimination under the ADA.[16] When Defendant deprived Plaintiffs Dallas and Holmes of reasonable accommodations necessary to access SNAP, she excluded them "by reason of [their] disability." *Layton*, 143 F.3d at 472 (holding that deprivation of a reasonably accommodation violates the ADA).

Defendant claims "[n]either Ms. Holmes nor Mr. Dallas were excluded from or denied participation in SNAP because of a disability." Appellant's Br. at 52. With respect to Plaintiff Holmes, Defendant argues

---

[16] Courts have confirmed that "but for" causation is not the appropriate standard and disability need not be the sole reason for the challenged action. *See Henrietta D.*, 331 F.3d at 278–80 (discussing proximate cause generally and explaining that the identified cause must be a substantial factor in bringing about the injury).

53

only that she did not seek administrative review of the decision to deny her application. *Id.* Defendant cites no case law in support of this argument, which is made for the first time on appeal. R. Doc. 52; R. Doc. 93. Therefore, it is waived. In any event, whether Plaintiff Holmes pursued administrative review has nothing to do with whether she suffered discrimination by reason of her disability.

With respect to Plaintiff Dallas, Defendant simply states he was never denied benefits. Appellant's Br. at 53. This ignores Defendant's failure to provide reasonable accommodations to Plaintiff Dallas. Defendants' failures prevented Plaintiff Dallas from completing his application, which he accomplished only after joining this litigation, with assistance of counsel. Aples.App. 563–64; R. Doc. 152, at 22–23 ¶ 82. Defendant further ignores that to maintain his SNAP benefits going forward, Plaintiff Dallas must regularly complete paperwork that he struggles to understand, without accommodations from Defendant, because prior to the District Court's relief order, Defendant lacked any effective system of compliance with the ADA. *See supra* at 22–23. Defendant apparently expects Plaintiff Dallas to request a reasonable accommodation via DSS's broken call center each time he needs

54

assistance with SNAP paperwork, and then retain counsel to sue when he cannot access benefits.

The ADA imposes several other requirements that Defendant violated. As examples, the ADA requires Defendant to notify applicants and participants about their rights, 28 C.F.R. § 35.106, and to create an effective grievance system by which qualified individuals with disabilities can submit complaints regarding ADA-prohibited discrimination, 28 C.F.R. § 35.107. Overall, it requires the agency to provide a system capable of providing accommodations consistently. *See Henrietta D.*, 331 F.3d at 279–80 ("[Where] the accommodative scheme [is] 'broken,' we hold that the plaintiffs have demonstrated that their disabilities are a cause of the denial of access to benefits."). A system incapable of providing accommodations consistently and reliably is insufficient under the ADA. *See id.* at 276–77 (discussing the functioning of the system for people with disabilities); *Disabled in Action v. Bd. of Elections*, 752 F.3d 189, 201 (2d Cir. 2014) (examining an ad hoc versus effective system).

Consistent with these principles, the District Court concluded that Defendant's failure to inform Plaintiffs of their rights and provide a

55

system by which Plaintiffs could seek an accommodation resulted in denial of meaningful access to SNAP. App. 253; R. Doc. 161, at 34. Defendant does not even attempt to defend her dysfunctional, broken system. She does not address the mountain of evidence showing Defendant lacks methods, policies, procedures, and practices necessary to provide reasonable accommodations. Simply put, Defendant largely ignores the record, misapplies the law, and offers no valid grounds for reversal of the District Court's Judgment that Defendant violated the ADA.

## IV. THE DISTRICT COURT'S ORDER ON RELIEF MUST BE AFFIRMED

### A. The District Court properly considered the injunction factors.

Defendant argues the District Court failed to consider the proper permanent injunction test, and Plaintiffs failed to establish they lacked an adequate remedy at law. Appellant's. Br. at 54–55. This new argument is both waived and unsupported. Further, Defendant's suggestion that administrative fair hearings mitigate harm and make injunctive relief improper is both waived and meritless.

Appellate Case: 25-1987    Page: 68    Date Filed: 11/10/2025 Entry ID: 5576748

### B. Injunctive relief is appropriate to remedy Plaintiffs' irreparable harm.

The District Court properly considered the relevant permanent injunction factors. While considering whether to issue the injunctive relief, the Court weighed "(1) Plaintiffs' likelihood of irreparable harm; (2) the balance between harm to the Plaintiffs and the injury that the injunction's issuance would inflict upon Defendants; and (3) the public interest." App. 254; R. Doc. 161, at 35 (citing *Oglala Sioux Tribe v. C&W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008)); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (applying the same analysis, which applies to both preliminary and permanent injunctions).

The District Court discussed these factors and found, among other things, that Plaintiffs would be irreparably harmed from ongoing violations. According to the District Court, "[e]very day Plaintiffs go without SNAP there is a deprivation of nutrition, and along with that comes psychological and physical distress." App. 255; R. Doc. 161, at 36. This is the correct analysis.

For the first time, Defendant now offers a different four-factor test that includes an analysis of whether "remedies available at law, such as monetary damages, are inadequate to compensate for that injury."

57

Appellate Case: 25-1987     Page: 69     Date Filed: 11/10/2025 Entry ID: 5576748

Appellant's Br. at 54 (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). Defendant did not articulate this alternative standard below; nor did Defendant assert Plaintiffs would not suffer irreparable harm without a permanent injunction. Accordingly, these arguments are waived. *See supra* at 9–11.

In any event, whether the *Ogalala* and *eBay* tests are in fact different or merely articulate the same principles slightly differently is irrelevant, as Plaintiffs have no adequate remedy at law. *See Mathews*, 424 U.S. at 331–32 (internal citations omitted) ("A claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing"); *see also Chu Drua Cha v. Noot*, 696 F.2d 594, 599 (8th Cir. 1982) (irreparable harm occurs when people at the economic margin of existence go without benefits for which they were eligible as their suffering cannot be remedied by subsequent money judgment), *mod. on other grounds*, 701 F.2d 750 (8th Cir. 1983); *Turner v. Walsh*, 435 F.

58

Supp. 707, 711 (W.D. Mo. 1977) (loss of Medicaid benefits is irreparable injury), *aff'd per curiam*, 574 F.2d 456 (8th Cir. 1978).

Plaintiffs articulated their irreparable harm without an injunction and showed "the remedies available at law are inadequate." Aples.App. 131–34; R. Doc. 138, at 37–40. The District Court properly relied on these arguments, uncontested by Defendant, in concluding that all Plaintiffs will suffer irreparable injury absent a permanent injunction. App. 255; R. Doc. 161, at 36.

### C.   Administrative remedies are irrelevant.

Defendant now hints the injunction was improper because the District Court did not analyze the availability of administrative and state court remedies. Again, Defendant did not present this argument to the District Court. It is waived on appeal. *See supra* at 9–11. In any event, this argument is meritless. By arguing the District Court should have considered the availability of state-administered fair hearings, Defendant effectively proposes that Plaintiffs must exhaust state administrative remedies before bringing suit. Caselaw establishes no such requirement exists. "[E]xhaustion of administrative remedies in § 1983 actions should not be judicially imposed." *Patsy v. Bd. of Regents*

59

*of State of Fla.*, 457 U.S. 496, 502 (1982); *see also Heck v. Humphrey*, 512 U.S. 477, 483 (1994); *Monroe v. Pape*, 365 U.S. 167, 183 (1961); *Bonner v. Cir. Ct. of City of St. Louis, Mo.*, 526 F.2d 1331, 1335 (8th Cir. 1975). Further, there is neither an explicit nor implicit exhaustion requirement in the SNAP Act. *Barry v. Corrigan*, 79 F. Supp. 3d 712, 741 (E.D. Mich. 2015), aff'd sub nom. *Barry v. Lyon*, 834 F.3d 706, 741 (6th Cir. 2016) ("there is no explicit exhaustion requirement in the SNAP Act" nor could the Court "discern [congressional] intent" "to require § 1983 plaintiffs to exhaust state administrative remedies") (referencing *Commonwealth of Mass. v. Lyng*, 893 F.2d 424, 427 (1st Cir. 1990) ("food stamp statute does not require exhaustion"); *Williston v. Eggleston*, 379 F. Supp. 2d 561, 569–70 (S.D.N.Y. 2005) (same)).

### D. The Order on Relief is necessary to provide Plaintiffs' complete relief .

This is not *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). The District Court here never granted a nationwide or universal injunction. Instead, the District Court carefully considered the claims of systematic violations that the Plaintiffs brought—and ***proved***—and granted the relief necessary to ensure that Plaintiffs would not endure continuing violations of their rights. To the extent *CASA* has any relevance here, it

60

confirms the District Court granted a remedy that was appropriate and within its authority.

*CASA* involved individual, organizational, and state plaintiffs who sued to prevent application of Executive Order No. 14160, which set forth a national policy regarding the issuance and acceptance of documentation of citizenship in certain scenarios. That Order secured nationwide preliminary injunctions barring officials from applying the policy to anyone in the entire country. *CASA*, 606 U.S. at 838–39. The Supreme Court held that nationwide injunctions—*i.e.*, those that by their terms prohibit the government from enforcing a law or policy against anyone—party to the case or not—are beyond the equitable powers of the courts. Therefore, it stayed the injunctions, remanding with instructions to narrow the injunctions to "provide complete relief to each plaintiff with standing to sue." *Id.* at 861.

Here, the District Court detailed numerous systematic failures that caused the deprivation of Plaintiffs' statutory and constitutional rights, including how Plaintiff Holmes was refused a same-day, face-to-face interview after she filed her application in person, could never connect to the Call Center to schedule an interview despite numerous attempts, and

61

Appellate Case: 25-1987    Page: 73    Date Filed: 11/10/2025 Entry ID: 5576748

was ultimately denied SNAP benefits due to the systematic deficiencies of the Missouri application and recertification process. App. 233–34; R. Doc. 161, at 14–15.[17]

Similarly, the District Court found Plaintiff Davis' online application was never registered, requiring a second application. App. 235–36; R. Doc. 161, at 16–17. It also found Plaintiff Davis was able to reach an operator at the Call Center only once despite numerous, repeated attempts, and that on that occasion the Call Center worker hung up on her before completing the interview. App. 236–37; R. Doc. 161, at 17–18. Systemic failures with the application process and Call Center operations resulted in Plaintiff Davis being wrongly denied SNAP benefits. App. 236–37; R. Doc. 161, at 18–19.

The District Court determined Plaintiff Dallas was "not offered any assistance with his recertification application despite his request for an accommodation," that systemic deficiencies with the Call Center prevented him from completing his recertification process, and that he would be required to make a reasonable accommodation request every

---

[17] The District Court also explained that Plaintiff Holmes would be required to recertify and conduct additional interviews consistently in the future to maintain her SNAP benefits. *Id.*

Appellate Case: 25-1987     Page: 74     Date Filed: 11/10/2025 Entry ID: 5576748

time his recertification was due. App. 234–35; R. Doc. 161, at 15–16. Reviewing this unrebutted evidence, the District Court ultimately found Plaintiffs proved a "failure of the system to offer a reasonable opportunity to interview," a deficient ADA accommodation process, the wrongful denial of SNAP benefits, and that these Plaintiffs would face the same systemic "obstacles each time they must recertify their SNAP eligibility." App. 221, 254; R. Doc. 161, at 2, 35. After considering and discussing a mountain of evidence, the District Court found "systemic, ongoing problems" that place Plaintiffs "further at risk of losing SNAP benefits each and every time they have to use Defendant's system to recertify their benefits." App. 224–245; R. Doc. 161, at 23–26.

After submissions by the parties on the appropriate remedy, the District Court issued an injunction ordering the Defendant to rectify these systemic failures that, unless corrected, will prevent Plaintiffs from accessing the SNAP benefits to which they are entitled when they have to recertify to maintain benefits going forward. App. 260–271; R. Doc. 220, at 1–12. This systemic relief is required to afford these Plaintiffs "complete relief," which *CASA* recognizes as a basic principle of equity. *See CASA*, 606 U.S. at 851 ("We agree that the complete-relief principle

63

has deep roots in equity."). This has long been the law and *CASA* did not overrule this basic principle of equity. *Id.* at 851.[18]

Defendant's argument regarding Empower Missouri is equally misplaced. *See* Appellant's Br. at 57. As explained earlier, Empower Missouri is not alleging harm to "members," but rather disruption of its core business activities because of Defendant's dysfunctional system. *See supra* at 11–16. Remediating that systemic harm will afford complete relief to Empower Missouri.

While the ordered relief might assist other SNAP applicants, it does so only incidentally. *See CASA* 606 U.S. at 851–52 (incidental benefits to non-parties is not "universal relief"). In *CASA*, the Supreme Court pointed approvingly to a hypothetical nuisance case in which one neighbor sues another for blasting loud music at all hours of the night. *Id.* at 852. To afford such a plaintiff complete relief, the only feasible

_____

[18] A secondary source cited favorably by the majority in *CASA* explains that the terms "nationwide injunction" and "universal injunction" apply to five categories of orders, all of which involve prohibiting the defendant from enforcing legal provisions. *See* Michael T. Morley, Disaggregating the History of Nationwide Injunctions: A Response to Professor Sohoni, 72 Ala. L. Rev. 239, 241 (2020). Here, the District Court did not prohibit the enforcement of any law. Instead, it ordered Defendant to take action to reform specific policies and procedures that caused Plaintiffs' harms.

Appellate Case: 25-1987     Page: 76     Date Filed: 11/10/2025 Entry ID: 5576748

option was to order the neighbor to turn the volume down, which necessarily benefits all surrounding neighbors. *Id.* While such an injunction might benefit nonparties, that benefit is merely incidental. *Id.* As a matter of law, that injunction's protection extends only to the suing plaintiff—after all, only the plaintiff can enforce the judgment against the defendant responsible for the nuisance. *Id.* If the nuisance persists and a different neighbor wants to address it, they must file their own suit. *Id.* The same is true here. Curing systemic dysfunction in administration of SNAP in Missouri will solve Plaintiffs' legal problems and only *they* can enforce the District Court's order. Incidental benefits to others does not prevent the award of complete injunctive relief to Plaintiffs. *Id.* at 851–52. The district court's injunction does not purport to benefit non-parties, and its terms provide no mechanism for non-parties to enforce it. *See Id.* at 852–53 (noting that, as to the state plaintiffs, the relevant injunction did not purport to directly benefit non-parties and that a universal injunction might be necessary to provide the states themselves with complete relief, thus ordering the lower courts to determine what relief was required as to those).

Appellate Case: 25-1987   Page: 77   Date Filed: 11/10/2025 Entry ID: 5576748

Unlike in *CASA*, the relief afforded here has a corollary in the traditional English courts of equity—*i.e.*, specific performance. There is no question that federal courts can order specific performance. *See, e.g.*, *Texas Co. v. Cent. Fuel Oil Co.*, 194 F. 1, 22 (8th Cir. 1912) (recognizing federal court authority to award specific performance and its English common law roots); *see also Morgan's Heirs v. Morgan*, 15 U.S. 290, 302 fn. c (1817) (tracing the doctrine of specific performance from the English Court of Chancery back to Roman law). Here, the Court found Defendant violated—and would likely to continue to violate—Plaintiffs' rights to, among other things, file an application on the first day of contact with the administering agency (7 U.S.C. § 2020(c)(2)(B)(iii)), receive SNAP benefits for which they are eligible (7 U.S.C. § 2014(a)), and request and receive reasonable accommodations in accordance with the ADA. The District Court's remedy was directly targeted toward ensuring Plaintiffs would receive the specific performance by Defendant they are entitled to under the governing law. *Cf., Osborn v. Bank of U.S.*, 22 U.S. 738, 739 (1824) (an injunction will be granted to prevent a legal right from being destroyed).

Appellate Case: 25-1987    Page: 78    Date Filed: 11/10/2025 Entry ID: 5576748

The District Court ordered Defendant to take actions necessary to provide complete relief to Plaintiffs as a remedy for Defendant's continuing violations. The relief order is well within the powers of the federal courts.

### E. The relief awarded is no broader than necessary to remedy Plaintiffs' harm.

Defendant's argument that the ordered relief is "incongruent with" the asserted legal violations rehashes her challenge to redressability. As discussed above, Plaintiffs proved systemic violations of their statutory and constitutional rights. The District Court's relief order is appropriate because it is no more burdensome than necessary to provide Plaintiffs with complete relief. *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019) ("injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs" and "is dictated by the extent of the violation established") (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

The District Court determined that Defendant's inaccessible call center combined with her policy decision to automatically deny applications when an interview is not completed within 30 days, regardless of whether the applicant attempted to complete an interview,

67

Appellate Case: 25-1987     Page: 79     Date Filed: 11/10/2025 Entry ID: 5576748

violated both the SNAP Act and the Due Process Clause, and harmed Plaintiffs. App. 242–45, 248–50, 256–57; R. Doc. 161, at 23–26, 29–31, 37–38. The District Court found that one year later, Defendant had not altered or addressed her policies and practices to remedy this harm. Therefore, the District Court issued clear and specific orders requiring Defendant to cease her practice of automatic denials for applicants who made reasonable attempts to interview, and to take specific steps to improve call center performance. App. 262–70; R. Doc. 220 at 3–11.

Defendant failed to permit Plaintiff Holmes an opportunity to file a SNAP application on the first day she contacted Defendant, App. 245; R. Doc. 161, at 26, so the District Court ordered Defendant to take specific steps to avoid this harm to the Plaintiffs in the future. App. 265–66; R. Doc. 220, at 6–7. The District Court further determined that Defendant failed to notify SNAP participants of their ADA rights and failed to create an effective system by which individuals with disabilities could seek accommodations or submit complaints regarding ADA-prohibited discrimination. The District Court found these failures denied Plaintiffs Holmes and Dallas meaningful access to SNAP. App. 230–35, 251–54; R. Doc. 161, at 11–16, 32–35. Accordingly, the District Court ordered

68

Defendant to develop and submit an ADA policy that complies with federal law. App. 270; R. Doc. 220, at 11.

These are appropriate remedies. They address the exact harms Plaintiffs suffered and would continue to suffer in the future absent this order. The injunctive relief was specifically tailored to remedy the Plaintiffs' injuries and ensure the injuries would not recur.

Defendant argues the District Court's order is overbroad because neither the SNAP Act nor procedural Due Process requires Defendant to operate a call center or offer phone interviews, and because no statute or regulation governs call wait times, percentage of applications denied for failure to interview, or the technological features of a state-operated phone system. Appellant's Br. at 60. These assertions are true but unavailing. Defendant pursued and received the OND Waiver, choosing to operate a call center. Defendant created a system in which the call center is the primary means for completing SNAP interviews. App. 213; R. Doc. 145-7, at 3 (in lieu of scheduling interview, Defendant instructs applicants to contact call center). In operating the call center, Defendant remains bound by the Due Process Clause, along with the SNAP Act's requirements to furnish benefits to all eligible applicants and to provide

69

"timely, accurate and fair service." 7 U.S.C. §§ 2014(a), 2020(e)(2)(B). The District Court ordered the relief necessary to remedy systemic violations of these provisions.

Ignoring her legal obligations, Defendant complains that the District Court's order to cease automatic denials of applicants who have tried unsuccessfully to interview is inappropriate. Defendant offers no evidentiary or legal support for this argument. Defendant simply asserts that identifying such applicants is too difficult.[19] However, the record establishes that Defendant's eligibility systems record callers' phone numbers, case numbers or SSNs, and dates of birth. Aples.App. 142; R. Doc. 138-7, at 4; Aples.App. 348; R. Doc. 145-2, at 83:14–22. Defendant can assess applicants' efforts to complete interviews prior to issuing a denial. Aples.App. 5–8; R. Doc. 19-1; Aples.App. 159–60; R. Doc. 138-11; Aples.App. 248–49; R. Doc. 138-25. Defendant also "is doubtful" that the District Court's order is appropriate under the federal regulation that governs interview delays, but offers no authority to support her opinion. Appellant's Br. at 61. This regulation contemplates scheduled interviews,

---

[19] Defendant also claims without offering any evidentiary support or explanation that delaying denials could increase error rates.

Appellate Case: 25-1987    Page: 82    Date Filed: 11/10/2025  Entry ID: 5576748

*see* 7 C.F.R. § 273.2(h)(1)(i)(D), which are waived under the OND Waiver. App. 211; R. Doc. 145–7 (waiving obligation to schedule specific date and time for SNAP interviews). Regardless, the District Court's remedial order was specific and closely tied to Defendant's misconduct that caused Plaintiffs actual harm—the inaccessible call center and Defendant's auto-denial policy. This misconduct obstructed Plaintiffs from accessing life-sustaining SNAP benefits, despite Plaintiffs making multiple attempts to complete the interview.

Defendant also suggests the relief order is overbroad because the District Court required her to send "additional" notices without reason or explanation. Appellant's Br. at 61. However, the District Court has not required Defendant to send *more* notices. *Compare* App. 268; R. Doc. 220, at 9 ¶¶ 13–14 (requiring 2 notices) *with* Aples.App. 546–57; R. Doc. 152, at 5–7 ¶¶ 20, 23–24 (Defendant's admission she sends 2 notices). Instead, the order requires Defendant to ensure SNAP notices contain sufficient information to inform applicants of how they can complete an interview. Such information was not provided in Defendant's prior notices. *Compare* App. 269; R. Doc. 220, at 10 ¶ 19 (notices should inform applicants that they can complete an interview by answering Defendant's outbound call,

71

contacting the call center during business hours, going to a Resource Center for an in-person interview, or scheduling a phone interview) *and* App. 213–14; R. Doc. 145-7, at 3–4 (waiver requirement that Defendant "[p]rovide households with clear, written instructions for completing the interview," and inform applicants that her agency "will schedule the interview or provide a face-to-face-interview if one is requested") *with* App. 120; R. Doc. 138-12, at 30 (informing Plaintiff Holmes to contact the call center but failing to apprise her that interviews can be completed in-person or by appointment). The District Court's notice requirements are appropriate to remedy the harm Plaintiffs suffered.

Finally, Defendant challenges the relief regarding the SNAP Act's right-to-file requirements. Without citing any record evidence or legal authority, she declares the order's remedies are "counterproductive" because other application methods are "faster and easier." Appellant's Br. at 62. Defendant has a legal obligation to permit households to file an application on the first day they contact the agency during office hours, and to "encourage" households to file an application the same day the household contacts the agency in person or by telephone and expresses an interest in SNAP or other food insecurity concerns. 7 U.S.C. §§

72

Appellate Case: 25-1987     Page: 84     Date Filed: 11/10/2025 Entry ID: 5576748

2020(e)(2)(B)(iii); 7 C.F.R. § 273.2(c)(1), (2)(i). Defendant violated these requirements, causing harm to Plaintiff Holmes. Defendants' unsupported arguments about counterproductivity fail to show the District Court's order is inappropriate or overly burdensome. Indeed, Defendants' arguments illustrate the need for judicial intervention and relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court deny Defendant's Motion in full and affirm the District Court's Summary Judgment Order and Order on Relief.

DATED:     November 7, 2025      Respectfully Submitted,

*/s/ Andrew J. Scavotto*
Andrew J. Scavotto
J. Nicci Warr
Zachary T. Buchheit
STINSON LLP
7700 Forsyth Blvd., Suite 1100
Clayton, MO 63105
(314) 863-8600
andrew.scavotto@stinson.com
nicci.warr@stinson.com
zachary.buchheit@stinson.com

Joel D. Ferber
Katherine A. Holley
Jamie L. Rodriguez
Lisa J. D'Souza

73

Legal Services of Eastern Missouri
701 Market St., Suite 1100
St. Louis, Missouri 63101
(314) 534-4200
kaholley@lsem.org
jlrodriguez@lsem.org
ljdsouza@lsem.org

Katharine Deabler-Meadows
Saima Akhtar
National Center for Law
and Economic Justice
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967
deabler@nclej.org
akhtar@nclej.org

*Attorneys for Plaintiffs-Appellees*

74

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed with the Court and forwarded to all attorneys of record using the Court's electronic CM/ECF filing system this 7th day of November, 2025.

*/s/ Andrew J. Scavotto*
*Attorney for Plaintiffs-Appellees*

Appellate Case: 25-1987    Page: 87    Date Filed: 11/10/2025 Entry ID: 5576748

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing brief complies with the type-style requirements of Fed. R. App. P. 32(a)(5) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font. The foregoing brief complies with the type-volume limitations of Fed. R. App. P. 32 (a)(7)(B) and the Court' order permitting up to 14,500 words because it contains a total of 14,500 words (using the word count feature of Microsoft Word), excluding the parts of the brief exempted by Fed. R. App. P. 32(f). The brief has been scanned for viruses and the brief is virus free.

<u>/s/ Andrew J. Scavotto</u>
*Attorney for Plaintiffs-Appellees*

Appellate Case: 25-1987    Page: 88    Date Filed: 11/10/2025 Entry ID: 5576748