No. 25-1987

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

MARY HOLMES, EMPOWER MISSOURI, DENISE DAVIS, AND
ANDREW DALLAS,

*Plaintiffs-Appellees,*

v.

JESSICA BAX, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE MISSOURI
DEPARTMENT OF SOCIAL SERVICES

*Defendant-Appellant.*

On Appeal from the United States District Court
For the Western District of Missouri,
Case No. 2:22-cv-04026 (Harpool, J.)

## APPELLANT'S REPLY BRIEF

Caroline M. Brown
Rebecca L. Wolfe
Brown & Peisch PLLC
1225 19th St. NW, Suite 700
Washington, D.C. 20036
(202) 499-4258
cbrown@brownandpeisch.com
rwolfe@brownandpeisch.com

*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................ii

INTRODUCTION .......................................................................... 1

ARGUMENT ............................................................................... 3

    I.    Plaintiffs Have Not Met Their Burden of Establishing Standing ............................................................... 3

        A.    Empower Missouri's New Theory of Organizational Standing Does Not Stand Up to Scrutiny ............................................................ 3

        B.    The Individual Plaintiffs Fail to Establish an Ongoing or Likely Recurring Violation ......................... 7

    II.    Plaintiffs Have Not Established That the SNAP Provisions Confer an Enforceable Right .............................. 11

    III.    Plaintiffs' Attempt to Blame Defendant for the District Court's Flawed Due Process Analysis Should be Rejected ....................................................... 18

    IV.    Plaintiffs Holmes' and Dallas' ADA Claims Based on a Failure to Accommodate Disabilities Are Meritless ......... 24

    V.    The District Court's Remedial Order Is Improper and Excessive ......................................................... 27

        A.    Plaintiffs Fail to Demonstrate That They Lacked an Adequate Remedy at Law ......................... 27

        B.    The Order on Relief is Impermissibly Universal ........ 28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Armstrong v. Exceptional Child Ctr., Inc.,*
575 U.S. 320 (2015) ...................................................................................16

*Birch v. Mazander,*
678 F.2d 754 (8th Cir. 1982) .....................................................................27

*Bonner v. Cir. Ct. of City of St. Louis, Mo.,*
526 F.2d 1331 (8th Cir. 1975) ...................................................................27

*Calzone v. Summers,*
942 F.3d 415 (8th Cir. 2019) .....................................................................20

*Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.,*
9 F.4th 803 (8th Cir. 2021)....................................................................22-23

*Filyaw v. Corsi,*
150 F.4th 936 (8th Cir. 2025)....................................................................11

*Food & Drug Admin. v. Alliance for Hippocratic Medicine,*
602 U.S. 367 (2024) ..............................................................................3, 5-6

*Gonzaga University v. Doe,*
536 U.S. 273 (2002) ...................................................................................11

*Havens Realty Corp. v. Coleman,*
455 U.S. 363 (1982) ................................................................................5, 6

*Health & Hospital Corp. of Marion County v. Talevski,*
599 U.S. 166 (2023) .............................................................................*passim*

*Hickman v. State of Mo.,*
144 F.3d 1141 (8th Cir. 1998) ................................................................7, 8

*Hudson v. Palmer,*
468 U.S. 517 (1984) ...................................................................................19

*Lewis v. Cont'l Bank Corp.,*
494 U.S. 472 (1990) .....................................................................................7

*Lue v. Moore,*
43 F.3d 1203 (8th Cir. 1994) .....................................................................25

ii

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ........................................................................... 31

*Mathews v. Eldridge,*
424 U.S. 319 (1976) ..................................................... 18, 19, 22

*Medina v. Planned Parenthood South Atlantic,*
606 U.S. 357 (2025) ........................................... 11, 12, 16, 17

*Nairne v. Landry,*
151 F.4th 666 (5th Cir. 2025) ................................................... 6

*Pennhurst State Sch. & Hosp. v. Halderman,*
451 U.S. 1 (1981) ................................................................. 16

*Raymond v. Bd. of Regents of the Univ. of Minn.,*
847 F.3d 585 (8th Cir. 2017) ............................................... 20

*Rinehart v. Weitzell,*
964 F.3d 684 (8th Cir. 2020) ............................................... 25

*Suter v. Artist M.,*
503 U.S. 347 (1992) ............................................................. 16

*Trump v. CASA, Inc.,*
606 U.S. 831 (2025) .................................................. 28, 29, 31

*Universal Title Ins. Co. v. United States,*
942 F.2d 1311 (8th Cir. 1991) ...................................... 22, 23

*Weitz Co., LLC v. Lloyd's of London,*
574 F.3d 885 (8th Cir. 2009) ............................................... 22

*Wong v. Minnesota Dep't of Hum. Servs.,*
216 F. Supp. 3d 991 (D. Minn. 2016) ................................ 25

**Statutes & Other Authorities:**

U.S. Const. Amend. XI ......................................................... 11

7 U.S.C. § 2014 .................................................................... 14

7 U.S.C. § 2014(a) ................................................................ 14

7 U.S.C. § 2020 .................................................................... 15

Appellate Case: 25-1987    Page: 4    Date Filed: 12/02/2025 Entry ID: 5583649

7 U.S.C. § 2020(e)(2) ........................................................ 15, 16, 17

7 U.S.C. § 2020(e)(2)(A) ........................................................... 17

7 U.S.C. § 2020(e)(2)(B) ....................................................... 15, 17

7 U.S.C. § 2020(e)(3) .................................................................. 23

7 U.S.C. § 2020(e)(9) .................................................................. 23

7 U.S.C. § 2020(e)(10) ............................................................ 8, 23

7 U.S.C. § 2020(e)(18) ................................................................ 23

7 U.S.C. § 2020(g) ...................................................................... 18

7 U.S.C. § 2020(n) ...................................................................... 23

7 U.S.C. § 2020(r)(2) .................................................................. 23

42 U.S.C. § 1396r ....................................................................... 13

42 U.S.C. § 1983 ......................................................................... 12

7 C.F.R. § 208.080 .................................................................. 8, 23

7 C.F.R. § 208.100 .................................................................. 8, 23

7 C.F.R. § 208.110 .................................................................. 8, 23

7 C.F.R. § 273.2(b)(4)(i) .............................................................. 23

7 C.F.R. § 273.2(f) ...................................................................... 23

7 C.F.R. § 273.15 .................................................................... 8, 23

13 C.S.R. § 40-2.160 ............................................................... 8, 23

Fed. R. App. P. 10(a)(1) ................................................................ 9

Pub. L. 119-21, §§ 10105–10106, 139 Stat. 72, 83–85 (2025) ................ 24

Appellate Case: 25-1987    Page: 5    Date Filed: 12/02/2025 Entry ID: 5583649

## INTRODUCTION

The Missouri Department of Social Services (DSS) and its Director Jessica Bax, named in her official capacity as the Defendant in this action, recognize the critical importance of Supplemental Nutrition Assistance Program (SNAP) benefits to low-income Missourians facing food insecurity. Defendant and agency employees across the State work hard every day to get those benefits into the hands of eligible applicants, processing between 40,000 and 60,000 applications and recertifications every month. *See* Aples.App. 679; R. Doc. 237-1, at 1.[1]

DSS implemented the telephone interview option that is the subject of this appeal as a better way to serve Missourians applying (or recertifying eligibility) for SNAP benefits. Every month, tens of thousands of applicants are able to avoid a trip to a Resource Center by interviewing over the phone; admittedly, some experience long wait times or repeated attempts to call back after missing an interview call from DSS. For those encountering difficulties, the phone system does not

---

[1] "Aples.App." refers to Appellees' Appendix. "App." refers to Appellant's appendix.

1

Appellate Case: 25-1987    Page: 6    Date Filed: 12/02/2025 Entry ID: 5583649

eliminate the ability to satisfy the interview requirement by going to a Resource Center and waiting for an available eligibility worker.

Plaintiffs, and the district court, focus only on the call center's inadequacies, and Defendant admits it is imperfect. That said, the easiest way to resolve this litigation would be to return to mandatory in-person interviews for all. However, Defendant does not believe that would be in the best interest of food-insecure Missourians, many of whom are better served by the current system.

The Plaintiffs have not shown that the district court's orders complied with Article III jurisdictional limits or governing statutes and case law. It was error for the district court to hold that the claims of three individuals (all of whom are receiving benefits) and an advocacy organization unsatisfied with Missouri's current system were justiciable; it was error for the court to find that Missouri's system did not meet constitutional and statutory minimums; and it was error for the court to order sweeping, systemwide relief that is so burdensome it could ultimately force termination of the telephone interview alternative altogether. The grant of summary judgment in favor of Plaintiffs, and the accompanying remedial order, should be reversed.

2

# ARGUMENT

## I. Plaintiffs Have Not Met Their Burden of Establishing Standing.

Plaintiffs' arguments in support of their standing are not supported by record evidence, and their contention that they seek redress only for their own claims and not those of third parties is belied by the pleadings. The Amended Complaint expressly seeks "statewide and systemic policies" benefitting "all applicants for SNAP" and "all Missouri residents," App. 88–89; R. Doc. 88, at 49–50, even though the case is not brought as a class action. This demand is wholly incommensurate with the claims of the three individual Plaintiffs, who reside in two counties and the independent city of St. Louis and who are already receiving SNAP benefits, or the claims of Empower Missouri, which lacks a concrete injury redressable by such relief.

### A. Empower Missouri's New Theory of Organizational Standing Does Not Stand Up to Scrutiny.

In light of the Supreme Court's intervening decision in *Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), Plaintiff Empower Missouri abandons its argument that a "diversion of resources" alone is a sufficiently concrete injury to establish standing.

3

*See*, *e.g.*, Aples.App. 133–35; R. Doc. 138, at 108–110.[2] Now it argues that Defendant's conduct "frustrates Empower's core business activities." Appellees' Br. 11–12. Yet Empower Missouri does not meaningfully explain what its core business activities are. Instead, it makes the same assertions, and points to the same record evidence, that it did in arguing its earlier diversion of resources theory.

Plaintiffs claim that Empower Missouri "works to ensure Missourians have access to adequate nutrition, health care, housing, and education," "provides education and resources to anti-hunger organizations," and that "[a]nti-hunger initiatives are a core business activity" that were "disrupted by Defendant's practices and policies." Appellees' Br. 12. Even assuming vague descriptions such as "initiatives," "work," "education," and providing "resources" are sufficient to discern business activities, Plaintiffs do not argue Defendant impaired those activities other than by "forc[ing]" Empower Missouri to divert time and "resources" away from them. *See* Appellees' Br. 15.

---

[2] For R. Docs. 138 and 148, page numbers refer to the ECF-stamped pagination.

Appellate Case: 25-1987   Page: 9   Date Filed: 12/02/2025 Entry ID: 5583649

This is exactly what the Supreme Court found to be insufficient for standing in *Alliance*. Like Empower Missouri, the plaintiff medical associations in *Alliance* argued that they were "forced" to "expend considerable time, energy, and resources" to, *inter alia*, "engag[e] in public advocacy and public education," which in turn contributed to spending "'considerable resources' to the detriment of other spending priorities." 602 U.S. at 394–95.

Plaintiffs attempt to liken Empower Missouri to the organizational plaintiff in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) by claiming that "[t]he plaintiff in *Havens* . . . provided counseling services but interrupted those activities to combat discrimination" just as "Empower interrupted its core anti-hunger activities to respond to Defendant's maladministration of SNAP." Appellees' Br. 14. Neither *Havens* nor *Alliance* supports the proposition that an organization's "interruption" of its own activities provides standing to sue. Rather, the Supreme Court explained that organizational standing arose in *Havens* from actions that "directly affected and interfered" with the organizational plaintiff's core business activities, *i.e.*, counseling and referral services, through a concrete informational injury. *Alliance*, 602

5

Appellate Case: 25-1987    Page: 10    Date Filed: 12/02/2025 Entry ID: 5583649

U.S. at 395–96; *see Havens*, 455 U.S. at 379. Empower Missouri has introduced no evidence of a concrete injury here.

Contrary to Plaintiffs' suggestion, the Supreme Court's decision in *Alliance* did not turn on the organization being newly formed or raising new funds to combat the challenged governmental policy. Rather, absent a concrete injury to "core business activities," the Court concluded that education and advocacy efforts—whether with new funds or existing funds—were insufficient to establish Article III standing. *See Alliance*, 602 U.S. at 394–97.

Empower Missouri's reliance on the Fifth Circuit's decision in *Nairne v. Landry*, 151 F.4th 666 (5th Cir. 2025), is likewise unavailing. In that case, two organizations challenged a state action that directly impaired their activities, and the organizations diverted resources to mitigate those underlying injuries. *Id.* at 681–82. That is not the case here. At the pleadings stage, Empower Missouri failed to allege that Defendant stymied any of Empower Missouri's activities, nor did it adduce evidence of such an injury at summary judgment. Empower Missouri is free to spend its time and money on advocacy, education, and other initiatives regarding Missouri's SNAP program, but that alone does

6

not give it standing to seek changes to that program in federal court. The district court was wrong to hold otherwise.

### B. The Individual Plaintiffs Fail to Establish an Ongoing or Likely Recurring Violation.

With respect to the standing of the three individual Plaintiffs, Plaintiffs claim that "Defendant's wrongdoing is capable of repetition and likely to evade review"—an argument the district court declined to adopt when Plaintiffs offered it at the summary judgment stage, for good reason. *See* R. Doc. 148, at 29–30; *see generally* App. 247–48; R. Doc. 161, at 28–29 (district court's mootness analysis).

Plaintiffs Holmes and Davis challenge the denial of their SNAP applications. Appellees' Br. 18–19. These denials fall outside the scope of the "capable of repetition yet evading review" exception. While a new application could also be denied, any future denial would not evade review because a denial is not ephemeral. *Hickman v. State of Mo.*, 144 F.3d 1141, 1142–43 (8th Cir. 1998) (requiring that the challenged action is "in its duration too short to be fully litigated."). Thus, an application denial is not "by reason of the inherently short duration of the opportunity for remedy . . . likely to forever evade review." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990) (cleaned up). On the contrary,

Appellate Case: 25-1987    Page: 12    Date Filed: 12/02/2025 Entry ID: 5583649

under federal and state law, if the complained-of conduct were to occur in the future, Plaintiffs would have an opportunity for a hearing and decision within 60 days, followed by immediate State court review if desired. *See* 7 U.S.C. § 2020(e)(10); 7 C.F.R. § 273.15; §§ 208.080, 208.100, 208.110 RSMo; 13 C.S.R. § 40-2.160.

In any event, Plaintiffs Holmes and Davis cannot demonstrate that they "will be subject to the same action again." *Hickman*, 144 F.3d at 1142–43 (cleaned up). Most applications (including recertifications) for SNAP are approved. *See* Aples.App. 679; R. Doc. 237-1, at 1. Only 10 to 24 percent of all applications were denied solely for failure to interview from May 2024 to August 2025, whether that failure was due to the alleged "dysfunction" of Missouri's call center or the interviewee simply not following through. *See id.* Plaintiffs Holmes and Davis cannot demonstrate that they will be a part of this minority of applications.

Furthermore, as Plaintiffs recognize, Defendant has limited the risk of recertification denial by electively extending the certification period of certain populations, inclusive of each individual Plaintiff, to require recertification every two years instead of annually. Appellant's Br. 8–9. Defendant also operates a waiver from the federal government

8

Appellate Case: 25-1987   Page: 13   Date Filed: 12/02/2025 Entry ID: 5583649

under which Missouri waives recertification interview requirements altogether for certain populations, inclusive of Plaintiffs.[3] Appellant's Br. 9.

Finally, all participants have the option to interview face-to-face at Resource Centers, and the undisputed facts reveal a series of reforms for individuals who go for in-person interviews. For example, Plaintiffs admit that Defendant implemented the "state-wide lobby" program allowing individuals waiting for an interview in person at a Resource Center the option to be placed on the phone with a resource worker in a less busy location, enabling these participants to interview without waiting in line either in-person or by phone. R. Doc. 148, at 14 ¶¶ 20–21.

---

[3] Contrary to Plaintiffs' characterizations, Appellees' Br. 33–34, the page of sworn testimony they cite expressly provides: all DSS workers receive training on applying the elderly and disabled (E&D) waiver; DSS provides a decision chart to all employees to ensure they apply the waiver correctly; and DSS conducts quality control reviews of E&D households to ensure interviews are waived correctly and reports this to the federal government. App. 203; R. Doc. 145-2, Tr. 236:3–25. The Court may consider the impact of the E&D waiver on mootness because Plaintiffs do not dispute Missouri has the waiver or Plaintiffs' eligibility for it, and the transcript on which both parties rely is part of the record below. *See* Fed. R. App. P. 10(a)(1). The E&D waiver is not a new issue, *see* R. Doc. 160, Tr. 78:22–79:7 (discussing waiver of Plaintiff Davis' interview), and it supports the issue of mootness, which has always been central to this litigation.

9

The record includes additional undisputed evidence of new and continuing practices that Defendant anticipates will improve access to interviews. *See id.* 11–17 ¶¶ 5–36.[4]

To the extent Plaintiffs contend that a failure to provide an accommodation for a disability is likely to recur, that argument also fails. Plaintiff Holmes never sought an accommodation or even informed DSS of a disability, so she fails to establish an action or injury capable of recurrence. *Infra* § IV. Plaintiff Dallas' communications regarding his disability accompanied appropriately completed paperwork, and he neither alleged nor proved that Defendant would not assist him with future recertification paperwork if he requests assistance *before* completing it, that he has attempted to contact the DSS Office of Civil Rights, or that that office would not fulfill a request for an ongoing accommodation. *See id.* Moreover, Defendant had already begun to

---

[4] Plaintiffs claim that "[n]othing indicates applicants can readily or easily obtain face-to-face interviews." Appellees' Br. 25. However, on appeal of a grant of summary judgment in favor of Plaintiffs, the Court must draw all reasonable inferences in Defendant's favor. Moreover, their suggestion that "the record confirms that [face-to-face interviews] are rarely available" is based on the experience of a single non-party individual who was invited to return for an interview the following day. *See* Aples.App. 263–64; R. Doc. 138-41, at 2–3 ¶¶ 6–7.

Appellate Case: 25-1987    Page: 15    Date Filed: 12/02/2025 Entry ID: 5583649

formalize its process for receiving disability accommodation requests, revise its notices regarding avenues to make those requests, and develop a means to track the requests before the district court ordered relief, *see, e.g.*, R. Doc. 183, at 26, 28–29, all of which this Court can properly consider in determining whether an alleged injury is "likely" to recur.

Because none of the individual Plaintiffs demonstrate an ongoing violation or likelihood that their injuries will recur, their claims are also barred by the Eleventh Amendment. *See Filyaw v. Corsi*, 150 F.4th 936, 944, 945–46 (8th Cir. 2025), *petition for cert. filed* (U.S. Oct. 21, 2025) (24-3041).

## II. Plaintiffs Have Not Established That the SNAP Provisions Confer an Enforceable Right.

Plaintiffs do not dispute that the provisions of the SNAP Act that they seek to enforce must meet the test for a private right of action articulated in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), *Health & Hospital Corp. of Marion County v. Talevski,* 599 U.S. 166 (2023), and *Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357 (2025), and they acknowledge that this test is both "stringent" and "demanding." Appellees' Br. 30–31. Despite the district court's complete failure to analyze the statutory language in light of the required standard,

11

Plaintiffs contend that the court nonetheless reached the right result in allowing enforcement of the statute under Section 1983. *Id.* It did not.

Plaintiffs spend much of their argument addressing the "presumption" that a Section 1983 remedy is available, *see* Appellees' Br. 36–38, but *Talevski* makes clear that a "presumption" is invoked only *after* a court finds that a "statutory provision unambiguously secures rights," *see* 599 U.S. at 183–84, 186. This Court need not determine whether a Section 1983 remedy is available because Plaintiffs cannot get past the initial step of establishing an enforceable right. At this initial stage, the presumption is that "the typical remedy is not a private enforcement suit but rather action by the Federal Government[.]" *Medina,* 606 U.S. at 365–66 (quotation marks omitted).

The *only* Spending Clause statute that the Supreme Court has found to clear Step One and create an enforceable right, other than those it has subsequently repudiated, are the Medicaid provisions analyzed in the *Talevski* opinion. Those provisions are replete with rights-creating language and set forth discrete and concrete duties that a defined party ("nursing facility") owes to a particular individual ("each resident"):

12

> **42 U.S.C. § 1396r. Requirements for nursing facilities**
>
> > . . . .
>
> **(c) Requirements relating to residents' rights**
>
> **(1) General rights**
>
> > **(A) Specified rights**
> >
> > A nursing facility must protect and promote the rights of each resident, including each of the following rights:
> >
> > > . . . .
> > >
> > > **(ii) Free from restraints**
> > >
> > > The right to be free from physical or mental abuse, corporal punishment, involuntary seclusion, and any physical or chemical restraints imposed for purposes of discipline or convenience and not required to treat the resident's medical symptoms.
> > >
> > > > . . . .
>
> **(2) Transfer and discharge rights**
>
> > **(A) In general**
> >
> > A nursing facility must permit each resident to remain in the facility and must not transfer or discharge the resident from the facility unless—**(i)** the transfer or discharge is necessary to meet the resident's welfare and the resident's welfare cannot be met in the facility; **(ii)** the transfer or discharge is appropriate because the resident's health has improved sufficiently so the resident no longer needs the services provided by the facility.
> >
> > > . . . .

*See Talevski*, 599 U.S. at 181–82.

The statutory language in *Talevski* stands in stark contrast to the two generalized, high-level statutory provisions on which Plaintiffs rely

13

Appellate Case: 25-1987     Page: 18     Date Filed: 12/02/2025 Entry ID: 5583649

here. The first is buried in a section setting forth income and asset methodologies for determining SNAP eligibility. It provides:

> **7 U.S.C. § 2014. Eligible households**
>
> **(a) Income and other financial resources as substantial limiting factors in obtaining more nutritious diet; recipients under Social Security Act**
>
> Participation in [SNAP] shall be limited to those households whose incomes and other financial resources . . . are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet. . . . Assistance under this program shall be furnished to all eligible households who make application for such participation. . . .
>
> **(b) Eligibility standards** . . . .
>
> **(c) Gross income standard** . . . .
>
> **(d) Exclusions from income** . . . .
>
> . . . .

Unlike the provision at issue in *Talevski,* the single sentence in Section 2014(a) on which Plaintiffs rely is not directed to any particular entity, uses the passive tense, does not contain rights-creating language, does not set forth specific obligations, and does not refer to individuals (or individual households). It is the introduction to income eligibility determination basics (i.e., how to treat student loans or income tax refunds, etc., all of which are discussed in subsequent provisions). Congress does not bury the creation of an individual, enforceable right in

14

the introductory paragraph of a statutory section discussing the minutiae of income and asset calculations.

Plaintiffs' second statutory provision fares no better. Section 2020(e)(2) is one of the twenty-six requirements for a state plan of operation:

> **7 U.S.C. § 2020.  Administration**
>
> . . . .
>
> **(e) Requisites of State plan of operation**
>
> . . . .
>
> **(2)(A)** . . . the State agency shall establish procedures governing the operation of [SNAP] offices that the State agency determines best serve households in the State . . . .
>
> **(B)** In carrying out subparagraph (A), a State agency—**(i)** shall provide timely, accurate, and fair service to applicants for, and participants in, [SNAP]; **(ii)**(I) shall develop an application containing the information necessary to comply with this chapter; and (II) if the State agency maintains a website for the State agency, shall make the application available on the website in each language in which the State agency makes a printed application available; **(iii)** shall permit an applicant household to apply to participate in the program on the same day that the household first contacts a [SNAP] office in person during office hours[.]
>
> . . . .

Like the district court, Plaintiffs focus on the "timely, accurate, and fair" language in Section 2020(e)(2)(B), which does not have any rights-creating language, does not refer to individual households and, most

15

Appellate Case: 25-1987     Page: 20     Date Filed: 12/02/2025 Entry ID: 5583649

critically, does not establish judicially-ascertainable obligations. On the contrary, the reference to "timely, accurate, and fair" service is the type of undefined and amorphous language that the Court has found *not* enforceable in other cases. *See, e.g., Medina,* 606 U.S. at 364 ("The provision does not define the term 'qualified,' perhaps because States have traditionally exercised primary responsibility over . . . the practice of medicine."); *Armstrong v. Exceptional Child Ctr., Inc.,* 575 U.S. 320, 328 (2015) (mandate that state Medicaid plans provide for payments "consistent with efficiency, economy, and quality of care" is "judicially unadministrable"); *Suter v. Artist M.,* 503 U.S. 347, 360 (1992) (state plan requirement to make "reasonable efforts" to keep a child with their family "is a directive whose meaning will obviously vary with the circumstance of each individual case. How the State was to comply with this directive was . . . left up to the State."); *see also Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 24–25 (1981) ("It is difficult to know what is meant [b]y providing 'appropriate treatment' in the 'least restrictive' setting.").[5]

---

[5] While Plaintiffs also point to Section 2020(e)(2)'s requirement that a state agency "shall permit an applicant household to apply . . . on the same day that the household first contacts a [SNAP] office in person,"

Appellate Case: 25-1987     Page: 21     Date Filed: 12/02/2025 Entry ID: 5583649

Moreover, like the provision that the Court found unenforceable in *Medina,* Section 2020(e)(2) is one item in a laundry list of provisions that must be included in a state plan. *See Medina*, 606 U.S. at 380 ("[T]he statute before us stands in stark contrast to the ones we faced in *Talevski,* where Congress set its rights-creating provisions apart from others and, in doing so, helped alert grantees that accepting federal funds comes with a duty to answer private suits.").

Also, like *Medina*, the provisions in Section 2020(e)(2)(B) must be construed in light of the immediately preceding provision giving discretion to the State to "establish procedures . . . that the State agency determines best serve households in the State." 7 U.S.C. § 2020(e)(2)(A). As the Court held in *Medina,* this type of arrangement "makes perfect sense if [it] speaks only to a State's duties to the federal government," less so "if [it] also confers an individually enforceable right." 606 U.S. at 379. In response to this point, Plaintiffs state only that they "do not seek to enforce" Section 2020(e)(2)(A). Appellees' Br. 36. But Plaintiffs' focus

---

Plaintiffs adduced no evidence, and the district court made no finding, that households were not permitted to *apply* on the day of contact. The statute does not require that an interview take place on the same day as application.

Appellate Case: 25-1987    Page: 22    Date Filed: 12/02/2025 Entry ID: 5583649

on one paragraph to the exclusion of its immediate neighbor only highlights that a purported "right" is neither "clear" nor "unambiguous."

Finally, even if Plaintiffs *could* establish an enforceable right, the SNAP Act makes clear that Congress did not envision private suits to enforce its provisions. Instead, the Act directs the USDA Secretary to work with States to develop corrective action plans if there is a "failure . . . without good cause to comply" with any statutory or regulatory provision or the State plan of operation. 7 U.S.C. § 2020(g). It authorizes injunctive relief only if the State Agency "does not correct such failure," and only when sought by the Attorney General. *Id.*

## III. Plaintiffs' Attempt to Blame Defendant for the District Court's Flawed Due Process Analysis Should be Rejected.

The parties agree that the "correct" test for assessing whether a procedural due process violation exists is the three-prong test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 333–35 (1976). Appellees' Br. 43. The court recited this test, but did not apply it. Instead, the court focused singularly on the Plaintiffs' interest in securing SNAP benefits and the risk of application denial for failure to interview through the call center. *See id.* at 43–44. Plaintiffs do not dispute that the court omitted

18

consideration of postdeprivation remedies (including the availability of in-person interviews and the State fair hearing process), or the burdens on the State in implementing the requested relief. Instead, they suggest that these flaws in the district court's analysis arise from inadequacies in Defendant's presentation and cannot be considered on appeal. *Id.* at 45–48.

The record shows otherwise. Consistent with its argument on appeal, Defendant argued in its summary judgment motion that there is no violation of procedural due process "if a meaningful postdeprivation remedy for the loss is available." R. Doc. 145, at 46 (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). While Defendant's memorandum specifically identified the availability of in-person interviews as a postdeprivation remedy, that was in response to Plaintiff's allegation that the implicated property interest was to an accessible call center. *Id.*

For individuals who do not seek an in-person interview and are unable to interview through the call center, the availability of State fair hearings to address erroneous rejections of applications—and Plaintiffs' failure to avail themselves of that remedy—was raised and addressed by both parties and the court throughout the proceedings below, including

19

in opposition to Plaintiffs' request for a temporary restraining order,[6] on Defendant's motion to dismiss,[7] at the hearing on summary judgment,[8] and at the hearing on what remedies, if any, the court should order.[9] *Cf. Calzone v. Summers*, 942 F.3d 415, 420–21 (8th Cir. 2019) (finding no forfeiture when a party "raised the . . . point at numerous steps in the litigation," even though he did not emphasize it).

It is also incorrect that Defendant did not raise the issue of the substantial burden that requiring changes to call center operations would create. Defendant spent much of its statement of undisputed facts outlining the Department's efforts to improve Resource Center operations[10] and argued that these resource-intensive efforts demonstrated "the fiscal and administrative burdens that additional or any substitute requirements would have." R. Doc. 145, at 49. At the summary judgment hearing, there was extensive discussion between the

---

[6] R. Doc. 19, at 22–24.

[7] R. Doc. 34, at 10–12; R. Doc. 38, at 7 ("A Plaintiff cannot complain of a violation of procedural due process when he has no[t] availed himself of existing procedures." (quoting *Raymond v. Bd. of Regents of the Univ. of Minn.*, 847 F.3d 585, 590 (8th Cir. 2017)).

[8] R. Doc. 160, Tr. 54:6–14, 67:23–68:9.

[9] R. Doc. 226, Tr. 57:21–59:5, 84:4–85:4.

[10] R. Doc. 145, at 7–13 ¶¶ 5–36.

20

court and both parties regarding the strain on the agency's personnel[11] and fiscal resources[12] in making additional changes, to the point the court asked Defendant's counsel whether it had authority to "order the legislature to appropriate a particular amount of money to the Department of Social Services to address this issue." R. Doc. 160, Tr. 82:1–4.

Several times throughout the summary judgment hearing, Plaintiffs' counsel declined to engage with the court as to how the State could make additional modifications within available resources, admitting that "[i]t is a difficult puzzle," and suggesting the court could implement "a two-step process" whereby the court would first reach a finding of liability and then "turn to the details of relief." *Id.* Tr. 24:8–18, 64:5–11; *also, id.* Tr. 84:24–85:5. The court did in fact adopt this approach. *See* App. 257–59; R. Doc. 161, at 38–40. But when Defendant

---

[11] *See, e.g.*, R. Doc. 160, Tr. 21:1–21, 56:16–57:1, 62:4–64:15, 76:11–24. As the DSS attorney explained: "Every one of these options that might be out there requires people to be doing [them]. Whatever it is the Court might decide to order based on the plaintiffs' representations for the agency to do ultimately has to be executed by people. Whatever you call them, whatever you try to hide—put them behind a curtain of calling them appointment slots or resources or whatever, it's still people, and there just aren't enough of them." *Id.* Tr. 79:14–21.
[12] *Id.* Tr. 21:22–22:11, 33:15–34:21, 62:14–63:18, 80:16–83:5.

Appellate Case: 25-1987     Page: 26     Date Filed: 12/02/2025 Entry ID: 5583649

at the relief stage again raised the issue of the burden of implementing various aspects of the relief, Plaintiffs for the first time claimed that "defendant has waived any opportunity to raise that burden . . . because they did not [do so] at summary judgment." R. Doc. 226, Tr. 81:23–82:5; *see also id.* Tr. 84:8–14.

To the extent Defendant did not, at the summary judgment stage, specifically identify the availability of postdeprivation remedies as applicable to the *Mathews* "prong 2" analysis or the burden on the State as relevant to "prong 3," that level of specificity is not necessary for the Court to consider those arguments on appeal. As this Court has noted, "[t]he real question should be whether the new argument is such as to raise a *new issue*," and it "would be in disharmony with one of the primary purposes of appellate review were [the Court] to refuse to consider each nuance or shift in approach urged by a party simply because it was not similarly urged below." *Universal Title Ins. Co. v. United States,* 942 F.2d 1311, 1314 (8th Cir. 1991) (emphasis added and citation omitted); *see also Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 890–91 (8th Cir. 2009) (noting that an argument that constitutes a "shift in approach" does not "'raise a new issue' on appeal"); *Designworks Homes,*

22

Appellate Case: 25-1987   Page: 27   Date Filed: 12/02/2025 Entry ID: 5583649

*Inc. v. Columbia House of Brokers Realty, Inc.,* 9 F.4th 803, 806 (8th Cir. 2021) (party's argument not forfeited even though it was "somewhat inchoate" in the district court and only "began to crystalize" on appeal).

Moreover, this Court has discretion to consider an issue "when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case." *Universal Title,* 942 F.2d at 1314–15 (citation omitted). Defendant does not ask the Court consider any additional evidence but only the "purely legal" issues of the postdeprivation remedies laid out in federal and State law, 7 U.S.C. § 2020(e)(10); 7 C.F.R. § 273.15; §§ 208.080, 208.100, 208.110 RSMo; 13 C.S.R. § 40-2.160, as well as assessing the burden of the additional procedures within the legal parameters in which State must operate its program, *see, e.g.,* 7 U.S.C. §§ 2020(e)(3), (e)(9), (e)(18), (r)(2), (n); 7 C.F.R. § 273.2(b)(4)(i), (f).

The one concern Defendant did not raise below is the exponentially higher cost to the State of implementing the changes ordered by the court and the disastrous consequences of a high payment error rate. This is not due to any failure to present the argument, but to an intervening change in the law. Throughout the proceedings below, the district court

23

made clear its view that any additional burden to the agency in improving the call center was minimal, because 100 percent of SNAP benefits and 50 percent of administrative costs were funded by the federal government. R. Doc. 226, Tr. 4:25–5:14 (criticizing the State for arguing justiciability "when the federal government pays 100 percent of the benefit and 50 percent of the administrative costs"); *see also* R. Doc. 160, Tr. 27:2–18, 41:9–24. Since then, the law has changed to require States to pay 75 percent of administrative costs beginning in 2026, as well as a portion of the benefit costs for States with payment error rates above 6 percent beginning in 2028. *See* Pub. L. 119-21, §§ 10105–10106, 139 Stat. 72, 83–85 (2025); Appellant's Br. 4 & n.2, 63. This represents a seismic shift in the burden analysis on imposing additional procedures and is alone sufficient to justify re-evaluation of the district court's incomplete due process analysis.

## IV. Plaintiffs Holmes' and Dallas' ADA Claims Based on a Failure to Accommodate Disabilities Are Meritless.

Plaintiffs Holmes and Dallas characterize their case as "alleging discrimination based on failure or refusal to accord reasonable accommodations" under Title II of the Americans with Disabilities Act

Appellate Case: 25-1987    Page: 29    Date Filed: 12/02/2025 Entry ID: 5583649

(ADA).[13]  *See* Appellees' Br. 48–49.  Plaintiffs agree that a successful Title II claim must at the very least establish that, *by reason of disability*, Plaintiffs were: 1) excluded from participation in SNAP; 2) denied the benefits provided by SNAP; or 3) otherwise subjected to discrimination by Defendant.  *See* Appellees' Br. 49; *see also, Rinehart v. Weitzell*, 964 F.3d 684, 688 (8th Cir. 2020).  To succeed on a Title II claim for the failure to provide a reasonable accommodation, Plaintiffs bear the initial burden of demonstrating that they requested accommodations.  *See, e.g.*, *Lue v. Moore*, 43 F.3d 1203, 1206 (8th Cir. 1994); *Wong v. Minnesota Dep't of Hum. Servs.*, 216 F. Supp. 3d 991, 999 (D. Minn. 2016).

Plaintiff Holmes never requested, attempted to request, or even *intended* to request a reasonable accommodation, whether in person or by phone.  *See* App. 67–72; R. Doc. 88, at 28–33 ¶¶ 162–208; Appellant's Br. 53.  Accordingly, her claim fails.

With respect to Plaintiff Dallas, the undisputed facts show that, even though Mr. Dallas informed DSS of a disability when paperwork

---

[13] Accordingly, Plaintiffs abandon any arguments that Defendant violated the ADA on a theory of "disparate impact" or "differential treatment" (terms Plaintiffs appear to use interchangeably).  *See* Appellees' Br. 48.

25

was due, he simultaneously submitted his completed paperwork. *See* Aples.App. 560–61; R. Doc. 152, at 19–20 ¶¶ 70–75. Plaintiffs offer no theory of how the ADA required Defendant to assist Mr. Dallas with paperwork that was already done. Nor do they explain how any decision not to offer assistance in that moment deprived Plaintiff Dallas of participation in SNAP, given that he never experienced a lapse in benefits. *See* R. Doc. 155, at 6 n.5 (stating that Plaintiff Dallas did not experience a wrongful denial and does not assert a SNAP Act claim).

Under basic standards of justiciability, Plaintiffs cannot bring ADA claims untethered to their individual experiences. *See infra* § V.B; Appellant's Br. 33–34. And their generalized complaint that DSS's accommodation policy "made no reference to disability or rights to a reasonable accommodation under the ADA," Appellees' Br. 7, is simply incorrect. Alongside language regarding federal civil rights law, the DSS policy in effect at the time stated: "DSS applicants for, or recipients of, services from DSS are treated equitably regardless of . . . disability," and:

> Anyone who requires . . . a modification of policies or procedures to participate in a program, service, or activity of [DSS] should notify DSS as soon as possible . . . by contacting either their DSS local office or [the] DSS ADA Coordinator and Manager of the DSS Office for Civil Rights at the address/phone number listed below.

26

R. Doc. 138-101 (*cited at* Aples.App. 625–26; R. Doc. 152, at 84–85 ¶¶ 393–94).

## V. The District Court's Remedial Order Is Improper and Excessive.

### A. Plaintiffs Fail to Demonstrate That They Lacked an Adequate Remedy at Law.

This Court has established that a "lack of an adequate remedy at law" is an "indispensable prerequisite[]" to equitable relief. *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982) (quoting *Bonner v. Cir. Ct. of City of St. Louis, Mo.*, 526 F.2d 1331, 1335 (8th Cir. 1975)).

Contrary to Plaintiffs' contention, the availability of administrative and State court remedies is singularly relevant to the Court's authority to issue an injunction. *See* Appellees' Br. 59–60. Plaintiffs do not suggest those remedies are unavailable or that they offer any less expedient, efficient, or effective redress for all (or any) of Plaintiffs' injuries than injunctive relief. Rather, Plaintiffs argue that considering the availability of adequate remedies at law would impermissibly require Plaintiffs to exhaust administrative remedies for their Section 1983 claims. *Id.* The longstanding precedent of this Court disposes of that argument directly. *See Bonner*, 526 F.2d at 1335–36.

27

Appellate Case: 25-1987     Page: 32     Date Filed: 12/02/2025 Entry ID: 5583649

Plaintiffs' contention that this Court should not consider this argument because it was not raised below should be rejected. Defendant raised the issue of an adequate remedy at law on briefing of the Plaintiffs' motion for temporary restraining order, and the availability of the State's fair hearings procedures was raised and addressed by both parties and the court throughout the proceedings below.[14] Even if the argument were forfeited at summary judgment, it raises a purely legal question and is now briefed by both Parties on appeal, and therefore is appropriate for consideration by this Court. *See supra* p. 23.

### B.    The Order on Relief is Impermissibly Universal.

In the absence of a class action, the individual Plaintiffs argue that if they demonstrate harm arising from a systemwide problem, their relief must also be systemwide. *See* Appellees' Br. 63–64. This logic fails. It is settled law that the scope of injunctive relief must be tailored to the violation causing the injury and to the plaintiffs. *Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025) ("The equitable tradition has long embraced the rule that courts generally may administer complete relief *between the parties.*") (quotation marks omitted).

---

[14] *Supra* pp. 19–20 & nn.6–9.

Appellate Case: 25-1987     Page: 33     Date Filed: 12/02/2025 Entry ID: 5583649

Plaintiffs argue that the present litigation does not involve the sort of "universal relief" limited by *CASA* because the district court's injunction would only "incidentally" impact other SNAP participants.[15] Appellees' Br. 64. The Supreme Court defines a universal injunction as one that "prohibit[s] enforcement of a law or policy against *anyone*," as opposed to just plaintiffs in the suit. *CASA*, 606 U.S. at 837. Here, the injunction (and the relief sought by Plaintiffs) expressly applies to State policies applicable to all SNAP applicants and recipients, not just the Plaintiffs themselves. This type of relief is limited to class actions. *Id.* at 849–50.

As in *CASA,* relief extending to non-parties here does not render the Plaintiffs' relief any more complete than relief limited to the Plaintiffs themselves. *Id.* at 852–53. At base, the individual Plaintiffs would like to receive the SNAP benefits for which they are eligible; they would like accommodations to assist with the recertification process to the extent they need them in the future; and they would prefer not to wait in a queue

---

[15] Plaintiffs also argue that the injunctive relief in this matter is not "universal" because only Plaintiffs may enforce it. Appellees' Br. 65. In any lawsuit, whether or not an injunction is universal, only the plaintiffs may enforce the order via contempt proceedings. *See CASA*, 606 U.S. at 929 n.2 (Sotomayor, J. dissenting).

Appellate Case: 25-1987    Page: 34    Date Filed: 12/02/2025 Entry ID: 5583649

to complete future recertification interviews by phone (assuming they are even subject to the interview requirement). The sweeping relief ordered is unnecessary to accomplish these aims with respect to the Plaintiffs, and relief applicable to all SNAP participants is unnecessary to afford these Plaintiffs complete relief.[16]

Plaintiffs' argument that federal courts may order specific performance in an appropriate case is neither here nor there. *See* Appellees' Br. 66. That a court's remedial power is rooted in equity does not allow the court to operate that power limitlessly or in all scenarios. As discussed immediately above, Defendant disputes that federal courts are empowered to order equitable relief that relies on the independent actions of third-parties or extends beyond what is required to provide the specific relief to the specific parties to the lawsuit.

Finally, mischaracterizing the redressability arguments in this case, Plaintiffs argue that the "ordered" relief is not incongruent with their "asserted legal violations." Appellees' Br. 67. Plaintiffs confuse the issue of the scope of relief with the issue of redressability. To

---

[16] Empower Missouri lacks standing because it has not alleged an injury-in-fact. *Supra* § I.A. Therefore, no relief may be provided to Empower Missouri.

Appellate Case: 25-1987   Page: 35   Date Filed: 12/02/2025 Entry ID: 5583649

demonstrate redressability, the Plaintiffs must show that the relief *sought* via their Amended Complaint was commensurate with the legal violations *alleged* on the face of their Amended Complaint. *See* Appellant's Br. 33–34. To maintain standing throughout the case, these allegations must evolve to showings appropriate for the stage of the litigation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To demonstrate that the lower court did not exceed its authority with respect to the scope of relief at the summary judgment stage, Plaintiffs must make the additional showing that the relief *ordered* is commensurate with the legal violations *proved* by the undisputed facts on the record. Appellant's Br. 56–58.

In sum, the scope of injunctive relief must be tailored to the legal violations shown and the parties before the court. *See CASA*, 606 U.S.at 851. Because the district court did not so limit its remedial order, it should be reversed, even if summary judgment is upheld.

31

Appellate Case: 25-1987　　Page: 36　　Date Filed: 12/02/2025　Entry ID: 5583649

Respectfully submitted,

 s/ Caroline M. Brown
Caroline M. Brown
Rebecca L. Wolfe
Brown & Peisch PLLC
1225 19th Street NW, Ste. 700
Washington, D.C. 20036
(202) 499-4258
cbrown@brownandpeisch.com
rwolfe@brownandpeisch.com

Dated: December 1, 2025

*Counsel for Defendant-Appellant*

32

Appellate Case: 25-1987    Page: 37    Date Filed: 12/02/2025 Entry ID: 5583649

# CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because it contains 6,474 words, excluding the parts of the brief exempted from the word count by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in 14-point Century Schoolbook font using Microsoft Word.

This PDF file and the addendum to the foregoing were scanned for viruses and no viruses were found.

Dated: December 1, 2025

/s/ Caroline M. Brown
Caroline M. Brown

33

Appellate Case: 25-1987    Page: 38    Date Filed: 12/02/2025 Entry ID: 5583649

# CERTIFICATE OF SERVICE

The undersigned attorney for Defendant-Appellant certifies that on December 1, 2025, an electronic copy of Appellant's Reply Brief was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: December 1, 2025

*/s/ Caroline M. Brown*
Caroline M. Brown