# United States Court of Appeals
## For the Eighth Circuit

---

No. 25-1987

---

Mary Holmes; Empower Missouri; Denise Davis; Andrew Dallas

*Plaintiffs - Appellees*

v.

Jessica Bax, in her official capacity as Director of the Missouri Department of Social Services

*Defendant - Appellant*

------------------------------

National Health Law Program; Food Research & Action Center

*Amici on Behalf of Appellee(s)*

---

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

---

Submitted: April 15, 2026
Filed: August 19, 2026

---

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

---

SHEPHERD, Circuit Judge.

Several Missourians—Mary Holmes, Denise Davis, and Andrew Dallas—along with Empower Missouri, a nonprofit organization that purports to guarantee access to adequate nutrition (collectively, Plaintiffs) raise various claims against Jessica Bax[1] in her official capacity as Director of the Missouri Department of Social Services (DSS) for her alleged inadequate administration of the Supplemental Nutritional Assistance Program (SNAP) in Missouri. Specifically, Plaintiffs allege that Bax's policies, practices, and procedures violate various provisions of the SNAP Act, the Fourteenth Amendment's Due Process Clause, and the Americans with Disabilities Act (ADA). The parties filed cross motions for summary judgment. The district court granted Plaintiffs' motion for summary judgment and denied Bax's motion. The district court ordered Bax to submit a proposed plan to address the shortcomings in DSS's administration of SNAP within 90 days, and it later entered a remedial order and final judgment. Bax appeals both the district court's summary judgment and remedial orders. Having jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part the district court's grant of summary judgment, vacate the permanent injunction, and remand.

I.

Congress established SNAP "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. This federally-funded and state-administered program provides eligible households with a monthly benefit for food purchases. See 7 U.S.C. § 2014(a). In Missouri, DSS is solely responsible for administering SNAP.

[1]Plaintiffs initially filed this lawsuit against Robert Knodell, the Acting Director of the Missouri Department of Social Services. He has since been replaced by Jessica Bax.



Appellate Case: 25-1987 Page: 2 Date Filed: 08/19/2026 Entry ID: 5673605

To receive SNAP benefits, an individual must submit an initial application and complete an interview. Once DSS registers an application, it instructs the applicant to contact its call center within five days to interview.[2] If an applicant does not interview within five days after applying, DSS notifies the applicant that an interview must be completed within 30 days or his application will be denied. DSS automatically denies an application if an individual does not complete an interview within 30 days of submission, regardless of an applicant's efforts to schedule an interview.

To maintain SNAP benefits, individuals must recertify their SNAP eligibility, typically on an annual basis. Recertification requires individuals to complete an application, interview, and undergo further verification if they report certain changes. Bax contends that DSS has a waiver from the federal government that allows it to "automatically forgo the interview requirement at recertification for households with no earned income in which all adult members are elderly or disabled." However, this waiver is not part of the record in this case.

In January 2022, Mary Holmes called DSS three times to request a SNAP application, but no one answered the phone. She then paid a family member to drive her to a resource center,[3] submitted her application in-person, and asked to be interviewed that day. DSS refused her request and told her that someone would call her in the next few days. She answered a call from DSS the next day but was never connected to a representative. Over the following month, she called DSS at least eleven times attempting to interview. Despite enduring numerous holds of over two hours, she was never connected to a staff member. And in February 2022, DSS

---

[2]Applicants are also permitted to interview in-person. Once requested, the interview must be scheduled within five days.

[3]DSS operates resource centers throughout Missouri where applicants are supposed to be able to "submit applications and supporting documentation, ask questions about their applications and benefits, and be interviewed as part of the application process."



Appellate Case: 25-1987 Page: 3 Date Filed: 08/19/2026 Entry ID: 5673605

denied her application for failure to interview. After Plaintiffs filed this suit, Holmes received an interview, and she was approved for SNAP benefits on March 20, 2023.

Andrew Dallas has epilepsy, which impacts his daily functioning. Relevant to this lawsuit, he has received SNAP benefits since at least 2021. In December 2021, DSS received a document from Dallas entitled "Food Stamp Change Report." In this report, Dallas explained that he has epilepsy and that he "cannot understand like normal people do. Please help! . . . I am disabled." DSS understood this note to be a request for a reasonable accommodation, but Dallas did not need to complete any forms at that time to continue receiving SNAP benefits. In January 2023, DSS mailed Dallas SNAP recertification paperwork and did not provide him any assistance. In early February 2023, Dallas called DSS roughly ten times to ask for help completing his recertification paperwork. He never connected with a representative due to long wait times and the main menu language prompts. Like Holmes, after joining this lawsuit, Dallas received an interview and was approved for SNAP benefits. His benefits never lapsed.

In November 2022, Denise Davis applied for SNAP benefits online, but DSS did not register her application.[4] In December 2022, she submitted a second SNAP application and called DSS several times a week attempting to interview. Like Holmes and Dallas, she never spoke to a DSS employee because DSS repeatedly deflected and disconnected her calls. More than once, she waited on hold for over two hours before DSS's automated system disconnected her call due to high call volume. Despite her repeated attempts to interview, DSS denied her application for failure to interview. She then submitted a third application. Davis called DSS at least thirteen times and visited a resource center to try to interview, but again, she never reached anyone at DSS. Like Holmes and Dallas, after joining this lawsuit, she received an interview and was approved for SNAP benefits. Although Holmes, Davis, and Dallas all now receive SNAP benefits, they anticipate needing this

[4]DSS asserts that her application contained an incorrect social security number.

assistance for years to come which will require dealing with DSS and its benefits administration system.

Empower Missouri is the final plaintiff in this lawsuit. It is a nonprofit organization that describes itself as seeking to ensure that all Missourians "have access to adequate nutrition, quality healthcare, decent housing, and appropriate education." It contends that it devotes significant time and energy to "provide[] resources and information to anti-hunger advocates and communicate[] with DSS regarding agency failures in Missouri's administration of SNAP." From 2021 to 2023, it spent $96,000 on addressing issues that arose from DSS's administration of SNAP.

Plaintiffs bring four claims against Bax. They assert that her policies, practices, and procedures wrongfully deny applicants access to SNAP in violation of 7 U.S.C. §§ 2014(a) and 2020(e)(2)(B) and their accompanying regulations; fail to ensure Missourians are able to apply for SNAP benefits on the first day that they contact DSS in violation of 7 U.S.C. § 2020(e)(2)(B), and deprive Plaintiffs of fair access to SNAP benefits in violation of the Fourteenth Amendment's Due Process Clause. Finally, they contend that Bax's actions, inactions, policies, practices, and procedures fail to provide reasonable accommodations in violation of the ADA.

Plaintiffs sought declaratory and injunctive relief. Regarding declaratory relief, they request that the court declare as unlawful Bax's policies and practices of wrongfully denying initial and recertification SNAP applications; failing or refusing to allow households to apply for SNAP on the first day they contact DSS; subjecting SNAP applicants to arbitrary and inconsistent application processes that result in wrongful denials of benefits; excluding Plaintiffs from participation in the benefits, programs, services, and activities provided by DSS because of their disabilities; utilizing and adopting administrative practices that discriminate against Plaintiffs based on disability; and failing to adopt ADA grievance procedures.



Appellate Case: 25-1987 Page: 5 Date Filed: 08/19/2026 Entry ID: 5673605

They request multiple forms of injunctive relief. First, they seek an order that Bax provide Holmes with an interview within three days. Second, they ask that the court preliminarily enjoin DSS to maintain in-person DSS resource center operations in compliance with the SNAP Act and the ADA. Regarding permanent injunctive relief, they seek that Bax be enjoined from making any changes to DSS facility operations—including hours and staffing—until she adopts statewide policies to ensure that such changes do not violate the rights of SNAP applicants. They also seek that Bax cease denying SNAP applications for eligible individuals who have not been provided a meaningful opportunity to complete the application process. They also request that she adopt, implement, and monitor statewide policies and procedures that (1) guarantee all applicants have a meaningful opportunity to complete all the SNAP application requirements on the first day they contact DSS, (2) ensure that applicants and recipients with disabilities are provided with reasonable accommodations, (3) notify SNAP applicants and recipients about the ADA's and Section 504 of the Rehabilitation Act's nondiscrimination requirements, and (4) provide a grievance procedure for prompt and equitable resolution of ADA and Section 504 complaints. Finally, they request that Bax provide them with reasonable accommodations as appropriate.

The parties filed cross motions for summary judgment. Plaintiffs argued that Bax violated the SNAP Act by wrongfully denying their applications for failure to interview and preventing them from applying on the first day they contacted DSS. Additionally, Holmes and Davis contended that Bax violated their due process rights and Dallas and Holmes contended that Bax violated their rights under the ADA. Bax countered that no Plaintiff satisfied Article III standing as Empower Missouri did not allege an injury and the individual plaintiffs' claims are not redressable. In any case, she argued that the individual plaintiffs' claims were moot. She further asserted that the SNAP Act does not provide a private right of action, and even if it did, DSS's policies and operations do not violate it. Finally, she argued that she did not violate Plaintiffs' due process rights or their rights under the ADA.

The district court granted Plaintiffs' motion and denied Bax's motion. The district court first concluded that Plaintiffs had Article III standing because they each "established an injury 'that is likely to be redressed by a favorable judicial decision.'" It reasoned that the individual plaintiffs are at substantial risk of losing their SNAP benefits and that Empower Missouri has been forced to divert resources because of DSS's unlawful policies and procedures. Because DSS's practices and policies have not changed, it concluded that Plaintiffs' claims are not moot.

Turning to the merits, the district court held that Bax's wrongful denials of Plaintiffs' SNAP applications violated the Fourteenth Amendment's Due Process Clause. It reasoned that Plaintiffs have a protected property interest in SNAP benefits and DSS's wrongful denial of their applications for failure to interview deprived them of this benefit for which they were otherwise eligible. Further, it concluded that Bax violated the ADA by denying Dallas and Holmes meaningful access to SNAP because of their respective disabilities.

The district court determined that permanent injunctive relief—requiring Bax to enact policies and procedures in compliance with the SNAP Act, the Due Process Clause, and the ADA—was appropriate. The district court ordered Bax to file with the court monthly statewide statistical reports regarding its application processing. It required that these reports also be filed with Missouri's legislative and executive branch members. Bax immediately appealed this order; however, we dismissed the appeal for lack of jurisdiction because there was not yet a final judgment.

The district court then entered its remedial order and final judgment. It ordered that Bax "take whatever steps were necessary to reduce the average wait time . . . so that 90% of callers have no more than a 20-minute wait time" and "bring the number of applications which are rejected for failure to interview to no more than 20% of all applications." The order also required Bax to implement 26 additional operational requirements. Bax appeals the district court's summary judgment and remedial orders.



Appellate Case: 25-1987 Page: 7 Date Filed: 08/19/2026 Entry ID: 5673605

## II.

On appeal, Bax argues that we lack Article III jurisdiction and that the district court erred in concluding otherwise. She first contends that no Plaintiff has standing as Empower Missouri did not establish an injury and the individual plaintiffs' requested relief fails to satisfy the redressability element because it is overbroad. She additionally argues that the individual plaintiffs' claims are moot. We review standing and mootness determinations and grants of summary judgment de novo. See City of Kennett v. EPA, 887 F.3d 424, 430 (8th Cir. 2018); Hillesheim v. Holiday Stationstores, Inc., 953 F.3d 1059, 1061 (8th Cir. 2020).

"[S]tanding is a threshold inquiry into federal court jurisdiction, [so] we begin . . . our analysis there." Ojogwu v. Rodenburg L. Firm, 26 F.4th 457, 461 (8th Cir. 2022) (citation omitted). Pursuant to Article III's case-or-controversy requirement, a plaintiff must have standing to bring a lawsuit. See Christian Lab. Ass'n v. City of Duluth, 142 F.4th 1107, 1110 (8th Cir. 2025). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought[,]" as "standing is not dispensed in gross." Town of Chester v. Laroe Ests., Inc., 581 U.S. 433, 439 (2017) (citation omitted). We will examine standing as to each plaintiff and claim in turn.

### A.

We begin with Empower Missouri. The district court, relying on the Supreme Court's decision in Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982), determined that Empower Missouri adequately alleged an injury and therefore has standing because it only needed to "show direct injury by a diversion of organizational resources to identify or counteract the allegedly unlawful action."



Appellate Case: 25-1987 Page: 8 Date Filed: 08/19/2026 Entry ID: 5673605

However, the Supreme Court recently rejected such an expansive reading of Havens in FDA v. Alliance for Hippocratic Medicine, 602 U.S. 367 (2024), where it concluded that medical associations did not allege an injury from costs they incurred opposing the FDA's actions. Id. at 394. The Supreme Court reasoned that an organization "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." Id. Indeed, if an organization could establish standing by "divert[ing] its resources in response to a defendant's actions," that "would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." Id. at 395. The Supreme Court distinguished Havens, noting that it "was an unusual case, and [that it] has been careful not to extend the Havens holding beyond its context." Id. at 396. In Havens, a housing counseling organization, HOME, sued Havens Realty for violating the Fair Housing Act after it provided false information regarding apartment availability to HOME's black employees. Id. at 395. The Supreme Court held that HOME had standing because it "not only was an issue-advocacy organization, but also operated a housing counseling service," and thus when Havens Realty gave HOME's black employees false information, it "perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers." Id. (citation omitted). Thus, because "Havens's actions directly affected and interfered with HOME's core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer," the Supreme Court concluded that HOME adequately alleged an injury for standing purposes. Id.

Empower Missouri's injury is not akin to the one asserted in Havens. Although Plaintiffs contend that Bax's conduct frustrates Empower Missouri's "core business activities," its alleged injury consists solely of the time and money it spent responding to Bax's administration of SNAP. This is not enough to establish standing. See All. for Hippocratic Med., 602 U.S. at 395. Empower Missouri provides no services or interview assistance to SNAP benefit applicants, nor did it assist the individual plaintiffs in this matter. In its own words, "[t]hat's not Empower Missouri's model." Cf. Get Loud Ark. v. Jester, 171 F.4th 1058, 1064 (8th Cir.

2026) (holding that an organization has suffered an injury in fact when a regulation forbade use of "its online registration tool, which was an important element of its core business activities"). On the contrary, Empower Missouri's model is to spend money opposing Bax's allegedly unlawful practices. Such self-inflicted advocacy costs are not a cognizable injury for Article III standing in this case.

Although Plaintiffs argue that "Empower has not spent its way into standing" because it "did not raise additional funds or grow its budget to oppose [DSS's] wrongful SNAP denials resulting from its dysfunctional call center," this fact is immaterial. As Bax notes, the Supreme Court's decision in Alliance for Hippocratic Medicine did not turn on whether the funds were newly raised. Rather, without an injury to an organization's core business activities, advocacy efforts are insufficient to establish standing. See All. for Hippocratic Med., 602 U.S. at 394. Because Empower has done nothing more than "expend[] money to gather information and advocate against [Bax]'s action[s], it did not allege a cognizable injury." Id. It should be dismissed from this suit for want of standing.

B.

As to the individual plaintiffs, Bax argues that they fail to satisfy the redressability element of standing because "there is a 'fatal disconnect between the[ir] alleged injury and the sweeping relief they requested.'" Additionally, she argues that their claims are moot, as each of them has received complete relief and is unlikely to suffer future harm.



Appellate Case: 25-1987 Page: 10 Date Filed: 08/19/2026 Entry ID: 5673605

i.

a.

First, we address whether Holmes and Davis have standing to assert their due process claims.[5] They seek prospective declaratory and injunctive relief. To satisfy the injury requirement, "plaintiffs must [either] show they are likely to suffer future injury that will be remedied by the relief sought," Elizabeth M. v. Montenez, 458 F.3d 779, 784 (8th Cir. 2006), or that they are experiencing "continuing, present adverse effects" from "[p]ast exposure to illegal conduct," O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974). Ongoing harm is assessed at the time the complaint is filed. See Farella v. Benton Cnty. Dist. Ct., 176 F.4th 562, 567 (8th Cir. 2026). When they filed the complaint, DSS had denied Holmes's and Davis's applications for failure to interview despite their repeated attempts to do so. Thus, Holmes and Davis did not receive the food assistance they were entitled to. That is ongoing harm. See In re Pre-Filled Propane Tank Antitrust Litig., 893 F.3d 1047, 1055 (8th Cir. 2018) (explaining that a plaintiff has standing when past exposure to illegal conduct "is accompanied by 'continuing, present adverse effects'" (citation omitted)).

Next, we examine whether Holmes's and Davis's injuries are redressable by the relief sought in the complaint. "Redressability exists when a favorable decision will relieve the plaintiffs of a discrete injury . . . or if the risk of injury 'would be reduced to some extent if [the plaintiffs] received the relief they seek.'" Animal Legal Def. Fund v. Reynolds, 89 F.4th 1071, 1078 (8th Cir. 2024) (second alteration in original) (citation omitted)).

Bax contends that Holmes and Davis do not satisfy the redressability requirement as she maintains their request for relief is impermissibly overbroad as it

[5]At oral argument, counsel for the appellees clarified that Dallas does not assert a due process claim in this matter.

would require DSS to overhaul its SNAP benefits system. That relief includes: that Bax provide Holmes an interview,[6] a declaratory judgment that DSS's administration of SNAP results in wrongful denial of benefits, a preliminary injunction requiring Bax to maintain in-person DSS resource center operations in compliance with federal law, and a permanent injunction requiring Bax to, among other things, "[a]dopt, implement, and monitor statewide and systematic policies and procedures to ensure that all applicants for SNAP have a meaningful opportunity to complete a SNAP interview, required verifications, and all other elements of the SNAP application."

The district court concluded that Plaintiffs' requested relief would redress their injuries. We agree. Plaintiffs requested relief ranging from narrow, individualized remedies—such as Holmes's request for an interview—to broader systemic reforms of the entire DSS SNAP benefit system. Whatever the ultimate propriety of these remedies, each form of requested relief would, if granted, redress Holmes's and Davis's injury by remedying and preventing any future erroneous denial of SNAP benefits.

Although Bax contends that the district court erred by failing to address whether Plaintiffs' requested relief was appropriately tailored to their injuries, that argument concerns the permissible scope of relief, not the court's jurisdiction. Whether Plaintiffs' requested relief is overbroad is distinct from the antecedent jurisdictional question. See Biden v. Texas, 597 U.S. 785, 801 (2022) ("[T]he question whether a court has jurisdiction to grant a particular remedy is different from the question whether it has subject matter jurisdiction over a particular class of claims."); see also Pharm. Rsch. & Mfrs. of Am. v. Williams, 64 F.4th 932, 951 (8th Cir. 2023) (Gruender, J., concurring) ("Redressability does not require that the plaintiff actually be entitled to the relief sought; it is enough that the requested relief, if granted, would redress the plaintiff's injury." (quoting Cranpark, Inc. v. Rogers

[6]Because DSS interviewed Holmes shortly after the complaint was filed, Plaintiffs no longer seek this relief.



Appellate Case: 25-1987 Page: 12 Date Filed: 08/19/2026 Entry ID: 5673605

Grp., Inc., 821 F.3d 723, 731 (6th Cir. 2016)). Accordingly, we conclude that Holmes and Davis satisfied the redressability prong and have standing to pursue their claims.

b.

Bax additionally contends that Holmes's and Davis's due process claims are moot because they received interviews, were approved for SNAP benefits, and will not have to re-interview because they qualify for the waiver for elderly and disabled individuals.

Standing and mootness, while related, are separate inquiries. "The Supreme Court has repeatedly described the mootness doctrine as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" McCarthy v. Ozark Sch. Dist., 359 F.3d 1029, 1035 (8th Cir. 2004) (citation omitted). "Mere voluntary cessation of a challenged action does not moot a case. Rather a case becomes moot 'if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Strutton v. Meade, 668 F.3d 549, 556 (8th Cir. 2012) (citation omitted); see also Charleston Hous. Auth. v. U.S. Dep't of Agric., 419 F.3d 729, 740 (8th Cir. 2005) ("[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." (citation omitted)).

Bax argues that Holmes's and Davis's claims are moot because they have received SNAP benefits and have not shown that they will have to re-interview because they qualify for the elderly and disabled waiver. The parties agree that Holmes and Davis currently receive SNAP benefits, but Bax mistakes the burden associated with the voluntary cessation doctrine. It is her "formidable burden" to show that "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." LaBatte v. Gangle, 161 F.4th 1109, 1117 (8th Cir. 2025) (citation omitted). The elderly and disabled waiver is not part of the record,

and it is unclear if it has ever been put in writing. Indeed, Bax conceded that it is not contained in a regulation but rather is "built into the [agency's] processes." Without this waiver in the record, we cannot assess its impact on Holmes's and Davis's claims. Moreover, as Plaintiffs point out, even though Dallas is disabled and allegedly qualifies for the waiver, DSS required him to interview for his SNAP benefit recertification in 2023, showing that the waiver is, at the very least, applied inconsistently. Because Bax did not satisfy her "formidable burden" of proving that Holmes's and Davis's due process rights "could not be reasonably expected to recur," their claims are not moot.[7] Id. As such, Holmes's and Davis's due process claim satisfies the Article III jurisdictional requirements.

ii.

a.

Next, we address whether Dallas has standing for his ADA failure to accommodate claim.

In 2021, Dallas informed DSS he would need an accommodation because he suffers from epilepsy. In January 2023, DSS mailed Dallas SNAP recertification paperwork but did not offer him any assistance in completing his forms. In February 2023, he called DSS around ten times seeking help completing his recertification paperwork, but he was never connected to a representative. After Plaintiffs filed the complaint, Dallas received an interview and DSS approved his recertification. Bax asserts that Dallas did not suffer any harm because he never lost his SNAP benefits. But "[f]ailing to make a reasonable accommodation constitutes discrimination" under the ADA. Mobley v. St. Luke's Health Sys., Inc., 53 F.4th 452, 456 (8th Cir. 2022). Like Holmes and Davis, Dallas seeks prospective relief and because DSS had failed to accommodate him when the complaint was filed, he adequately alleged

[7]We find it unnecessary to address Holmes and Davis's claim that Bax's conduct is capable of repetition and likely to evade review as the voluntary cessation doctrine preserves their injuries.



Appellate Case: 25-1987 Page: 14 Date Filed: 08/19/2026 Entry ID: 5673605

"continuing, present adverse effects" from DSS's "illegal conduct." O'Shea, 414 U.S. at 495-96. Accordingly, Dallas satisfies the injury requirement.

To determine if Dallas's injury is redressable, we must assess whether "a favorable decision will likely redress [his] injury." Animal Legal Def. Fund, 89 F.4th at 1077 (citation omitted). As with Holmes and Davis on their due process claims, Dallas seeks broad relief. He requests that, among other things, Bax "[a]dopt, implement, and monitor statewide and systemic policies and procedures to ensure that applicants and recipients with disabilities are routinely provided with appropriate identification or screening," and that applicants be notified regarding "the nondiscrimination requirements of Title II of the ADA" and be given access to a "grievance procedure" for "complaints of ADA Title II violations."

Bax again argues that Dallas's requested relief is overbroad such that he does not satisfy the redressability requirement. However, we conclude that his requested remedies would redress his failure to receive a reasonable accommodation. His entitlement to these remedies is immaterial to our jurisdiction. See Morrison v. Nat'l Austl. Bank Ltd., 561 U.S. 247, 254 (2010) ("Subject-matter jurisdiction . . . presents an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief."). As Dallas satisfies the redressability element, he has standing to maintain his ADA claim.

b.

Bax additionally argues that Dallas's ADA claim has become moot. Although she admits that DSS did not have an ADA policy when Plaintiffs filed the complaint, she claims that DSS has since "implemented more robust measures to ensure individuals are able to notify Defendant of disabilities and request accommodations." However, as we explained above, "voluntary cessation of a challenged action does not moot a case. Rather a case becomes moot [only] 'if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Strutton, 668 F.3d at 556 (citation

omitted). The record does not show that these new policies have resulted in individuals actually receiving accommodations after submitting a request. And as Plaintiffs point out, as recently as May 2025, Bax was unable to determine the number of applicants who had requested accommodations under this new system. Accordingly, we conclude that Bax has not met her "formidable burden" under the voluntary cessation doctrine, as it is not "absolutely clear" that ADA violations "could not reasonably be expected to recur." LaBatte, 161 F.4th at 1117. Dallas's ADA failure to accommodate claim is not moot.

C.

To the extent that Holmes and Davis assert that DSS had inadequate procedures for individuals with disabilities as required by the ADA, this claim fails. All ADA claims must be tethered to one's individual experience. "There is no independent cause of action under either the Rehabilitation Act or the ADA for failing to provide adequate procedures." A.L.A. ex rel. Liberty v. Avilla R-XIII Sch. Dist., No. 10-5054-CV-SW-SWH, 2011 WL 6093301, at *7 n.7 (W.D. Mo. Dec. 7, 2011), aff'd sub nom. J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist., 721 F.3d 588 (8th Cir. 2013).

III.

Finally, Bax cursorily argues that the Eleventh Amendment bars this Court from exercising jurisdiction over Plaintiffs' claims. Although this issue was not raised below, because this defense "sufficiently partakes of the nature of a jurisdictional bar," it does not have to be raised in the trial court for us to consider it on appeal. See Alabama v. Pugh, 438 U.S. 781, 782 n.1 (1978).

The Ex parte Young doctrine provides "a narrow exception" to sovereign immunity when a plaintiff alleges an ongoing violation of federal law and seeks prospective relief. Filyaw v. Corsi, 150 F.4th 936, 941 (8th Cir. 2025). Although Bax argues that this case is analogous to Filyaw, she is wrong. In Filyaw, the



Appellate Case: 25-1987 Page: 16 Date Filed: 08/19/2026 Entry ID: 5673605

plaintiff alleged that the Nebraska Department of Health and Human Services deprived her of due process by terminating her Medicaid benefits without proper notice. Id. at 939. We concluded that her claim was barred by the Eleventh Amendment because she failed to allege ongoing harm, as she received an inadequate notice at "a discrete point in the past," "had an opportunity for both a pre-and post-termination hearing," and was not at risk of receiving the same inadequate notice in the future. Id. at 945-46. Dissimilarly, here, at the time that Plaintiffs filed their complaint, they were experiencing ongoing harm—Holmes's and Davis's SNAP applications were denied and DSS failed to provide Dallas a reasonable accommodation. And Plaintiffs seek prospective relief. As such, the Eleventh Amendment does not bar their claims.

IV.

As the individual plaintiffs have cleared the Article III jurisdictional hurdles as to their due process and ADA failure to accommodate claims, we next consider whether the district court erred in granting Plaintiffs summary judgment on their claims under the SNAP Act, Due Process Clause, and ADA.

We start with Plaintiffs' claims under the SNAP Act. In Counts I and II of their complaint, Plaintiffs allege Bax's policies, practices, and procedures of wrongfully denying applicants for Missouri's SNAP program and failing to ensure that Missourians can submit a SNAP application on the first day they contact DSS violate various provisions of the SNAP Act—7 U.S.C. §§ 2014(a), 2020(e)(2)(B) and their implementing regulations. The district court concluded that Bax violated these provisions and granted summary judgment for Plaintiffs as to these counts. Bax argues that this was in error because the SNAP Act does not create rights enforceable in private actions brought under 42 U.S.C. § 1983. "This court reviews de novo the district court's decision regarding the existence of a federal right enforceable under section 1983." Ctr. for Special Needs Tr. Admin., Inc. v. Olson, 676 F.3d 688, 699 (8th Cir. 2012).



Appellate Case: 25-1987 Page: 17 Date Filed: 08/19/2026 Entry ID: 5673605

The Supreme Court has strictly limited the circumstances under which a federal statute may be enforced via 42 U.S.C. § 1983. Although "§ 1983 allows private parties to sue state actors who violate their 'rights' under 'the Constitution and laws' of the United States[,] . . . federal statutes do not confer 'rights' enforceable under § 1983 'as a matter of course.'" Medina v. Planned Parenthood S. Atl., 606 U.S. 357, 365 (2025) (citation omitted). While "federal legislation seeks to benefit one group or another[,] . . . § 1983 provides a cause of action 'only for the deprivation of "rights, privileges, or immunities,"' not '"benefits" or "interests."' Id. at 368 (emphasis omitted) (citation omitted).

To prove that a statute is enforceable under § 1983, "a plaintiff must show that the law in question 'clear[ly] and unambiguous[ly]' uses 'rights-creating terms,'" and that it "display[s] 'an unmistakable focus on individuals like the plaintiff.'" Id. (citation omitted) (first and second alteration in original). This test is "'stringent' and 'demanding.'" Id. (citation omitted). And Spending Clause statutes—like the SNAP Act—are "especially unlikely" to confer an enforceable right. Id. at 369; see also Does v. Gillespie, 867 F.3d 1034, 1039 (8th Cir. 2017) ("For legislation enacted pursuant to Congress's spending power. . . 'the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State.'" (citation omitted)). Indeed, as Bax points out, the Supreme Court has only once recognized a Spending Clause statute as creating an enforceable right—in Health & Hospital Corp. of Marion County v. Talevski, 599 U.S. 166 (2023)—where it considered two provisions of the Federal Nursing Reform Act. Id. at 172. The first provision obligates nursing homes to "protect and promote" the nursing home residents' "right to be free from" unnecessary "physical or chemical restraints," and the second provision "appears in a subparagraph concerning '[t]ransfer and discharge rights.'" Id. at 181-82 (alteration in original) (citation omitted). Both provisions are contained in a subsection called "[r]equirements relating to residents' rights." Id. at 184 (alteration in original) (emphasis omitted) (citation omitted).

The district court concluded that "[c]ourts commonly order heads of SNAP administering agencies to comply with the requirements of SNAP" and that Plaintiffs can bring suit under this Act, but it did not undertake the required analysis. Courts historically have held that Spending Clause statutes "create[d] an enforceable right if the provision in question was 'intend[ed] to benefit the putative plaintiff.'" Gillespie, 867 F.3d at 1039 (second alteration in original) (citation omitted). However, we have since observed that "the governing standard for identifying enforceable federal rights in spending statutes is more rigorous." Id.

Plaintiffs failed to demonstrate that the provisions of the SNAP Act they sued under—7 U.S.C. §§ 2014(a), 2020(e)(2)(B)—create an enforceable federal right under § 1983.

Section 2014(a) states, in part, that "[p]articipation in [SNAP] shall be limited to those households whose incomes and other financial resources . . . are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet" and that "[a]ssistance under this program shall be furnished to all eligible households who make application for such participation." Unlike the provisions in Talevski, these provisions do not contain any rights-creating language and do not set forth concrete duties that Bax owes to specific beneficiaries. Instead, this provision provides the general framework for determining income eligibility and sets forth the criteria governing who qualifies to participate in SNAP. This does not "clear[ly] and unambiguous[ly]" provide Plaintiffs with federal rights to support a cause of action under § 1983. Medina, 606 U.S. at 368 (alterations in original) (citation omitted). As such, we conclude that they cannot maintain a private suit under § 1983 as to this provision.

Section 2020(e)(2)(B) provides, in part, that a state agency "shall provide timely, accurate, and fair service to applicants for, and participants in [SNAP]" and "shall permit an applicant household to apply to participate in the program on the same day that the household first contacts a [SNAP] office." This provision "focuses neither on the individuals protected nor even on the funding recipients being

regulated, but on the agenc[y] that will do the regulating"; and a statute that addresses "the government official who will regulate the recipient of federal funding 'does not confer the sort of "*individual* entitlement" that is enforceable under § 1983.'" Gillespie, 867 F.3d at 1041 (alteration in original) (citation omitted). As such, we conclude that this section does not support a private suit under § 1983 either.

To the extent that Plaintiffs argue that a private right of action independent of § 1983 can be implied from the SNAP Act, this argument fails for the same reason. Although determining "whether a statutory violation may be enforced through § 1983 'is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute[,]'. . . the inquiries overlap in one meaningful respect—in either case we must first determine whether Congress intended to create a federal right." Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002) (emphasis omitted) (citation omitted). Because we determined that Congress did not intend to create a federal right in the SNAP Act, Plaintiffs cannot maintain an independent cause of action under the SNAP Act either.

Thus, we reverse the district court's grant of summary judgment as to Counts I and II of Plaintiffs' complaint.

## V.

Next, we address whether the district court erred in determining that Bax's wrongful denial of Holmes's and Davis's SNAP applications violated their due process rights.

Holmes and Davis allege that Bax violated their due process rights by depriving them of fair access to SNAP benefits. Bax contends that Missouri's post-deprivation remedies were sufficient to satisfy the requirements of due process. A plaintiff alleging a procedural due process claim must show two elements: (1)



Appellate Case: 25-1987 Page: 20 Date Filed: 08/19/2026 Entry ID: 5673605

"deprivation by state action of a protected interest in life, liberty, or property" and (2) "inadequate state process." Reed v. Goertz, 598 U.S. 230, 236 (2023).

"[T]o have a property interest in a benefit, a recipient must have a legitimate claim of entitlement to it." Walters v. Weiss, 392 F.3d 306, 314 (8th Cir. 2004) (alteration in original) (citation omitted). The parties agree that SNAP benefits are property protected by the Due Process Clause. Moreover, we have explained that where "[local] rules provide that a person 'shall' be deemed eligible for relief if he or she meets established conditions," they create a "legitimate claim of entitlement and expectancy of benefits in persons who claim to meet the eligibility requirements." Daniels v. Woodbury Cnty., 742 F.2d 1128, 1132 (8th Cir. 1984) (citation omitted). Accordingly, we conclude that SNAP applicants have a protected property interest in receipt of these benefits via their SNAP applications.[8] It is undisputed that DSS denied Holmes's and Davis's SNAP applications.

Next, we must consider whether the process Missouri provided Holmes and Davis regarding their SNAP application denials was adequate. Plaintiffs do not argue that due process requires a novel procedural safeguard here. Rather, they contend that it requires Bax to provide meaningful access to the procedures DSS has already established so that eligible applicants will receive SNAP benefits. The Supreme Court has explained that courts must consider three factors when determining what due process requires:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

---

[8]Bax assumes "without conceding" that applicants have a property interest in their SNAP applications, but she does not make any arguments to distinguish this Court's precedent in Daniels.



Appellate Case: 25-1987 Page: 21 Date Filed: 08/19/2026 Entry ID: 5673605

administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

As to the first factor, the district court held that Holmes's and Davis's private interest in receipt of SNAP benefits is high because "to be deprived of SNAP is to be deprived of food." Bax does not contest this holding, and we agree with the district court. See Bliek v. Palmer, 102 F.3d 1472, 1477 (8th Cir. 1997) (concluding that plaintiffs' "vital interest" in subsistence benefits strongly favored them under the first Mathews factor).

Regarding the second factor, the district court determined that "arbitrary decision-making in a subsistence benefits program constitutes a due process violation because of the high risk of erroneous deprivation." Bax argues that Missouri's post-deprivation review process—providing hearings to those challenging adverse decisions—is sufficient to satisfy the requirements of due process. Plaintiffs contend that this argument has been waived as Bax did not raise it below. Assuming without deciding that Bax did not waive this issue, we conclude that post-deprivation remedies are inadequate to protect Plaintiffs' rights. While the parties dispute whether Plaintiffs' benefits were wrongfully denied, in Goldberg v. Kelly, 397 U.S. 254 (1970), the Supreme Court held that post-deprivation remedies are insufficient to satisfy due process when "welfare is discontinued" as "[f]or qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care." Id. at 264. So too here, SNAP benefits, for qualified recipients, provide the means to obtain essential food. Thus, we conclude that post-deprivation remedies are inadequate.

As to the third factor, Bax argues that the district court failed to consider the Government's burden. Although requiring Bax to provide applicants with meaningful access to the SNAP interview process entails administrative costs, this imposes a comparatively modest burden on the Government—particularly where



Appellate Case: 25-1987 Page: 22 Date Filed: 08/19/2026 Entry ID: 5673605

post-deprivation remedies are inadequate to compensate for the loss of essential food assistance.

As such, we conclude that the district court did not err in granting summary judgment to Holmes and Davis as to their due process claims.

VI.

Next, we address whether the district court erred in granting summary judgment on Dallas's and Holmes's ADA failure to accommodate claims.

To establish that the defendant violated Title II of the ADA, the plaintiff must establish that: (1) he is a qualified individual with a disability; (2) that he was denied SNAP benefits, or otherwise subjected to discrimination by the defendant; and (3) that such exclusion was because of his disability. See Rinehart v. Weitzell, 964 F.3d 684, 688 (8th Cir. 2020). Additionally, "a plaintiff must prove, among other elements, that she 'requested accommodations or assistance for . . . her disability.'" Powley v. Rail Crew Xpress, LLC, 25 F.4th 610, 612 (8th Cir. 2022) (alteration in original) (citation omitted).

Holmes alleges that she was deprived of both a reasonable accommodation and the opportunity to request one because DSS did not answer its phones. However, when Holmes went to a resource center, she did not request an accommodation. Further, she does not identify why her alleged disabilities—cancer and chronic pulmonary disease—required an accommodation or what accommodation she needed. See Powley v. Rail Crew Xpress, LLC, 25 F.4th 610, 612 (8th Cir. 2022) ("For an ADA failure-to-accommodate disability-discrimination claim, a plaintiff . . . . must prove, among other elements, that she "requested accommodations or assistance for . . . her disability." (second alteration in original) (citation omitted)). Given that the facts do not establish that Holmes ever requested an accommodation, the district court erred by granting Holmes summary judgment on her ADA failure to accommodate claim.



Appellate Case: 25-1987 Page: 23 Date Filed: 08/19/2026 Entry ID: 5673605

Regarding Dallas, it is undisputed that he is qualified for SNAP benefits and that he suffered from a disability—namely, epilepsy. Although DSS never denied his application for SNAP benefits or caused them to lapse, he requested accommodation for his disability and DSS discriminated against him by failing to make a reasonable accommodation. See Mobley, 53 F.4th at 456. As such, we conclude that the district court did not err in granting summary judgment to Dallas as to his failure to accommodate claim.

## VII.

Finally, we address whether the relief granted by the district court was appropriate. Bax first contends that the district court failed to consider the proper test for permanent injunctive relief before granting it. "We review the grant of injunctive relief for an abuse of discretion. . . . A district court abuses its discretion if it issues an injunction based on an incorrect understanding of the law or reliance on clearly erroneous factual determinations." Pediatric Specialty Care, Inc. v. Ark. Dep't of Hum. Servs., 364 F.3d 925, 929 (8th Cir. 2004).

For permanent injunctive relief to be appropriate, a plaintiff must show: (1) "actual success on the merits," (2) "the threat of irreparable harm to the moving party," (3) "the balance of harms with any injury an injunction might inflict on other parties," and (4) "the public interest." Oglala Sioux Tribe v. C & W Enters., Inc., 542 F.3d 224, 229 (8th Cir. 2008). Here, the district court concluded that Plaintiffs showed actual success on the merits as to their SNAP Act, due process, and ADA claims,[9] that they would be irreparably harmed by Bax's continuing violations, that the balance of harms weights in Plaintiffs' favor, and that granting injunctive relief to Plaintiffs is in the public interest.

---

[9]As explained earlier, we concluded that Plaintiffs did not show actual success on the merits as to their SNAP Act claims and that Holmes's ADA claim failed.



Appellate Case: 25-1987 Page: 24 Date Filed: 08/19/2026 Entry ID: 5673605

Bax argues that the district court erred by failing to consider whether Plaintiffs have an adequate remedy at law. We agree. The district court must consider whether Plaintiffs have an adequate remedy at law before finding irreparable harm. See Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 967 (8th Cir. 2005) ("It is well-established that a party is entitled to equitable relief only if there is no adequate remedy at law."); see also Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009) ("Irreparable harm occurs when a party has no adequate remedy at law[.]"). Although Plaintiffs argue that Bax waived this argument because she failed to raise it below, we disagree. Bax does not raise a new issue, as there is no irreparable harm if a movant has an adequate remedy at law. See Universal Title Ins. Co. v. United States, 942 F.2d 1311, 1314 (8th Cir. 1991) ("The real [waiver] question should be whether the new argument is such as to raise a new issue . . . . [W]e think it would be in disharmony with one of the primary purposes of appellate review were we to refuse to consider each nuance or shift in approach urged by a party simply because it was not similarly urged below." (second and third alterations in original) (citation omitted)); see also Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999) ("[T]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." (citation omitted)).

Although "[w]e will not disturb a district court's discretionary decision if such decision . . . accounts for all relevant factors, does not rely on any irrelevant factors, and does not constitute a clear error of judgment," PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1142 (8th Cir. 2007), the district court's failure to consider whether Plaintiffs had an adequate remedy at law before granting permanent injunctive relief is an abuse of discretion. Accordingly, we vacate the district court's permanent injunction and remand for it to consider whether Holmes and Davis have an adequate remedy at law regarding Bax's violation of their due process rights and whether Dallas has an adequate remedy at law as to his ADA claim.

Failure to consider the presence of an adequate remedy at law was not the only problem with the district court's permanent injunction analysis. The district court

also ordered sweeping, overbroad relief, requiring Bax to make systemic changes to the SNAP benefits program in Missouri, which would affect all SNAP applicants in the state, not just the plaintiffs in this suit. This bears similarity to a universal injunction—a form of relief that federal courts lack authority to issue. See Iowa Migrant Movement for Just. v. Bird, 157 F.4th 904, 930 (8th Cir. 2025) ("'[U]niversal injunctions'—that is, injunctions that 'prohibit enforcement of a law or policy against anyone'—'likely exceed the equitable authority that Congress has granted to the federal courts.'" (emphasis omitted) (citation omitted)); see also Trump v. CASA, Inc., 606 U.S. 831, 841 (2025) ("A universal injunction can be justified only as an exercise of equitable authority, yet Congress has granted federal courts no such power."). Accordingly, on remand, if the district court determines that permanent injunctive relief is appropriate, it must consider "whether a narrower injunction is appropriate" so that the injunction is not "broader than necessary to provide complete relief to each plaintiff with standing to sue." Iowa Migrant Movement, 157 F.4th at 930 (citation omitted).

## VIII.

For the foregoing reasons, we affirm in part and reverse in part the district court's grant of summary judgment, vacate the permanent injunction, and remand for further proceedings consistent with this opinion.

LOKEN, Circuit Judge, concurs and concurs in the judgment as to Part V.

______________________________



Appellate Case: 25-1987 Page: 26 Date Filed: 08/19/2026 Entry ID: 5673605